UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

IN THE MATTER OF APPLICATION FOR      :
ADMISSION TO PRACTICE IN THIS COURT   :

## PETITION

I _____William Christopher Carmody_____, hereby petition the United States District Court for the Middle District of Pennsylvania to admit me to practice before that Court. In support of my petition, I state as follows:

My office address is: _____Susman Godfrey L.L.P._____

_____1301 Avenue of the Americas, 32nd Fl._____

_____New York, NY 10019_____

Office Telephone: _____(212) 336-8330_____

I was admitted to practice before the Courts listed below on the date shown after the name of each Court, and I am currently a member in good standing of all those Courts.

See attached list.

My attorney Identification number is: _____4539276- New York_____

FOR COURT USE ONLY

_____ GENERAL ADMISSION:

GRANTED BY THE COURT: _____     Date: _____

_____ SPECIAL ADMISSION:

GRANTED BY THE COURT _____     Date: _____

Please Answer the Following Questions:

All occasions, if any, on which I have been convicted of a crime (subsequent to my becoming an attorney), censured, suspended, disciplined or disbarred by any court are set forth as follows: (State the facts and circumstances connected with each; if none, state "none".)   None.

All occasions, if any, on which I have been held in contempt of court are set forth as follows: (State the nature and final disposition of contempt; if none, state "none".)

I do _____, do not __X__, have any disciplinary action, contempt or other proceedings involving me pending before any court. (Check the appropriate space.) If there are pending proceedings, please explain: _____

I am seeking:

_____ General Admission under Local Rule LR 83.8.1

__X__ Special Admission (specify by a check which rule) under

LR 83.8.2.1 __X__, LR 83.8.2.2 ___, LR 83.8.2.3 ___, or LR 83.8.2.4 ___

If seeking special admission under Local Rules LR 83.8.2.1, LR 83.8.2.2, LR 83.8.2.3, or LR 83.8.2.4, the basis for my admission under the designated rule is as follows:

For the purpose of the case listed below.

NAME THE PARTY YOU REPRESENT:

Steven Plavin, Plaintiff

If special admission is requested for a particular case, please list case number and caption:

Case #   3:17-cv-01462-RDM

Caption #   Steven Plavin, et al. v. Group Health Incorporated,

I understand that:

1) If seeking admission under Section LR 83.8.2.2, LR 83.8.2.3, or 83.8.2.4, I must submit a letter from a superior stating the agency with which I am employed and the duties performed which qualify me for admission under those sections.

2) If petitioning for admission, only in a particular case, under Rule LR 83.8.2.1, I need no sponsor's certificate. Any attorney specially admitted under LR 83.8.2.1, shall, in each proceeding in which he or she appears, have associate counsel who is generally admitted under Local Rule 83.8.1 to practice in this court, whose appearance shall also be entered of record and upon whom all pleadings, motions, notices, and other papers may be served in accordance with any statute or applicable rule. The attendance of any such associate counsel upon the hearing of any motion or the taking of any testimony shall be sufficient appearance for the party or parties represented by such associate counsel. Either the specially admitted attorney or associate counsel must be fully prepared to participate in any hearings, arguments, conferences and trials. (See LR 83.9)

    If special admission is requested for a particular case, please list the name, address, telephone number and bar identification number of associate counsel to be entered of record in the case:

    J. Timothy Hinton, Jr. (PA ID 61981); Michael F. Cosgrove, (PA ID 47349)
    Haggerty Hinton & Cosgrove, LLP
    203 Franklin Avenue, Scranton, PA 18503; Tel.: (570) 344-9845

3) If seeking general admission under Rule LR 83.8.1, I must be a member of the bar of the Supreme Court of Pennsylvania and have a sponsor who is a member in good standing of the Bar of this Court present to move for my admission and I must submit the sponsor's certificate with my petition.

                                    _____
                                    PETITIONER
                                    4539276-NY
                                    (Bar Identification Number and State where admitted)
                                    8/17/17
                                    (Date)

By signing this petition for admission, I acknowledge that I have read the attached Middle District of Pennsylvania Code of Professional Conduct and agree to subscribe to the standards set forth in the Code.

