# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN PLAVIN, on behalf of himself and all others similarly situated,<br><br>                          Plaintiff,<br><br>          v.<br><br>GROUP HEALTH INCORPORATED,<br><br>                          Defendant. | <u>3:17-cv-01462</u><br>(Hon. Robert D. Mariani) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.   Introduction................................................................................1

II.  Background................................................................................4

III. Legal Standard .........................................................................7

IV.  Argument .................................................................................8

    A.   All Four of Plaintiff's Claims are Timely ...........................8

        1.   The GBL Claims are Timely....................................9

        2.   The Insurance Law Claim is Timely.........................12

        3.   The Unjust Enrichment Claim is Timely ...................13

    B.   Plaintiff's GBL Claims Easily Clear the Rule 12(b)(6) Pleading Standard................................................................13

        1.   The Crux of the GBL Claims is "Consumer-Oriented Conduct".................................................................14

        2.   GHI Made Numerous Materially Misleading Statements to Plaintiff and Class Members .............16

    C.   The Unjust Enrichment Claim Should Proceed ...................20

        1.   Plaintiff Disputes the Existence and Scope of the Alleged Contract on Which GHI Seeks to Rely ......................20

        2.   The Unjust Enrichment Claim Exists Independently of the GBL Claim and Can Proceed in Parallel ............................22

        3.   The Complaint Adequately Alleges All Elements of the Unjust Enrichment Claim....................................................25

        4.   Dismissal of the Class Claims is Unwarranted.........................28

        5.   GHI's Request to Strike Plaintiff's Request for Enhanced Damages is Premature...............................................29

V.   Conclusion ..............................................................................31

ii

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 301 (S.D.N.Y. 2010) ............................................................. 4, 30

*Burrell v. State Farm & Cas. Co.*,
    226 F. Supp. 2d 427 (S.D.N.Y. 2002) ...................................................................30

*Catalano v. BMW of N.A., LLC*,
    167 F. Supp. 3d 540 (S.D.N.Y. 2016) .....................................................................8

*Corsello v. Verizon N.Y., Inc.*,
    967 N.E.2d 1177 (N.Y. 2012) ...............................................................................24

*Dervan v. Gordian Grp. LLC*,
    No. 16-1694, 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017) ...................................21

*Eidelman v. Sun Prods. Corp.*,
    No. 16-3914, 2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) ...............................17

*Enzinna v. D'Youville College*,
    922 N.Y.S.2d 729 (N.Y. App. Div. 2011) ......................................................... 9, 10

*Gaidon v. Guardian Life Ins. Co. (Gaidon I)*,
    725 N.E.2d 598 (N.Y. 1999) .................................................................................18

*Gaidon v. Guardian Life Ins. Co. (Gaidon II)*,
    750 N.E.2d 1078 (N.Y. 2001) ............................................................. 2, 9, 10, 12

*Georgia Malone & Co. v. Rieder*,
    973 N.E.2d 743 (N.Y. 2012) .................................................................................26

*Goshen v. Mut. Life Ins. Co.*,
    774 N.E.2d 1190 (N.Y. 2002) ...............................................................................15

*Hanna v. U.S. Veterans' Admin. Hosp.*,
    514 F.2d 1092 (3d Cir. 1975) ..............................................................................2, 8

*Icahn Sch. of Med. at Mt. Sinai v. Health Care Serv. Corp.*,
    234 F. Supp. 3d 580 (S.D.N.Y. 2017) ...................................................................14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   27 F. Supp. 3d 447 (S.D.N.Y. 2014) ............................................................ 20, 22

*Jackson v. Se. Pa. Transp. Auth.*,
   260 F.R.D. 168 (E.D. Pa. 2009) ..........................................................................28

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000) ..............................................................................26

*Kermanshah v. Kermanshah*,
   580 F. Supp. 2d 247 (S.D.N.Y. 2008) ................................................................13

*Koch v. Acker, Merrall & Condit Co.*,
   967 N.E.2d 675 (N.Y. 2012) ..............................................................................18

*Koch v. Greenberg*,
   14 F. Supp. 3d 247 (S.D.N.Y. 2014) ..................................................................18

*Kolchins v. Evolution Mkts, Inc.*,
   8 N.Y.S.3d 1 (N.Y. App. Div. 2015) ..................................................................20

*Mayer v. Belichick*,
   605 F.3d 223 (3d Cir. 2010) ..............................................................................18

*McCracken v. Verisma Sys., Inc.*,
   131 F. Supp. 3d 38 (W.D.N.Y. 2015) ................................................................30

*McCracken v. Verisma Systems Inc.*,
   No. 14-6248, 2017 WL 2080279 (W.D.N.Y. May 15, 2017) ...................... 24, 25

*MFC Real Estate LLC v. Pinecrest Dev. Corp.*,
   No. 13-1988, 2013 WL 2237817 (M.D. Pa. May 21, 2013) ............................7, 8

*Mfrs. Hanover Trust Co. v. Chem. Bank*,
   559 N.Y.S.2d 704 (N.Y. App. Div. 1990)..........................................................26

*Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*,
   171 F. Supp. 3d 107 (S.D.N.Y. 2016) ............................................................ 3, 22

*N.Y. v. Barclays Bank*,
   563 N.E.2d 11 (N.Y. 1990) ................................................................................27

iv

*N.Y. v. Feldman*,
    210 F. Supp. 2d 294 (S.D.N.Y. 2002) ........................................................ 14, 15

*Navana Logistics Ltd. v. TW Logistics, LLC*,
    No. 15-856, 2016 WL 796855 (S.D.N.Y. Feb. 23, 2016) ....................................27

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
    537 F.3d 168 (2d Cir. 2008) ................................................................23

*New York University v. Continental Insurance Co.*,
    662 N.E.2d 763 (1995) ......................................................................15

*Nuss v. Sabad*,
    No. 10-279, 2016 WL 4098606 (N.D.N.Y. July 28, 2016) .................... 22, 23, 24

*People ex rel. Schneiderman v. Orbital Pub. Grp., Inc.*,
    21 N.Y.S.3d 573 (N.Y. Sup. Ct. 2015)................................................... 15, 17, 18

*Pike v. New York Life Insurance Co.*,
    901 N.Y.S.2d 76 (N.Y. App. Div. 2010)....................................................11

*Reed v. Friendly's Ice Cream, LLC*,
    No. 15-298, 2016 WL 2736049 (M.D. Pa. May 11, 2016) ............................ 3, 28

*Revell v. Port Auth.*,
    598 F.3d 128 (3d Cir. 2010) ..................................................................8

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015)........................................................28

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
    756 F. Supp 732 (S.D.N.Y. 1990) ............................................................14