NAME OF PETITIONER   William Christopher Carmody

# William Christopher Carmody
# Court Admissions

New York State Bar:  10/15/2007 (4539276)

Texas State Bar:  11/10/1988 (03823650)

UNITED STATES DISTRICT COURT:

    Southern District of New York:  1/15/2008 (WC-8478)
    Eastern District of New York:  1/15/2008 (WC-8478)
    Northern District of New York: 2/12/2008 (BAR CODE: 514913)
    Western District of New York: 2/11/2008
    Supreme Court of Texas: 11/10/1988
    Southern District of Texas: 1/7/1993 (Bar No. 14705)
    Northern District of Texas: 12/8/1988
    Eastern District of Texas: 1/7/1993
    Western District of Texas: 1/19/1993
    Eastern District of Michigan: 10/24/16

UNITED STATES COURT OF APPEALS:

    2nd Circuit: Renewed 7/1/13
    5th Circuit: 6/26/2007
    8th Circuit: 7/8/2004
    9th Circuit: 11/28/1994
    11th Circuit: 7/18/2007

UNITED STATES SUPREME COURT:  2/22/1993

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CODE OF PROFESSIONAL CONDUCT

As a member of the Bar of the United States District Court for the Middle District of Pennsylvania, I will strive for the following professional ideal:

1. The rule of law will govern my entire conduct. I will not violate the law or place myself above the law.

2. I will treat with civility and respect the lawyers, clients, opposing parties, the court and all the officials with whom I work. Professional courtesy is compatible with vigorous advocacy and zealous representation. Even though antagonism may be expected by my client, it is not part of my duty to my client.

3. I will respect other lawyers' schedules as my own, and will seek agreement on meetings, depositions, hearings, and trial dates. A reasonable request for a scheduling accommodation should never be unreasonably refused.

4. Communications are life lines. I will keep the lines open. Telephone calls and correspondence are a two-way channel; I will respond to them promptly.

5. I will be punctual in appointments, communications and in honoring scheduled appearances. Neglect and tardiness are demeaning to others and to the judicial system.

6. I will earnestly attempt to resolve differences through negotiation, expeditiously and without needless expense.

7. Procedural rules are necessary to judicial order and decorum. I will be mindful that pleadings, discovery processes and motions cost time and money. I will not use them heedlessly. If an adversary is entitled to something, I will provide it without unnecessary formalities.

8. I will not engage in conduct that brings disorder or disruption to the courtroom. I will advise my client and witnesses appearing in court of the proper conduct expected and required there and, to the best of my ability, prevent my client and witnesses from creating disorder or disruption.

9. Before dates for hearings or trials are set, or if that is not feasible immediately after such date has been set, I will attempt to verify the availability of necessary participants and witnesses so I can promptly notify the court of any likely problems.

I agree to subscribe to the above
Code of Professional Conduct:

_____
Signature

SPONSOR'S CERTIFICATE:

I, __Michael F. Cosgrove__, am a member in good standing of the Bar of the United States District Court for the Middle District of Pennsylvania, having been admitted to practice on (month) __December__ (day) __1__, (year) __1986__. I have known the above petitioner for __a few years__. To my knowledge, the petitioner's moral character is as follows:
__exceptional__

To my knowledge, the petitioner's educational background and experience are as follows:
__see attached CV__

I sponsor and recommend __William C. Carmody__ for admission as a qualified attorney to practice before this court.

*Michael F. Cosgrove*
(sponsor)

Office address: 203 Franklin Avenue

Scranton, PA 18503

Telephone: 570-344-9845

Attorney Bar I.D. Code No. 47349

# Susman Godfrey



## Bill Carmody
### partner

| | |
|---|---|
| Result Based Fees | pg. 2 |
| Selected Case Briefs | pg. 2 |
| Trial References | pg. 6 |

With the trial of a generation captivating the nation, ABC News needed an authority on the psychology of juries. Millions of viewers were following the O. J. Simpson murder trial, and ABC wanted to show America how jurors really decide cases. It tracked down a heralded Texas trial lawyer known for his use of mock trials, Bill Carmody, who was busy preparing a long-shot case for a fired employee of a large steel company. ABC filmed Bill's presentation of the evidence to the mock jurors as well as their deliberations. The network used the footage…and so did Bill. He played ABC's tape of the mock jury's deliberations at an eleventh hour mediation session – and his client walked away with a substantial settlement.