*Russo v. Mass. Mut. Life Ins. Co.*,
    711 N.Y.S.2d 254 (N.Y. App. Div. 2000)....................................................12

*Schandler v. New York Life Insurance Co.*,
    No. 09-10463, 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011)...............................11

*Sirico v. F.G.G. Products, Inc.*,
    896 N.Y.S.2d 61 (N.Y. App. Div. 2010)......................................................13

v

*Speedfit LLC v. Woodway USA, Inc.*,
   53 F. Supp. 3d 561 (E.D.N.Y. 2014).....................................................................28

*U.S. ex rel. Krahling v. Merck & Co.*,
   44 F. Supp. 3d 581 (E.D. Pa. 2014).............................................................. 14, 15

*Union Bank, N.A. v. CBS Corp.*,
   No. 08-8362, 2009 WL 1675087 (S.D.N.Y. June 10, 2009) ..............................20

*Wartella v. Guardian Life Ins. Co.*,
   No. 15-614, 2017 WL 4478007 (M.D. Pa. Oct. 6, 2017) .....................................8

*Wilner v. Allstate Ins. Co.*,
   893 N.Y.S.2d 208 (N.Y. App. Div. 2010)............................................................14

## **Statutes**

N.Y. C.P.L.R. § 214[2] ...........................................................................................9

N.Y. Exec. Law § 63 ................................................................................. 2, 16, 17

N.Y. Gen. Bus. Law § 349 ............................................................................ passim

N.Y. Gen. Bus. Law § 350 ............................................................................ passim

N.Y. Ins. Law § 4226 ................................................................................ 1, 12, 29

N.Y. Pub. Health Law § 18 ...................................................................................24

## **Rules**

Fed. R. Civ. P. 12 ....................................................................................................7

Fed. R. Civ. P. 15 ..................................................................................................31

Fed. R. Civ. P. 8 ....................................................................................................29

Fed. R. Civ. P. 9 ....................................................................................................29

## **Other Authorities**

N.Y.C. Admin. Code § 12-126 ...............................................................................27

vi

Plaintiff Steven Plavin ("Plavin") respectfully submits this Response in Opposition to Defendant Group Health Incorporated's ("GHI") Motion to Dismiss (Dkt. 31) (hereinafter "Br.").

## I.    __INTRODUCTION__

The complaint alleges that between 2011 and 2015, GHI misled consumers—public employees including police officers like Mr. Plavin—about the scope of out-of-network coverage under its Comprehensive Benefits Plan, violating New York General Business Law Sections 349 and 350 and Insurance Law Section 4226, and causing GHI to be unjustly enriched.  GHI argues that the complaint's allegations are "baseless" and "implausible," but GHI can only make these assertions by blinding itself to the truth.

Even though no discovery has been taken, the complaint already contains detailed allegations of GHI's misconduct, including the findings made in the New York Attorney General's Assurance of Discontinuance, which GHI itself signed after the Government's investigation into the company's misdeeds.  Among numerous other findings of wrongdoing, the Government stated that "GHI **does not sufficiently describe** the limitations of GHI Plan's reimbursement of out-of-network providers and **the resulting financial consequences** to members and prospective members," "GHI **does not explain** that the reimbursement rates are comparatively low when measured against other reimbursement methodologies nor

1

does it explain that **members are likely to incur substantial out-of-pocket expenses** when they use out-of-network providers," and "GHI's documents **misrepresent** the Schedule's updating of allowances or 'reimbursement amounts.'" The New York Attorney General expressly found that "the practices described above **constitute repeated violations of** Executive Law § 63(12) and **General Business Law §§ 349 and 350**," one of the primary claims asserted here. GHI cannot with a straight face say there are no "plausible" allegations of misconduct in light of these specific findings.

Knowing that its plausibility arguments are doomed, GHI tries other longshot tactics to avoid accountability for its actions.  <u>First</u>, GHI argues that Plavin's claims are time barred.  Not only is this argument premature, *see Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975) (dismissal on limitations grounds improper where "there is a question of fact as to the existence of the defense"), but GHI's argument is also flat-out wrong.  GHI takes the absurd position that the claims accrued when Plavin **first** enrolled in the GHI Plan in **1984**, even though Plavin made a new election of health insurance each year, GHI made misrepresentations each year, and Plavin incurred improper out-of-network charges in 2014 and 2015, well within the limitations period.  *See Gaidon v. Guardian Life Ins. Co.* (*Gaidon II*), 750 N.E.2d 1078, 1083–84 (N.Y. 2001) (plaintiffs' GBL claims against insurer timely where filed less than three years

2

from date beneficiary incurred financial consequences of deception, not from date of policy).  Not only is GHI's argument contrary to controlling caselaw, but it also would allow an insurer to continue to deceive plan members forever, just because it was able to get away with the deception when the plan members first signed up. That is not the law, and should never be.

Second, GHI argues that Plavin's unjust enrichment claims are duplicative of his other claims and barred by an alleged contract.  However, unjust enrichment claims are not "duplicative" of other claims where, as here, they contain separate, non-overlapping elements and allege distinct damages, *see Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 122–23 (S.D.N.Y. 2016), and claims can always be pleaded in the alternative.  Further, GHI's contract argument is dead on arrival, because there is no contract between GHI and Plavin whatsoever.

Third, GHI argues that Plavin's class claims and requests for enhanced damages should be dismissed.  Dismissing class allegations is inappropriate at the pleading stage, when there is no motion for class certification pending.  *See Reed v. Friendly's Ice Cream, LLC*, No. 15-298, 2016 WL 2736049, at *3 (M.D. Pa. May 11, 2016).  Requests for enhanced damages (authorized by statute) are simply a form of ***relief***, not a "cause of action," and cannot be decided on a motion to dismiss either, especially in a case like this one, where even at the pleading stage

3

there are substantial allegations of willful misconduct warranting the relief specified in the complaint. *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 & n.5 (S.D.N.Y. 2010).

For these reasons and those set forth below, GHI's motion to dismiss respectfully should be denied.