In the two decades since, Bill Carmody's reputation has only grown. Today he is a nationally recognized trial lawyer who tries bet-the-company cases for plaintiffs and defendants in state and federal courts throughout the country. He is a permanent member of Susman Godfrey's Executive Committee and heads its New York office. Carmody is experienced in a wide-range of complex business and intellectual property litigation and has handled a variety of cases, including antitrust, commercial and securities fraud, structured finance and derivatives litigation, class actions, false claims act, oil & gas, trust and estates, trade secrets, trademark, and patent infringement.

bcarmody@susmangodfrey.com

New York, NY   tel: 212-336-8334
                fax: 212-336-8340

Admitted in New York and Texas

**EDUCATION:**

**United States Merchant Marine Academy**
Kings Point, N.Y. (B.S. 1981)

**The University of Tulsa College of Law**
(J.D. with honors, 1988), *Order of the Curule Chair*, TULSA LAW JOURNAL

Hall of Fame Inductee, The University of Tulsa College of Law

Distinguished Alumni, The University of Tulsa

**Trial Lawyers College** (2000)

### RECENT SUCCESSES

*Plaintiff:* On behalf of whistleblower, David Kester, prosecuted novel anti-kickback claims in the *Novartis* qui tam litigation that resulted in total settlements of $465 million – which for a case of its kind is the largest recovery ever. Click for *Bloomberg* interview.

*Defense:* Bill and his team won a take-nothing judgment for the Greenspun Corporation in a shareholder derivative trial in Silicon Valley and three resounding Summary Judgments that are currently on appeal:

- For Dan Loeb and Third Point in the *Fairfax* litigation where Plaintiffs sought damages of $8 billion;
- For Dorfman Pacific in a hotly contested trademark infringement case; and
- For Aragon Pharmaceuticals in a bet-the-company case where the San Francisco trial court confirmed Aragon's exclusive rights to a novel prostate cancer drug.

## RESULT BASED FEES

Whether representing plaintiffs or defendants, Bill puts his money where his mouth is by betting on his ability to win for his clients. A pioneer in structuring result-driven fee deals, he aligns his interests with those of his clients by making his fees dependent on the success he earns – and not on hours billed. It's a creative approach to billing in a profession that doesn't often stray outside the box.   *Case Studies*

That's never been a problem for Bill, whose bold and creative trial tactics have earned the respect of his peers, the media, and legal educators alike. He previously taught Trial Advocacy at Southern Methodist University School of Law, where he still serves on the Executive Board. Carmody is a member of the American Board of Trial Advocates, a fellow of the Litigation Counsel of America, and a fellow of the American Bar Foundation.

Bill is perennially listed in the *Lawdragon 500*, the guide to America's leading 500 lawyers. He's ranked in the *Chambers USA Guide to America's Leading Lawyers* and included in *Benchmark's Top 100 Trial Lawyers*. According to *Benchmark*, here's how a peer described Bill:

> "Of all the lawyers I've worked with in all my years, this guy [Carmody] was the best in every respect. As a trial lawyer he could do it all. He's based in New York now but stylistically was absolutely 'Texas hot!' He is just in another league."

His peers have voted him both a "New York Super Lawyer" and a "Texas Super Lawyer." Carmody is also listed in *The Best Lawyers in America* in five categories, including Bet-the-Company Litigation.

Carmody has appeared in national and international media, and his trial victories have been profiled in *The Wall Street Journal, Forbes, Business Week, Bloomberg, The National Law Journal, Texas Lawyer* and *The American Lawyer. Lawdragon* interviewed Bill for "The Producers" series *Click to Read*, and *Law 360* featured him in its "Trial Pro" series. *Click to Read*   While his trial tactics and betting on his client's results have received widespread acclaim, most important to Bill and his clients are the victories earned in the courtroom – and here are a few.

## SELECTED CASE BRIEFS

### Worth Every Penny

*"I've dealt with lots of trial lawyers and, by far, Bill Carmody is the best I've ever seen."*

In a huge defense victory, Carmody orchestrated events outside the lawsuit to defeat a local hero in his hometown court. Carmody's client, a Dallas investment brokerage, got sued for over $50 million. A loss was sure to break the company. The plaintiff was a "big fish" businessman who had sued Bill's client in his "small pond," the little town of Rockport, Texas.