## II.   <u>BACKGROUND</u>

GHI offers one of eleven health insurance plans made available to over 600,000 City of New York ("City") employees and retirees.   Compl. ¶ 1, 2. During the relevant period, the GHI Comprehensive Benefit Plan (the "GHI Plan") was one of only two preferred provider organization ("PPO") plans that purported to provide "comprehensive coverage" for out-of-network medical services. *Id.* ¶ 2. It was the only PPO plan that did not require members to pay additional premiums out-of-pocket. *Id.*  GHI created and distributed to City employees and retirees two documents prior to each year's enrollment period. *Id.* ¶¶ 5, 21.  Those documents, a Summary Program Description and online Summary of Benefits & Coverage, falsely depicted the plan as a true PPO plan that gave members the "freedom to choose any provider worldwide" with extensive out-of-network coverage, while alluding only to the mere possibility that reimbursements might be less than the actual fee charged by out-of-network providers. *Id.* ¶ 4; *see* Dkt. 13-1.  GHI never delivered a policy, Certificate of Insurance, or reimbursement "schedule" to Plan

4

Members at any point after enrollment. *Id.* ¶¶ 7, 24. Contrary to GHI's suggestion, these documents were also never available online.[1]

GHI never told a single current or prospective Plan Member that reimbursement rates for virtually every out-of-network service would be just a fraction of the actual cost of that service. *Id.* ¶¶ 5–11, 31–32. GHI told members out-of-network reimbursements would be based on a "schedule" that was "updated periodically" but in fact was left virtually untouched since 1983. *Id.* ¶¶ 5, 7–8, 27–29, 31–32.

GHI also promoted "additional" "Catastrophic Coverage" where GHI promised to pay "100% of the Catastrophic Allowed Charge as determined by GHI" in the event that a member's out-of-network expenses exceeded $1,500. *Id.* ¶¶ 6, 10, 33–35. Although GHI represented it as an additional benefit and highlighted it as one of key six benefits in the Summary, in reality it provided the same amount that GHI already agreed to pay regardless of the $1,500 threshold and provided no benefit at all. *Id.*

GHI also sold, for an additional fee, an optional rider (the "Enhanced OON Rider" or "Rider") that provided an "enhanced schedule for certain services [that]

---

[1] Although GHI cites language claiming the policy or plan document is available online, that is simply not true. It was never provided to Plavin. Compl. ¶¶ 22–24. GHI's self-serving affidavit, Dkt. 31-3 ¶ 4, is not to the contrary. There, GHI states only that the Certificate was "available" to Plan Members—not that GHI *ever* provided it to members.

5

increases the reimbursement of the basic program's [out-of-network] fee schedule, on average, by 75%." *Id.* ¶ 6.  GHI failed to disclose in the marketing materials provided prior to plan selection that the Rider enhanced reimbursements for in-patient services only and provided nothing for out-patient services.  *Id.* ¶¶ 11 (noting out-patient services accounted for 65% of out-of-network charges during the Class Period), 36–38.  GHI's unlawful scheme was lucrative.  *Id.* ¶¶ 12, 25, 38.

GHI's deceptive conduct caught the attention of state authorities.  The New York Attorney General ("NYAG") investigated GHI's conduct; specifically, its pattern of under-reimbursing the out-of-network claims of the hundreds of thousands of City employees and retirees enrolled in the GHI Plan.  *Id.* ¶ 39.  The NYAG's investigation covered some, but not all of the deceptive practices that are the subject of this lawsuit.  *Id.*

For example, the NYAG focused on GHI's failure to make the Schedule available to current and prospective Plan Members, its failure to accurately describe the limitations of out-of-network reimbursement and resulting financial consequences to current and prospective members, and its misrepresentation of the frequency with which the 1983 reimbursement Schedule is updated.  *Id.* ¶ 39; AOD, Dkt. 31-4 ¶¶ 8–17, 21–22.  The NYAG determined that these practices harmed *consumers*, i.e., City employees and retirees, Dkt. 31-4 ¶¶ 7, 13, 19, 20, 27, 34, 35, and constituted repeated violations of GBL §§ 349 and 350, *id.* ¶ 26.  As a

6

result of the investigation, GHI entered into an Assurance of Discontinuance ("AOD"), in which it agreed to make changes to its marketing materials. Compl. ¶¶ 39–40; Dkt. 31-4, ¶¶ 27–29. The AOD did not address the consequences of the illusory Catastrophic Coverage and worthless Rider. *See* Compl. ¶¶ 36–38.[2]

Plaintiff Steven Plavin is a retired New York City police officer who has enrolled and re-enrolled in the GHI Plan since 1984, paying for the Rider each time. *Id.* ¶ 13. Plavin, his wife, and his children are all covered by the GHI plan. *Id.* In 2014, Plavin's wife received numerous medical services that GHI deemed out-of-network and paid just a fraction of the expenses for, leaving Plavin with significant financial responsibility.[3] *Id.* ¶ 41. GHI saddled Plavin with out-of-network costs at various points through 2015. *Id.* For example, for a July 2014 out-of-network procedure, GHI did not inform Plavin until February 2015 that he was on the hook for a substantial percentage of the costs for that claim. *Id.*

### III.   LEGAL STANDARD

To survive a FRCP 12(b)(6) motion to dismiss, Plavin's Complaint need only "provide a short and plain statement of the claim[s] showing that [Plavin is] entitled to relief." *MFC Real Estate LLC v. Pinecrest Dev. Corp.*, No. 13-1988,

---

[2] GHI celebrates this, Br. at 8 n.2, but it has no bearing on the viability of *Plavin's* claims based on these misrepresentations. There is also no evidence the NYAG was even aware of those scams at the time.

[3] GHI complains that Plavin did not state the particular medical procedures Mrs. Plavin received. Br. at 4. Plavin's family is fully entitled to medical privacy, and GHI is well aware of what the procedures were.

2013 WL 2237817, at *1 (M.D. Pa. May 21, 2013) (citation omitted); *see Catalano v. BMW of N.A., LLC*, 167 F. Supp. 3d 540, 561–62 (S.D.N.Y. 2016) (GBL claims not subject to Rule 9(b)'s particularity requirements); *Wartella v. Guardian Life Ins. Co.*, No. 15-614, 2017 WL 4478007, at *2 (M.D. Pa. Oct. 6, 2017) (*Twombly* imposes only a "plausibility standard," not a "probability requirement"). At this stage, the court "must accept the truth of all factual allegations in the complaint" and "must draw all reasonable inferences in favor of the [plaintiff]." *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

## IV.   ARGUMENT

### A.   All Four of Plaintiff's Claims are Timely

GHI's timeliness arguments are both premature and based on a fundamental misunderstanding (or willful misreading) of Plavin's claims. *Hanna,* 514 F.2d at 1094 (dismissal on limitations grounds improper where "there is a question of fact as to the existence of the defense"). GHI argues that Plavin's claims accrued **when he first enrolled in the GHI Plan in 1984**. But Plavin's claims do not concern his 1984 plan, but rather misconduct and injuries sustained in 2011 through 2015 based on GHI's plans for those years. Unless GHI plans to supply Plavin with a time-traveling DeLorean to accommodate its twisted view of the law,[4] GHI's timeliness arguments should be rejected.

---

[4] *See* BACK TO THE FUTURE (Universal Pictures 1985).