The case stood second on the trial docket. If the first case went as set, Carmody's case would be bumped for months. A postponement could have cost the brokerage an advantage it had gained during discovery: Although Carmody had deposed all of the opponent's experts, he had shielded his client's key expert from deposition. So, the opposition was ill prepared for the expert's trial testimony. If the case was reset, the opposition would be able to depose the expert and erase their disadvantage.

To prevent this, Bill took the unprecedented step of brokering a deal in which his client funded a $180,000 settlement of the first case on the docket. This enabled Carmody's case to be tried while his client still had the edge. Bill did go to trial and won a resounding take-nothing judgment – and jury debriefing confirmed the deciding role of the key expert's testimony. Bill's client also won a counterclaim of almost $700,000.

Despite the plaintiff's vigorous attempts to overturn the take-nothing judgment, this remarkable victory withstood appellate scrutiny; it was affirmed by both the Corpus Christi Court of Appeals and the Texas Supreme Court. Wowed with Carmody's results throughout the trial and appellate process, the company's CEO remarked "I've dealt with lots of trial lawyers and, by far, Bill Carmody is the best I've ever seen." *Bill Woodruff, CEO, Wm. K. Woodruff and Co., Dallas, TX.*  For media coverage of the brokered settlement, see *National Law Journal*, February 2, 1998, "Two Texas Litigators Leapfrog to Trial Win."

### David Beats Goliath

By uncovering evidence of commercial fraud, Carmody helped a small contractor conquer a multi-national conglomerate. This "David v. Goliath" scenario pitted Carmody's plaintiff client against one of the world's largest oil companies. The case centered around the defendant's refusal to pay for refinery construction work performed by the plaintiff in El Paso. But Bill capitalized on then-favorable venue rules to hold the case more than 800 miles away, in Beaumont – where the oil company had recently laid off hundreds of workers.

> "Any firm can supply lots of bodies. I'd rather have just one brain like Bill Carmody's."

The case was originally viewed only as a million-dollar breach of contract claim; however, Carmody identified a wholly different type of claim that his client's previous lawyers had missed. It capitalized on the oil company's most vulnerable conduct – its reckless disregard for worker safety. The argument was novel: The defendant's false assurances of safe working conditions inside crude oil towers constituted fraudulent misrepresentations. While the damages of the workers who suffered illnesses was obvious, much less obvious was his client's fraud damages, in the form of increased workers compensation premiums. After an arduous 2-month trial – featuring a paperless, multi-media presentation, complete with an in-court, full-size model of a quarter section of a crude oil tower – the jury found that the oil company committed fraud and awarded Bill's client over $61 million.

To cash in on this big verdict, Bill quickly negotiated a substantial confidential settlement on behalf of his client. The client's reaction to this happy ending? "Any firm can supply lots of bodies. I'd rather have just one brain like Bill Carmody's." *Jerry Strickland, CEO, AltairStrickland, Inc., Houston, Texas.*

See, *National Law Journal*, February 10, 1997, "The Big Numbers of 1996" and *Dallas Business Journal*, January 17-23, 1997, "Carmody Firm May be Tiny, but Judgment was Mighty."

### Crush Or Be Crushed

> "When litigation is threatening your company's bottom line, hiring Bill Carmody is the best business decision you can make."

In some cases, an innovative trial lawyer may be the only thing that can keep momentum from crushing his client. The world's then-largest recycler of aluminum found this out the hard way. When the recycler was sued for negligence by an employee injured in a fire at one of its plants, things looked bad. When it got tagged with a $4 million adverse judgment in the case, things looked even worse. When the recycler's umbrella insurance company sought a declaratory judgment that it did not have to

cover the judgment because it had not received timely notice of the negligence suit, things looked downright bleak. If momentum was not reversed fast, the recycler would be crushed like an old tin can and left on the scrap heap.



The recycler replaced its counsel and hired Carmody to dig it out of this $4 million hole. One big problem – the company had in fact given its umbrella carrier only 18 hours notice of the negligence suit. To deal with this potentially devastating fact, Carmody made a deft strategic move. He successfully got the parties realigned – making his client the plaintiff rather than the defendant – giving him the opportunity to speak first and last to the jury.