### 1.    <u>The GBL Claims are Timely</u>

With respect to GHI's "1984" argument for the GBL claims, Br. at 10 – 12, New York courts have squarely rejected GHI's argument. GBL causes of action must be asserted within three years of when the plaintiff "has been injured by a deceptive act or practice." *Gaidon II*, 750 N.E.2d at 1083; *see* N.Y. C.P.L.R. § 214[2]. Where the allegation is that a defendant deceptively marketed a benefit so as to give a consumer false expectations, the injury occurs not when an individual initially enrolls, but rather when his "expectations were actually not met." *Enzinna v. D'Youville College*, 922 N.Y.S.2d 729, 730 (N.Y. App. Div. 2011) (quoting *Gaidon II*).

In *Gaidon II*, New York's highest court squarely addressed this issue. There, plaintiffs alleged that they purchased vanishing premium life insurance policies based on false representations by the insurer. The insurer argued that the GBL claims were time-barred because the cause of action accrued when the plaintiffs bought their policies. The Court of Appeals rejected this argument:

> Defendants' contention that injury occurred when each plaintiff received a policy that failed to contain terms reflecting the vanishing premium illustrations is based upon a misconception of the gravamen of plaintiffs' [GBL] § 349 causes of action…. Because the gravamen of the complaints of [GBL] § 349 violations was not false guarantees of policy terms, but deceptive practices inducing unrealistic expectations of continuing interest/dividend rate performance to fully offset premiums at the projected date, ***plaintiffs suffered no measurable damage until the point in time when those expectations were actually not met***, and they were then called upon either to pay

9

additional premiums or lose coverage and forfeit the premiums they previously paid.

*Gaidon II*, 750 N.E.2d at 1083–84 (emphasis added).

Similarly, in *Enzinna*, plaintiffs alleged that they enrolled in a chiropractic program based on defendant's deceptive advertising.   Defendant argued that plaintiffs' GBL §§ 349 and 350 claims accrued when plaintiffs enrolled in the program and were time-barred.  The Appellate Division rejected that argument:

> Here, contrary to defendant's contention, plaintiffs were not injured when they initially enrolled in defendant's Doctor of Chiropractic program and began paying tuition. Rather, the injury occurred when plaintiffs graduated and allegedly learned that their degrees did not render them "eligible for licensure examination in all states," as stated in defendant's promotional catalog. It was at that point and not sooner that plaintiffs' "expectations were actually not met."

*Enzinna*, 922 N.Y.S.2d at 730 (quoting *Gaidon II*).

Like the defendants in *Gaidon II* and *Enzinna*, GHI is improperly attempting to redefine plaintiff's claims.  As in *Gaidon II*, "the gravamen of [Plavin's GBL claims] was not false guarantees of policy terms, but deceptive practices inducing unrealistic expectations of [out-of-network reimbursements], [and] [Plavin] suffered no measurable damage until the point in time when those expectations were actually not met, and [he was] called upon to [pay substantial amounts for out-of-network services.]"   *Gaidon II*, 750 N.E.2d at 1084.   As an example,

10

because Plavin was informed of the denial of his claim for benefits in February 2015, that is when he suffered injury under the GBL.

GHI erroneously relies on two cases that addressed a different theory of injury.  They lend no support to GHI's position.  In *Schandler v. New York Life Insurance Co.*, No. 09-10463, 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011), the Court found plaintiff's GBL claim time-barred where the gravamen of her complaint was "that she was falsely promised certain policy terms and thus, [her] injury occurred when she was delivered a policy without these terms."[5]  *Id.* at *5; *id.* at *2 (noting plaintiff identified no misleading "marketing claims or similar representations made . . . after" she received the policy).

Unlike in *Schandler*, the issue here is not that Plavin's policy did not have X or Y term that he was previously told would be included.  In fact, Plavin did not receive the policy at all.[6]  The issue is with GHI's practices outside of the policy document, including its use of an outdated, secretive reimbursement schedule, and GHI's disclosures (and failures to disclose) to consumers and members during the Class Period about the type of coverage they could expect to receive.  As with the

---

[5] *Pike v. New York Life Insurance Co.*, 901 N.Y.S.2d 76, 81 (N.Y. App. Div. 2010), is similarly inapposite: it involved purchase of life insurance policies where plaintiffs claimed they were injured by false guarantees of policy terms.

[6] Even if Plavin had received it, the Certificate of Insurance does not correct any misrepresentations, does not contain the reimbursement schedule, and itself misleading.  *See, e.g.*, Dkt 31-5 at 40 (touting the benefits of Catastrophic Coverage that GHI now admits added nothing to regular coverage).

11

vanishing premium illustrations in *Gaidon II*, these deceptive practices "induc[ed] unrealistic expectations" concerning the manner in which out-of-network claims would be processed and paid. *Gaidon II*, 750 N.E.2d at 1084. This case is on all fours with *Gaidon II*, which is binding on this Court.[7]

## 2.   The Insurance Law Claim is Timely

Insurance Law § 4226 permits "any person aggrieved" by an insurer (like GHI) who circulates or causes to be circulated any statement misrepresenting the "terms, benefits or advantages of any of its policies or contracts." N.Y. Ins. Law § 4226(a)(1), (d). With respect to Plavin's § 4226 claim, GHI again advances the untenable "1984" argument.[8] Br. at 13. Plavin's 1984 policy cannot cover the subject matter of his claims based on GHI's misrepresentations regarding the 2014 policy. As with his GBL claims, Plavin was "aggrieved" when his expectations were not met and he had to pay substantial out-of-network costs that he expected GHI to cover in large part. Compl. ¶ 41 (alleging injury occurred in February 2015).

---

[7] To the extent that GHI advocates ignoring *Gaidon II* in favor of an overbroad reading of *Schandler*, its request should be rejected. *Schandler* is an out-of-circuit, unpublished decision from a district court, while *Gaidon II* is binding on this Court.

[8] GHI relies on two cases to argue that § 4226 claims accrue when an insurance policy is first purchased. Br. at 13. Both cases predate *Gaidon II*, which implicitly overruled them. *Compare Russo v. Mass. Mut. Life Ins. Co.*, 711 N.Y.S.2d 254, 255–56 (N.Y. App. Div. 2000) (holding that limitations analysis applies equally to GBL and § 4226 claims and both are time-barred), *with Gaidon II* (reversing *Russo*'s GBL limitations ruling—the sole issue on appeal).