Bill then used his extra time with the jury to develop two creative theories. First, he argued that the recycler had fulfilled the umbrella policy's notice provision by giving timely notice of the negligence suit to its own insurance agent. Devising a fresh use of the theory of dual agency, Bill established that notice to the recycler's agent served as notice to the insurance company as well – because the insurance agent was effectively an agent for both the recycler and the umbrella carrier. Second, pointing to the insurer's participation in settlement talks of the underlying suit, Bill proved that, even if the insurer had not received timely notice, it had not been prejudiced by this fact.

The jury found for Carmody's client on all counts and the court granted the recycler complete relief. Soon afterward, the case settled on appeal with the insurer paying the entire underlying $4 million judgment and paying the recycler over $600,000 in attorneys' fees. The momentum had not only turned but had carried Bill's client to victory. Don Ingram, then CEO and Chairman of IMCO Recycling, summed up his impressions: "When litigation is threatening your company's bottom line, hiring Bill Carmody is the best business decision you can make."

See, *Verdict Search Commercial Litigation*, July 2004, p. 19.

### Shifting into Victory Lane

> "Carmody saw a sliver of victory that previous counsel missed."

The defendants in a Silicon Valley shareholder derivative lawsuit were watching their case head in the wrong direction. Their previous counsel had failed to come up with a winning strategy and the trial date was speeding toward them. Backs to the wall, the new defense team added Carmody to supply a new angle and increased trial horsepower.

The plaintiff, a start-up technology firm, accused its principal investors (the defendants) of looting the company and shooting down the promising new venture. Worse yet, under the plain wording of a poorly drafted amendment to the operative agreement, the defendants in fact should not have withdrawn their multi-million dollar investment. The upshot? Carmody's clients would be in all kinds of hot water unless the court invalidated the amendment.



Carmody mapped out the best road to reach this result. He realized that the key to success was not to attack the plaintiff directly but instead to challenge his dubious interpretation of the operative agreement. To pull off this shift in strategy, Carmody cut a deal with plaintiff's counsel to dismiss the defendants' previously-pled fraud counterclaim in exchange for adding an otherwise time-barred

defense of mutual mistake. After making this deft detour, the team next kicked the defense case into high gear by nailing down the key piece of evidence. Carmody got the plaintiff's own corporate counsel to admit that the disputed amendment did not in fact reflect the parties' agreement and was the product of a mutual mistake. Quite simply, Bill turned the company's own lawyer into the key defense witness.

The new defense of mutual mistake and the convincing evidence supporting it gave the court what it needed to invalidate the troublesome amendment. The defendants won a resounding take-nothing judgment and also prevailed on their defenses and counterclaims. The leverage from this judgment then propelled the defendants to a quick settlement in which they not only retained their previously withdrawn millions, but also drove home with the disputed funds being held by the liquidator of the now defunct start-up company. The client was "amazed" at the outcome: "Carmody saw a sliver of victory that previous counsel missed." *Josh Targoff, General Counsel, Third Point LLC.*

### Better Late Than Never

> "Bill was a clutch performer winning us an incredible trial victory"

In a perfect world, a lawyer would always have unlimited time and resources to prepare for trial. But the world is not perfect and, often, time is not on your side. In a case where he suited up for the defense, Carmody demonstrated the experience and guts required to take over and win big at the eleventh hour.

The case arose when a life insurance company was sued in a class action case by 25,000 of its policyholders. The plaintiff class alleged that the insurer had breached the terms of its policies, causing the plaintiffs to be overcharged for their insurance. The class sought $108 million in damages. In this bet-your-company case, a loss could have wiped out the company's net worth – and forced a shut down.

The case had been pending for five years, as the insurance company was represented by a large, full-service law firm. But with the make-or-break trial looming, the insurance company decided it needed a proven trial lawyer – someone who made his reputation in the courtroom.

So, just 6 days before trial, the insurer asked Carmody to try the case. Carmody quickly learned the case cold, devised the trial strategy, and presented the case during an eight-day jury trial. The jury promptly and unanimously delivered a complete defense verdict – and the case was dismissed. Given a new lease on life, the company heaved a sigh of relief and its General Counsel praised Carmody's command: "Just six days before trial, most lawyers would have refused to take the case. But Bill Carmody thought of, and seized upon, every tactical advantage. Bill was a clutch performer winning us an incredible trial victory." *Bryan R. Newcombe, General Counsel, Legal & General America, Inc., Rockville, Maryland.*



See, *The American Lawyer*, Sept. 2007, Big Suits, "Beller et al. v. William Penn."