### 3.    The Unjust Enrichment Claim is Timely

GHI advances the same argument with respect to Plavin's unjust enrichment claim, and it is even more wrong in this context. Unlike in *Sirico v. F.G.G. Products, Inc.*, 896 N.Y.S.2d 61, 65 (N.Y. App. Div. 2010) (cited in Br. at 13), where the plaintiff sued in 2005 over recordings made in the 1960s and for which royalty payments stopped in 1964, here Plavin conferred a benefit on GHI *each time* he directed the City to pay the premiums to re-enroll in the GHI Plan for the coming year, as well as each year that he paid for the Rider.  GHI's wrongful acts occurred when Plavin elected his health insurance policy during each open enrollment period, including those from 2011 to 2015—within the limitations period. *See also Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 264 (S.D.N.Y. 2008) (finding plaintiff's claim timely where the "wrongful acts continued within [six] years of this action") (cited in Br. at 13).  And it was those elections that triggered the payment of premiums by the City and Plavin.  Until those elections were made, GHI did not receive any benefit to restore.  Obviously, neither the City nor Plavin pre-paid for all future plan years in 1984.

### B.    Plaintiff's GBL Claims Easily Clear the Rule 12(b)(6) Pleading Standard

GHI's argument that even though the NYAG found GHI engaged in "repeated violations" of GBL §§ 349 and 350, the Complaint does not even plead a plausible claim, is frivolous.  New York's consumer protection law was intended

"to be broadly applicable, extending far beyond the reach of common law fraud." *N.Y. v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002).  The GBL provisions are "intentionally broad, applying to virtually all economic activity." *U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581, 604 (E.D. Pa. 2014) (citation omitted).

### 1.    The Crux of the GBL Claims is "Consumer-Oriented Conduct"

A defendant's acts are "consumer oriented" if they "have an impact broader than the particular plaintiffs, as opposed to a private contract dispute." *Krahling*, 44 F. Supp. 3d at 605.  This requirement is "construed liberally." *Feldman*, 210 F. Supp. 2d at 301.

GHI argues that the Complaint does not plead consumer-oriented conduct. Br. at 14–17.  This argument should be rejected out-of-hand.  The complaint alleges deceptive practices affecting hundreds of thousands of consumers of health insurance.  Courts routinely permit insureds, as consumers, to bring GBL claims based on an insurer's practice that affects similarly situated insureds.  *See, e.g.*, *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 213 (N.Y. App. Div. 2010) (collecting cases); *Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F. Supp 732, 739 (S.D.N.Y. 1990) (accepting allegations that insurer's conduct affected other policyholders); *cf. Icahn Sch. of Med. at Mt. Sinai v. Health Care Serv. Corp.*, 234 F. Supp. 3d 580, 586–87 (S.D.N.Y. 2017) (allowing hospital to assert GBL claims

14

based on insurer's misrepresentations to hospital *and* insureds about out-of-network reimbursement).

Further, GHI's practice of misrepresenting the benefits of its health plan to hundreds of thousands of City employees and retirees indisputably has a "broad impact" on the "public interest" in New York. *Krahling*, 44 F. Supp. 3d at 605; *Feldman*, 210 F. Supp. 2d at 301–02 (accepting allegations of "repeated acts of deception directed at a broad group of individuals"). Surely GHI does not mean to suggest that "New York's interest in creating 'an honest marketplace where trust, and not deception, prevails'" does not apply when City employees' healthcare and finances are at stake. *Krahling*, 44 F. Supp. 3d at 605 (quoting *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1194–95 (N.Y. 2002)).

Not surprisingly, the NYAG clearly identified insureds as consumers in determining that GHI violated GBL §§ 349 and 350. *See* Dkt. 31-4 ¶¶ 7, 13, 19, 20, 26–27, 34, 35 (AOD referring to GHI members as "consumers"); *People ex rel. Schneiderman v. Orbital Pub. Grp., Inc.*, 21 N.Y.S.3d 573, 585 (N.Y. Sup. Ct. 2015) ("In order to make a prima facie case under GBL § 349, the State must show that the respondents have engaged in a 'deceptive act or practice that is consumer oriented'").

GHI relies on *New York University v. Continental Insurance Co.*, 662 N.E.2d 763 (1995), to argue that this case implicates a private contract of insurance

15

negotiated between sophisticated parties. Br. at 14–16. It does not. The *NYU* case involved a claim by the university that an insurer misled it in connection with a claim under a tailored, negotiated commercial insurance policy. Plavin is not a university, this is not commercial insurance, and his claims have nothing to do with the negotiation of the contract between the City and GHI.[9] Indeed, the terms of the City contract are wholly irrelevant to Plavin's claims; whatever those terms, GHI was not permitted to then mislead hundreds of thousands of City employees and retirees regarding out-of-network reimbursements.

## 2.   GHI Made Numerous Materially Misleading Statements to Plaintiff and Class Members

GHI's next argument that its marketing materials were not materially misleading, *see* Br. at 1-2 & 17–23, is similarly meritless.

First, this argument is in direct conflict with the AOD and the NYAG's findings that GHI committed repeated violations of GBL §§ 349 and 350. GHI's argument that the NYAG's findings were based on a different standard is simply wrong: while Executive Law § 63 does not have a reasonable consumer limitation, the investigation was launched pursuant to both Article 22-A of the General

---

[9] GHI places too much weight on the fact that the City, like any large employer, negotiated some of the *benefits* available to its employees. Br. at 15–16. Adopting GHI's position would mean barring any employee who receives insurance through a plan negotiated by her employer from ever asserting a GBL claim. That is not the law.

Business Law[10] and Executive Law § 63, and the NYAG found repeated violations of ***each*** of Executive Law § 63(12), GBL § 349, and GBL § 350.  The latter two findings were necessarily based on the reasonable consumer standard.  *See Orbital Pub. Grp.*, 21 N.Y.S.3d at 585–86 (in a special proceeding brought under § 63 and GBL Article 22-A, stating that GBL §§ 349 and 350 require the conduct to be deceptive to a reasonable consumer and that the State raised "a question of fact whether reasonable consumers would be materially misled").

Second, GHI is improperly asking this Court to resolve a disputed issue of fact at the pleading stage.  Whether a deceptive act or practice was materially misleading is virtually always a question of fact that cannot be resolved on a motion to dismiss.  *See, e.g.*, *Eidelman v. Sun Prods. Corp.*, No. 16-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (stating that dismissal is proper only when the "impressions that a reasonable consumer might draw are 'patently implausible' or 'unrealistic'" and denying motion to dismiss).