SUSMAN GODFREY

## TRIAL REFERENCES

It's one thing just to read about the way Bill Carmody tries a case. But the best proof of his unique approach comes from talking to people who have actually seen Carmody at work. The following people are clients who have hired Carmody to represent them, lawyers who tried a case with or against him, and judges who presided over one of Carmody's trials. All are willing to speak with you about Bill Carmody's prowess in the courtroom.

### Clients

**Jerry Strickland**  CEO  *Altair Strickland, Inc.*  Houston, Texas  281-478-6200
**Josh Targoff**  General Counsel  *Third Point LLC*  New York, NY  212-715-3403
**Robert Mnuchin**  CEO  *Mnuchin Gallery*  New York, NY  212-861-6269
**Richard Heyman**  CEO  *Seragon Pharmaceuticals*  San Diego, CA  858-735-4581
**Avi Katz**  Pres./Gen. Counsel  *Loral Space & Communications*  New York, NY  212-697-1105
**David Turock**  Director  *C2 Communications*  Cedar Grove, New Jersey  954-226-9333
**Bryan Newcombe**  Gen. Counsel  *Legal & General America*  Rockville, MD  301-294-6968

### Co-counsel

*Gilbert Adams, Jr.*  **Law Offices of Gilbert Adams**  Beaumont, Texas  409-835-3000
*Hon. Eric Moye*  **14th District Court**  Dallas, Texas  214-653-7737
*John Gionis*  **Certilman Balin Adler & Hyman**  East Meadow, NY  516-296-7000
*Daryl Barger*  **Hartline, Dacus, Barger, Dreyer & Kern**  Corpus Christi, TX  361-866-8009
*Matthew Dontzin*  **Dontzin, Nagy & Fleissig**  New York, NY  212-717-2900
*Gordon Shapiro*  **Jackson Walker**  Dallas, Texas  214-953-6059
*Paul Bekman*  **Salsbury Clements Bekman Marder & Adkins**  Baltimore, MD 410-539-6633

### Opposing Counsel

*Paul Saunders*  **Cravath, Swaine & Moore**  New York, New York  212-474-1404
*Barry McNeil*  **Haynes and Boone**  Dallas, Texas  214-651-5000
*Charles Verhoeven*  **Quinn Emanuel**  San Francisco, California  415-875-6600
*Bob Krakow*  **Gibson Dunn**  Dallas, Texas  214-698-3100
*Jim Flynn*  **Harwood Feffer**  New York, New York  212-935-7700
*Christopher Hall*  **DLA Piper**  New York, New York  212-335-4705
*David Beck*  **Beck, Redden & Secrest**  Houston, Texas  713-951-3700

### Judges

**Hon. T. John Ward**  *(Formerly) U.S. District Court*  **Ward & Smith**  Longview, TX  903-935-3868
**Hon. William J. Monahan**  *Santa Clara Superior Court*  San Jose, CA  408-882-2270
**Hon. Sidney Fitzwater**  *U.S. District Court*  Dallas, Texas  214-753-2333
**Hon. Charles Shaw**  *U.S. District Court*  St. Louis, Missouri  314-244-3480
**Hon. David Godbey**  *U.S. District Court*  Dallas, Texas  214-753-2700
**Hon. Marilyn Huff**  *U.S. District Court*  San Diego, California  619-557-6016
**Hon. Ira Warshawsky**  *Supreme Court, Comm. Div.*  Nassau Co., New York  516-571-3351

*Attorney advertising  **Prior results do not guarantee similar future outcomes  ***Internet mail is not fully secure or private. Therefore, please do not transmit confidential information via Internet mail. Transmission of information is not intended to and does not create an attorney-client relationship. Please do not assume that your communications sent using Internet mail are privileged or confidential. Please do not send Susman Godfrey any confidential information via the Internet without previously consulting one of our attorneys.  ****Nothing on this web page is intended to represent that Susman Godfrey currently represents any particular clients mentioned because matters and client relationships naturally terminate from time to time.  Copyright © 2014 SUSMAN GODFREY L. L. P. Attorneys at Law. All rights reserved. Unless otherwise noted in website - Not certified by Texas Board of Legal Specialization.