Third, GHI's argument appears primarily based on an argument that there were disclaimers and that consumers should have been required to seek out more information that would show GHI's marketing materials.  That is not the law in New York.  As New York's highest court explained in *Gaidon I*, § 349 claims can be based on either a "representation or omission" and a failure "to reveal that the

---

[10] GBL §§ 349 and 350 are within Article 22-A of the GBL.

illustrated [examples] were wholly unrealistic" was actionable where it created "unrealistic expectations." *Gaidon v. Guardian Life Ins. Co.* (*Gaidon I*), 725 N.E.2d 598, 604, 608 (N.Y. 1999). The Court further held that while the presence of disclaimers and a merger clause might be "compelling when resisting plaintiffs' claims of fraud . . . they cannot, on this record, justify dismissal of plaintiffs' section 349 claims." *Id.* at 604.[11]

Indeed, the declaration that GHI improperly[12] submitted on a motion to dismiss is telling in that it states generally that the Certificate of Insurance was "available" to City of New York employees and retirees, *see* Dkt. 31-3 at ¶ 4, yet without specifying how it was available (and without disputing that it was never provided to Plavin or other insureds). Contrary to the suggestion in GHI's brief, it was not available online during the Class Period. GHI cannot possibly be suggesting that hundreds of thousands of consumers should have had to personally travel to GHI's New York headquarters to obtain information showing that: (a) the

---

[11] *See Orbital Pub. Grp.*, 21 N.Y.S.3d at 586 ("disclaimer does not justify dismissal"); *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012) ("[T]he disclaimers set forth in defendant's catalogs do not . . . bar [plaintiff's] claims for deceptive trade practices at this stage of the proceedings, as they do not establish a defense as a matter of law.") (internal quotation marks omitted); *Koch v. Greenberg,* 14 F. Supp. 3d 247, 262 (S.D.N.Y. 2014) ("[W]hile a plaintiff must have suffered harm to bring a successful GBL §§ 349 or 350 claim, he need not show justifiable reliance such as that which is required for fraud.").

[12] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

Coverage Examples that GHI provided to consumers were false; (b) the 1983 Schedule had not been updated and did not provide reimbursement levels even close to the amounts reflected in the marketing materials; (c) the disclaimer that reimbursement amounts "may be less" than the fee charged by the non-participating provider actually means "will be substantially less"; and (d) "additional 'Catastrophic Coverage'" was not actually additional, did not provide what is commonly referred to as Catastrophic Coverage, and that GHI's promise to pay "100% of the Catastrophic Allowed Charge" was meaningless because that was simply the same as the normal allowance.

GHI's cited authorities are easily distinguishable and only undermine GHI's position. A reasonable consumer presented with insurance marketing materials that were designed to overstate the extent of out-of-network coverage and which have already been found unlawful by the NYAG cannot plausibly be compared to consumers who should: (1) know that hotel room intermediary Hotels.com earns a profit on every room booked through the site; (2) know that the Yankees don't directly sell tickets on the ticket *resale* site StubHub.com; and (3) understand that the weight on a package of seasoned shrimp includes the other listed ingredients. *See* Br. at 22–23 (citing cases).

19

### C.   The Unjust Enrichment Claim Should Proceed

#### 1.   Plaintiff Disputes the Existence and Scope of the Alleged Contract on Which GHI Seeks to Rely

GHI next argues that the unjust enrichment claim should be dismissed because "[t]he GHI Plan is governed by contractual terms and conditions." *Id.* at 24.  To support its argument that Plavin's claims are governed by a contract, GHI submits a Certificate of Insurance (COI) purportedly for the GHI Plan.  *See* Dkt. 31-5.  GHI is incorrect.

"[T]he predicate for dismissing quasi-contract claims is that [an enforceable] contract at issue 'clearly covers the dispute between the parties.'"  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 483 (S.D.N.Y. 2014) (quoting *Union Bank, N.A. v. CBS Corp.*, No. 08-8362, 2009 WL 1675087, at *7 (S.D.N.Y. June 10, 2009)).  Neither GHI's motion nor the Manalansan Declaration explain how the COI constitutes a valid contract between Plavin and GHI.  For a contract to be valid under New York law, there must be an offer, acceptance, consideration, mutual assent, an intent to be bound, and both sides must agree on all of the essential terms.  *See Kolchins v. Evolution Mkts, Inc.*, 8 N.Y.S.3d 1, 9 (N.Y. App. Div. 2015).  The COI submitted by GHI is not signed by Plavin and the Manalansan Declaration does not even state that it was provided to him.  *See* Dkt. 31-3 ¶ 4 (claiming the Certificate was "available" to City employees and retirees— not that GHI ever provided it to Plavin or any other insureds).  Plavin's Complaint

20

alleges that the *only* documents Plavin received regarding the terms of the Plan were the Summary Program Description and online Summary of Benefits and Coverage, that GHI never provided a "certificate of insurance" or "schedule of reimbursement rates," and that Plavin never executed any contract with GHI. Compl. ¶¶ 22–24.  GHI has therefore utterly failed to establish the existence of a valid contract.

There is also an even more glaring defect with GHI's argument: the COI submitted by GHI as proof of "contractual terms and conditions" itself ***expressly states that it is not a contract between GHI and policyholders***:

> This booklet is your Certificate of Insurance. It is evidence of your coverage under the Group Contract between GHI and the City of New York. ***It is not a contract between you and GHI.***

Dkt. 31-5 at 5 (emphasis added).  So when GHI asserts that policyholders "are not without recourse because they can assert a breach of contract claim," Br. at 24, it is entirely unclear what contract GHI is talking about.  It cannot be the COI that GHI never sent to policyholders and which expressly states that it is not a contract.  Where the existence of a contract is disputed, "courts . . . have routinely allowed plaintiffs to advance past the pleading stage on an alternate theory of unjust enrichment."  *Dervan v. Gordian Grp. LLC*, No. 16-1694, 2017 WL 819494, at *12 (S.D.N.Y. Feb. 28, 2017) (internal quotation marks omitted).

21

Finally, the claim asserted by Plavin does not even arise out of the terms of the COI, which has no merger clause, does not contain a reimbursement schedule, and is itself misleading.  Even in the alternative universe where a contract existed between Plavin and GHI, it would not "clearly cover" the claim as alleged in the complaint.  *See In re LIBOR*, 27 F. Supp. 3d at 483.  The unjust enrichment claim should proceed.

### 2. <u>The Unjust Enrichment Claim Exists Independently of the GBL Claim and Can Proceed in Parallel</u>

GHI argues that Plavin's unjust enrichment claim must be dismissed because it is duplicative of his GBL claims.  Br. at 25–26.  Neither of the cases GHI cites stands for the proposition that Plavin cannot pursue both unjust enrichment and GBL claims where, as here, the claims are non-duplicative and seek distinct damages.

Under New York law, an unjust enrichment claim is not duplicative where a "reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [Plaintiffs'] claims sounding in law" (and vice versa).  *Nuss v. Sabad*, No. 10-279, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016) (denying motion for summary judgment to dismiss unjust enrichment claim as duplicative of tort claims).  Further, "claims are not duplicative" where "a claimant is entitled to a particular category of damages on one claim but not the other."  *Myers Indus.*, 171 F. Supp. 3d at 122–23 ("In New York, duplicative

22

claims arise from the same facts and allege the same damages.") (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)).

Here, neither the elements of the unjust enrichment claim nor the damages sought "duplicate" the GBL claims.  Among other things: (1) unjust enrichment requires that GHI benefitted at Plavin's expense, whereas the GBL claims require that Plavin was injured by GHI's conduct; (2) an unjust enrichment claim can be based on the mere fact that GHI failed to communicate the policy terms and the reimbursement schedule and obtain mutual assent to both, without regard to whether its marketing materials were deceptive; (3) unjust enrichment occurred each time Plavin selected the GHI Plan and paid for the Rider, while the GBL injury did not occur until Plavin's reasonable expectations were not met; (4) under the unjust enrichment cause of action, Plavin is entitled only to restitution of the benefit conferred (less amounts paid out), whereas his GBL claims entitle him to actual and statutory damages; and (5) the GBL claims require that GHI engaged in consumer-oriented conduct, while unjust enrichment contains no such element.

Two cases not cited by GHI are instructive.  *Nuss v. Sabad* involved unjust enrichment and fraudulent misrepresentation claims based on the parties' joint purchase of property in Mexico.  There, the Court reasoned (on summary judgment) that even if the jury decided plaintiff did not rely on defendants' fraudulent misrepresentations (thus gutting plaintiff's *tort* claim), "the Court could

23

still find that [defendants] received a benefit . . . that [o]ught to in 'equity and good conscience' be turned over to [plaintiff]." *Id.* at *11 (quoting and distinguishing *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).  As *Nuss* explained, in *Corsello* "the harm . . . was the continued attachment of a telephone terminal box to the plaintiffs' building.  The plaintiffs' claims for either trespass or inverse condemnation could not fail while still permitting an unjust enrichment claim: Verizon was either entitled to place their box on the building, or they were not." *Id.* (citation omitted).  By contrast, the *Nuss* plaintiffs' fraud claims might fail but "the loss of any one element [of fraud]" would not, as a matter of law, "preclude equitable recovery under a theory of unjust enrichment." *Id.*

Similarly, in *McCracken v. Verisma Systems Inc.*, No. 14-6248, 2017 WL 2080279 (W.D.N.Y. May 15, 2017), plaintiffs brought a putative class action alleging that several hospitals and a medical records provider "systematic[ally] overcharge[ed] [] patients who requested copies of their medical records." *Id.* at *1.  Plaintiffs alleged claims under New York Public Health Law § 18 and GBL § 349, and also brought an unjust enrichment claim. *Id.* at *7–8.  Citing the different elements of the unjust enrichment § 349 claims, including the latter's requirement of consumer-oriented conduct, the court refused to dismiss the unjust enrichment claim as duplicative because "a reasonable trier of fact could find the

elements [of] unjust enrichment without establishing all the elements for Plaintiffs'

NYGBL § 349 claim." *Id.* at *8.

Here, as in *Nuss* and *McCracken,* there are numerous differences between

the § 349 and the unjust enrichment claims in terms of both elements and

damages.  This is not a case where the unjust enrichment claim merely duplicates

another tort claim.  A jury could find that GHI's marketing materials were not

sufficiently deceptive to sustain a GBL claim, but that it would be inequitable for

GHI to retain profits from policies when it never even sent the terms to

policyholders.  That is a quintessential unjust enrichment claim and has nothing to

do with deceptive business practices.  And, conversely and as in *McCracken*, a jury

could adopt GHI's argument that its conduct was not consumer-oriented while

nonetheless determining that it would be inequitable to permit GHI to profit from

its deceptive conduct.

As with many of GHI's arguments, GHI's argument is premature.  At this

early stage and on the facts before the Court, there is no basis to conclude, as a

matter of law, that the GBL and unjust enrichment claims are duplicative.  Both

should proceed.

### 3.    The Complaint Adequately Alleges All Elements of the Unjust Enrichment Claim

To state a claim for unjust enrichment under New York law, a plaintiff must

allege: "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that

'equity and good conscience' require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).  There is no privity requirement, *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746–47 (N.Y. 2012), and "[i]t does not matter whether the benefit is directly or indirectly conveyed [to the defendant]."  *Mfrs. Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 708 (N.Y. App. Div. 1990).  The "essence" of the claim "is that one party has received money or a benefit at the expense of another."  *Kaye*, 202 F.3d at 616 (internal quotation marks omitted).

GHI disputes the sufficiency of Plavin's allegations regarding the second and third elements.  Br. at 26-27.  Both arguments are meritless.

### i)   The Complaint Alleges GHI Benefitted at Plaintiff's Expense

In arguing that Plavin fails to allege he suffered a loss, GHI ignores the basic rule that there is no privity requirement for an unjust enrichment claim and a benefit may be conferred on the defendant "directly or indirectly."  GHI also glosses over the fact that the Complaint alleges *two* types of loss, each of which satisfies the pleading requirement:

- **(1)** Plavin is legally entitled to health insurance as part of his compensation package.  Compl. ¶¶ 19, 50.  He chose GHI from among 11 plans and directed the City to pay premiums to GHI each year they were due.  *Id.* ¶¶ 2, 12–13, 19–20, 25, 50.  His selection of GHI necessarily deprived him of the benefits of another plan.

- **(2)** Plavin directly paid for the optional (and illusory) Enhanced OON Rider.  *Id.* ¶¶ 13, 36–38, 41, 51.

26

GHI's arguments bear solely on the first type of loss (it does not dispute that Rider payments constitute loss, *see* Br. at 27 n.6).  GHI erroneously focuses on the fact that the City made the premium payments, and ignores the allegations that those payments were made as directed by Plavin, who was statutorily entitled to have the payments made on his behalf as part of his employment and retirement package.  *See* N.Y.C. Admin. Code § 12-126.[13]  More importantly, unjust enrichment requires neither privity nor a "direct" benefit.  Here, Plavin pleaded two forms of loss, each of which conferred a benefit on GHI at his expense and is sufficient to allege a claim for unjust enrichment.

ii)   The Complaint Alleges That the Equities Support Relief for Plaintiff

GHI makes an improper *merits* argument that Plaintiff should not be permitted to proceed to discovery on his unjust enrichment claim because his alleged delay in filing suit would be inequitable *to GHI*.  Br. at 27–28.  This literally turns the law and equity on its head.  Having misled consumers for years about their treatment of out-of-pocket claims, GHI now thinks equity demands a

---

[13] GHI's cited cases do not support its argument that Plavin lacks a "property interest."  Br. at 27 (citing *N.Y. v. Barclays Bank*, 563 N.E.2d 11, 14–15 (N.Y. 1990) (applying U.C.C. rule regarding actual or constructive delivery of checks); *Navana Logistics Ltd. v. TW Logistics, LLC*, No. 15-856, 2016 WL 796855, at *1–2, 7–8 (S.D.N.Y. Feb. 23, 2016) (rejecting freight shipper's unjust enrichment claim where only the seller, not the shipper, suffered loss)).  Neither case tracks, on the facts or the law, Plavin's direction to his employer to pay his statutorily-entitled premiums to his chosen insurer.

27

"Get-Out-of-Jail-Free" card?  Thankfully, this is not what the law provides.  The only question is whether Plavin plausibly alleged facts "support[ing] an inference that equity and good conscience necessitate that plaintiffs recover the alleged benefit wrongly realized by [defendant]."  *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580 (E.D.N.Y. 2014) (denying motion to dismiss where plaintiffs plausibly alleged facts supporting this element).  Absent from GHI's brief is any argument that the Complaint fails to adequately allege this element of the unjust enrichment claim.  He has.

### 4.     Dismissal of the Class Claims is Unwarranted

GHI's arguments that the class claims fail should be rejected for the same reasons as set forth above.  Further, discovery has yet to commence and there is no motion for class certification pending.  Class allegations should not be decided, let alone stricken, before the certification stage, and a class definition can always be narrowed and subclasses established at that stage.  *See Reed*, 2016 WL 2736049, at *3 (declining to decide "premature" class issues on motion to dismiss); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 515 (S.D.N.Y. 2015) (denying premature motion to strike class claims); *Jackson v. Se. Pa. Transp. Auth.*, 260 F.R.D. 168, 182–83 (E.D. Pa. 2009)  (court may "limit or alter the [class] definition" to make the class certifiable).

5454780v1/015547

In addition, GHI's argument rests on a misunderstanding of Plavin's claims. All policyholders during the Class Period have a claim that it would be inequitable for GHI to retain profits from policies sold without a proper disclosure of policy terms, regardless of whether they incurred out-of-network charges. The class definition is therefore proper. Subclasses accounting for the differing statutes of limitation and differing injury for Plavin's claims can be established at the class certification stage. GHI is plainly on notice of those claims, which is all that matters. *See* Fed. R. Civ. P. 8.

<h4 style="text-align:center">5.    <u>GHI's Request to Strike Plaintiff's Request for Enhanced Damages is Premature</u></h4>

In a last-ditch effort to blunt its potential exposure, GHI argues that Plavin's treble damages request (GBL §§ 349, 350) and penalty request (Ins. Law § 4226) should be dismissed because Plavin fails to include "factual allegations of knowing or willful violations." Br. at 29–31. GHI's argument (unsupported by a single caselaw citation) is meritless.

*First*, the Complaint satisfies the pleading standard for knowing and/or willful conduct, which provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see* Compl. ¶¶ 60 (GHI intentionally and willingly violated § 349), 66 (§ 350), 69 (§ 4226); *id.* ¶ 39 (NYAG found GHI engaged in "repeated" violations of GBL). Beyond those general allegations, the Complaint sufficiently alleges the factual

predicates for finding GHI engaged in knowing and willful behavior.  *See id.* ¶¶ 4–11, 25, 35 (deceptive promotion to foster enrollment in GHI Plan over others while hiding truth about out-of-network reimbursement), 27–35 (deception and concealment of reimbursement schedule and empty promises of "Catastrophic Coverage"), 36–38 (marketing of worthless Rider), 1, 3, 39 (history of violating New York law in marketing and administration of the Plan).

*Second*, GHI fails to cite a single case dismissing a request for enhanced damages like those sought here.  For good reason: "A motion to dismiss is addressed to a 'claim'—not to a form of damages."  *Amusement Indus.*, 693 F. Supp. 2d at 318 & n.5 (dismissing damages on a 12(b)(6) or 12(f) motion is permissible only if the award is not authorized by law).  Because GHI's request "address[es] the relief to which the plaintiffs are entitled rather than the sufficiency of the claims in the pleadings, [ ] it would be premature to address these issues before these claims have been decided."  *Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 440–41 (S.D.N.Y. 2002); *McCracken v. Verisma Sys., Inc.*, 131 F. Supp. 3d 38, 52–53 (W.D.N.Y. 2015) (denying motion to dismiss § 349 treble damages request as premature).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, GHI's motion to dismiss should be denied in its entirety.  In the event any part of the motion is granted, Plavin respectfully requests leave to amend under Fed. R. Civ. P. 15(a)(2).


 Dated: November 17, 2017

/s/ William Christopher Carmody

William Christopher Carmody (*Pro Hac Vice*)
(NY4539276)
Arun Subramanian (*Pro Hac Vice*)
(NY4611869)
Halley W. Josephs (*Pro Hac Vice*)
(NY5348214)
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel.: 212-336-8330
Fax: 212-336-8340
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
hjosephs@susmangodfrey.com

Steve Cohen (*Pro Hac Vice*)
(NY5159587)
15 Broad St., Suite 2412
New York, NY 10005
Tel.: (212) 255-4944
Steve.Cohen@SteveCohenEsq.com

5454780v1/015547

J. Timothy Hinton, Jr., Esq. (PA ID 61981)
Michael F. Cosgrove, Esq. (PA ID 47349)
HAGGERTY   HINTON   &   COSGROVE
LLP
203 Franklin Avenue
Scranton, PA 18503
Tel: (570) 344-9845
timhinton@haggertylaw.net
mikecosgrove@haggertylaw.net

*Attorneys for Plaintiff and the Class*

5454780v1/015547

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.8,</u>
## <u>AS MODIFIED BY ORDER OF THE COURT (DKT. 38)</u>

I hereby certify that the foregoing *Response Brief in Opposition to Defendant's Motion to Dismiss* contains 7,453 words, exclusive of the Table of Authorities, Table of Contents, signature block and certificates, as determined by the word count feature of Microsoft Word, the word processing system used to prepare this document.

<em>/s/ Halley W. Josephs</em><br>
Halley W. Josephs

<em>Attorneys for Plaintiff and the Class</em>

5454780v1/015547

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has

been served via electronic means on the following counsel of record, this 17th day

of November, 2017, as indicated below:

**DEBEVOISE & PLIMPTON LLP**
919 Third Ave.
New York, NY 10022
(212) 909-6000
John Gleeson
jgleeson@debevoise.com
Maura K. Monaghan
mmonaghan@debevoise.com
Eric W. Shannon
eshannon@debevoise.com
Jared I. Kagan
jkagan@debevoise.com

**LEVAN LAW GROUP LLC**
One Logan Square – 27th Floor
18th & Cherry Streets
Philadelphia, PA 19103
(215) 561-1500
Peter H. LeVan, Jr.
plevan@levanlawgroup.com

*/s/ Halley W. Josephs*

*Attorneys for Plaintiff and the Class*