THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN PLAVIN, on behalf of himself
and all others similarly situated, *et al.*

      Plaintiff,

v.

GROUP HEALTH INCORPORATED,

      Defendant.

3:17-CV-1462
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

This is a class action brought on behalf of Plaintiff and similarly situated persons who were enrolled in Group Health Incorporated's ("GHI") Comprehensive Benefit Plan for the employees and retirees of the City of New York at any time from 2011 to 2015. Plaintiffs seek to represent a class of GHI Plan members and assert a pattern of unfair and deceptive practices in which GHI allegedly engaged which falsely described the Plan as providing extensive coverage for services by non-participating providers and falsely representing that reimbursements rates for most out-of-network services would be far less than the actual cost of the service so that the out-of-network coverage promised by GHI was, as has been alleged by Plaintiffs, "functionally illusory." (Am. Compl., Doc. 70, ¶ 7). Plaintiffs' Complaint further alleges numerous other misrepresentations and misleading statements by GHI, including deceptive marketing of the GHI Plan, misrepresentations as to the levels of reimbursement for out-of-network coverage, fraudulent promises as to "catastrophic

coverage", misrepresentations regarding the Enhanced OON Rider and the issuance of other deceptive marketing materials and benefit descriptions.

Plaintiffs' Complaint presents a claim of unjust enrichment on behalf of Plaintiffs and the putative class, a claim of deceptive acts and business practices in violation of New York General Business Law Section 349, a claim of false advertising in violation of New York General Business Law Section 350, and a claim of misrepresentation in violation of New York Insurance Law Section 4226.

Presently before the Court are discovery disputes arising out of GHI's request for production of documents, specifically requests ¶¶ 56, 57, 58 (see Doc. 95-1) and Plaintiffs' objections thereto (Doc. 95-2). Also before the Court are GHI's second set of interrogatories (Doc. 95-3) and Plaintiffs' objections to interrogatories numbers 10 and 11 (See Doc. 95-4).

GHI's requests for production in ¶¶ 56, 57 and 58 are as follows:

56. All Documents and Communications sent by You or on Your behalf, including from Your counsel, to any Person or group of Persons in order to Solicit participation in this Lawsuit either as a named plaintiff, class representative or potential class member.

57. All Documents and Communications that You or Your counsel received in response to the Solicitations described in Request No. 56.

58. All Documents and Communications Concerning the materials described in Requests Nos. 56 and 57, including but not limited to, and by way of example only, distribution lists, requests for distribution lists and Documents requesting permission to post or distribute the Solicitations described in Request No. 56.

2

(Doc. 95-1).

Plaintiffs object to these three requests for production, asserting with respect to each that the request is "vague, ambiguous, overbroad and unduly burdensome". Plaintiffs further state that the terms "solicit" and "solicitations" are vague and ambiguous and that the requests seek information or documents that are protected from discovery "by the attorney-client privilege, the work-product privilege, the common-interest privilege, spousal privilege, or other applicable privilege." (Doc. 95-2 at 7-8). Plaintiffs additionally assert the lack of relevancy of the requested information as it relates to the issues in this case and assert that the requests are "not proportional to the needs of the case." (*Id.*).

With respect to GHI's second set of interrogatories (Doc. 95-3), paragraphs 10 and 11 are at issue by virtue of Plaintiffs' objections. These Interrogatories state:

> 10. Identify all Persons You or Your counsel Solicited, or attempted to Solicit, to join this Lawsuit either as a plaintiff, class representative or potential class member and describe in detail the nature of those interactions.
>
> 11. Identify all Persons with whom Your counsel discussed this Lawsuit and describe the contents of those discussions including, by way of example only, any factual information such Persons provided that supports or refutes Your allegations, or the reasons such Persons did not become a named plaintiff or class representative.

(*Id.* at ¶¶ 10, 11).

Plaintiffs' objections to these interrogatories assert that the information sought by GHI is neither relevant to any of the issues in this case nor proportional to the needs of the case. Plaintiffs claim that both interrogatories seek information covered by the attorney-

client privilege or work product privilege including, with respect to interrogatory number 11, "Plaintiffs' counsel's discussion[s] with potential clients, to the extent any occurred." (Doc. 95-4, at 5-6). Plaintiffs further object to the use by GHI of the term "solicit" because that term is "vague" and "because it calls for the Plaintiffs to identify all Persons their counsel 'attempted to solicit', whatever that means." (*Id*. at 5).

Counsel for the parties then filed a sequential series of letters to the Court each of which further asserted the validity of their position and offered rebuttal of opposing counsel's letters.

As briefly as possible the Court will recount the positions staked out by the parties in their letters each of which has been carefully reviewed by the Court. GHI's counsel's letter of April 5, 2022 (Doc. 95) characterizes its requests for documents and interrogatories as seeking "documents and communications concerning the solicitation of plaintiffs or putative class members for this lawsuit, including those materials sent, received or maintained solely by Plaintiffs' counsel." (*Id*. at 1). GHI claims its requests are relevant to "defining the scope of the putative class . . . , determining whether the named Plaintiffs' claims are typical to the class and whether common questions of fact and law predominate, and whether Plaintiffs or their counsel were made aware of information that contradicts or undermines the allegations in the Amended Complaint." (*Id*.). GHI further asserts that communications sent by counsel to putative class members seeking information about the class are relevant and not *per se* privileged, citing *Morisky v. Pub. Serv. Elec. & Gas Co.,* 191 F.R.D. 419 (D.N.J. 2000). GHI

4

additionally claims that solicitation efforts to an attorney-client relationship are not protected by the attorney-client privilege, citing *Auscape Int'l v. Nat'l Geographic Soc'y*, 2002 WL 31250727, *1 (S.D.N.Y. 2002), and *EEOC v. CRST Van Expedited Inc.*, 2009 WL 136025, *4 (N.D. Iowa 2009). (*See* Doc. 95, at 1-2).

Again citing *Morisky, supra* at 425, GHI argues that "[w]ork product protection is similarly inapplicable to the extent Plaintiffs' counsel sent any communications via email list-serves, social media or otherwise to large groups." (*Id.* at 2). With respect to interrogatory numbers 10 and 11, GHI seeks the identification of any persons that the Plaintiffs or their counsel solicited to join this lawsuit and a description of the information learned during those interactions. GHI claims that the names and addresses of putative class members are discoverable, citing *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) and *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 354 (1978), and further argues that the information sought in its interrogatories, specifically the identities of persons who Plaintiffs or their counsel solicited to join the lawsuit, is not privileged (Doc. 95, at 3 (citing cases)). Further, GHI states that "any factual information contained in communications with those persons (as requested in Interrogatory No. 11), including, but not limited to, the reasons that such persons did not become a named plaintiff or class representative, are neither privileged nor otherwise protected from disclosure." (*Id.* (citing, *inter alia*, *Gates v. Rohm & Haas Co.*, 2006 WL 3420591, *2 (E.D. Pa. 2006)).

Finally, GHI's April 5, 2022 letter requested clarification of paragraph three of this Court's March 31, 2002 Order (Doc. 94), stating "while GHI understands that the Order does not require Plaintiffs to disclose privileged communications, GHI respectfully requests that the Court clarify that Plaintiffs are nonetheless to provide the *identity* of the individuals with whom those communications occurred."  (Doc. 95, at 3-4) (emphasis in original).

In response to the letter of GHI's counsel, counsel for the Plaintiffs by letter dated April 6, 2022 informed the Court that "the parties have not met and conferred and no ripe dispute exists for the Court's consideration."  (Doc. 6). Plaintiffs then sought until April 12 to confer with GHI and file a letter in response to GHI's letter on the disputed issues.  Plaintiffs' counsel filed a letter on April 12, 2022 (Doc. 97) informing the Court that counsel had conferred and had "narrow[ed] the issues in dispute" and would continue to confer and thereafter notify the Court as to any issues that remained unresolved.

By letter dated May 4, 2022, Plaintiffs' counsel informed the Court that, after meeting and conferring, "the parties were able to resolve all issues except the following GHI demands:"

> (1) the identity of and communications with any individuals who contacted Plaintiffs' counsel for legal advice regarding potential representation in the lawsuit; and (2) GHI's interrogatory request for a narrative from Plaintiffs' counsel regarding communications with prospective clients, namely the "reasons such persons did not become a named plaintiff or class representative."

(Doc. 102, at 1).

Plaintiffs' counsel's letter set forth their position on these two unresolved issues. First, as to the question whether Plaintiffs' counsel "solicited" potential named plaintiffs, Plaintiffs' counsel stated:

> As Plaintiffs' counsel has explained to GHI repeatedly, and offered to document in writing, Plaintiffs' counsel did *not* reach out to any individuals to join the lawsuit. The 'solicitation' alleged by GHI is the fact that one of Plaintiffs' co-counsel spoke to an acquaintance about a potential lawsuit against GHI, and sent that acquaintance a blurb about the lawsuit that included his contact information for those interested in obtaining legal advice and potentially joining the lawsuit. That acquaintance passed on the information which then appeared on certain private email list-serves. Co-counsel sent subsequent messages about the case, including his contact information, to his acquaintance as well as to persons who earlier reached out to him; those messages later appeared on private list-serves.

(Doc. 102, at 1-2) (emphasis in original).

Plaintiffs then write to justify their objections. First, Plaintiffs claim the information is not relevant to class certification "let alone any claim or defense." Plaintiffs state what they believe must be proven under Sections 349 and 350 of the New York General Business Law, then state:

> Whom Plaintiffs' counsel was in touch with does not define the 'scope' of the class. All members of the putative class were GHI Plan members identifiable through GHI's own records. GHI also claims in conclusory terms that absent class member discovery is relevant 'to determining whether the named Plaintiffs' claims are typical to the class.' . . . Typicality focuses on GHI's conduct, namely its misleading marketing of the GHI Plan to public employees and retirees.

(*Id.* at 3).

Second, Plaintiffs assert that "[t]he only reason that GHI seeks to learn the *identity* of individuals that counsel communicated with is to 'seek discovery *from* those persons,' including why certain absent class members did not become named plaintiffs, in order to try to defeat typicality and predominance at class certification." (*Id.* at 4) (emphasis in original). But, Plaintiffs assert, "the reasons an individual did not become a named plaintiff are not relevant to typicality, predominance, or any other issue." (*Id.*).

Plaintiffs then address GHI's request that Plaintiffs' counsel produce any subsequent communications that Plaintiffs' counsel had with individuals who received the messages at issue. Plaintiffs state in bold print:

> Plaintiffs' counsel can confirm to the Court and GHI that any putative class members who contacted counsel about the possibility of joining the lawsuit as named plaintiffs sought legal advice.

(*Id.*). Thus, Plaintiffs offer that "responses to a 'solicitation letter' are privileged when the prospective client seeks legal advice." (*Id.*).

Next, counsel for Plaintiffs dismisses GHI's reliance on case law concerning the discoverability of factual responses to "questionnaires" by denying, again, that it sent any questionnaires, stating:

> Plaintiffs' counsel didn't send any questionnaires. This isn't a case involving factual responses to a questionnaire with no request for legal representation. . . . There was nothing even remotely resembling a questionnaire, and communications that Plaintiffs' counsel received from prospective clients sought legal advice and are privileged.

(Doc. 102, at 4-5).

8

Plaintiffs' counsel also distinguishes GHI's claims that "it is well settled that the names and addresses of putative class members are discoverable" by asserting that the authorities cited by GHI "involve discovery from the defendant wrongdoer." GHI, Plaintiffs' counsel asserts, "already has records of GHI Plan members that identify who is in the class, and cannot credibly claim it needs this discovery from Plaintiffs." (*Id.* at 5).

Plaintiffs' counsel then addresses GHI's interrogatories which require that Plaintiffs' counsel respond with a narrative "describ[ing] the information learned during [ ] interactions" with any putative class members, including "the reasons such Persons did not become a named plaintiff or class representative." (*Id.* at 5). Counsel for Plaintiffs note GHI's reliance on *Morisky, supra*, where the questionnaires in that case were deemed discoverable "because they may contain information that runs contrary to the claims of the proposed class plaintiffs." (*Id.*). Plaintiffs' counsel distinguishes *Morisky*, stating that "the questionnaires there exclusively involved facts provided by individuals, without seeking legal advice – some before they even knew they were providing information for a lawsuit." (*Id.*). In contrast, Plaintiffs' counsel states "[h]ere again, there were no questionnaires or witness statements. Putative class members simply contacted Plaintiffs' counsel seeking legal advice about this action – just as GHI presumably had discussions with litigation counsel about the case before agreeing to their representation." (*Id.* at 5-6).

Plaintiffs' counsel concludes on this issue that "At bottom, GHI's request is an attempt to subvert the presumption against absent class discovery by seeking otherwise

9

undiscoverable, irrelevant information." (*Id.* at 6). Citing to *Hickman v. Taylor*, 329 U.S. 495, 511-513 (1947), Plaintiffs' counsel asserts "[u]der *Hickman*, a party cannot make a 'naked general demand' for counsel's work product regarding witness interviews through interrogatories or otherwise." (Doc. 102, at 6).

Counsel for Defendant GHI filed a responsive letter on May 6, 2022 (Doc. 103). First, GHI denies that it is seeking discovery from absent class members, stating instead that its request for production of documents numbers 56-58 and interrogatories numbers 10 and 11 "seek relevant discovery concerning the merits of this dispute (and class certification issues) from the named plaintiffs and their agents – namely their counsel." (*Id.* at 1). GHI further contends that just because the requested "facts" "may concern absent class members or reside uniquely with plaintiffs' counsel's possession is not a reason to refuse disclosure." (*Id.*) (citing 8B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2177 ("A party must disclose facts in its attorney's possession even though the facts have not been transmitted to the party.")).

Next, GHI argues that "[i]f plaintiffs or their counsel received correspondence from absent class members" which information, in summary, presents evidence of individuals who stated they chose the GHI Plan as the best or only option with out-of-network coverage and that they were happy with the rates of reimbursement they received from GHI that such communications would be relevant to GHI's defenses "and to a potential motion for summary judgment . . ." (Doc. 103, at 1). GHI again cites *Morisky* to support this line of argument.

10

Thirdly, GHI asserts that its discovery requests "do not invade any privilege or protection." GHI's counsel speculates that "[i]t is likely that no attorney-client privilege exists between plaintiffs' counsel and absent class members," citing, once again, *Morisky* for the proposition that in a putative class action which has not been certified, "only clients can claim this privilege" and "even if that were not the case, factual information conveyed to an attorney by a client is not shielded from discovery by the attorney-client privilege." (*Id.*). GHI further argues that even if the attorney-client privilege attached, the privilege "'does not prevent disclosure of the client's identity.'" (*Id.* at 2) (quoting *United States v. Cedeno*, 496 F. Supp. 2d. 562, 567 (E.D. 2007) and citing *United States v. Servin*, 721 F. App'x 156, 159 (3d Cir. 2018)("absent unusual circumstances, the attorney-client privilege does not protect against disclosing clients' identities")). Finally, GHI argues that "neither work product protection nor attorney-client privilege shields plaintiffs from disclosing to GHI factual information their counsel learned from communications with absent class members. Whether counsel learned this information through a questionnaire or some other communication is irrelevant – factual information is not work product." (*Id.*).

On May 9, 2022, this Court issued an Order providing notice to the parties that the Court would construe GHI's first letter (Doc. 95) as a Motion to Compel pursuant to Fed. R. Civ. P. 37 and affording the parties one week to file any supplementations to their positions set forth in the letters described above. (Doc. 104). Neither party filed any additional supplementation.

11

## II. APPLICABLE LAW

As explained by the Third Circuit,

> Privileges in federal court are "governed by the principles of common law as they may be interpreted ... in light of reason and experience." Fed.R.Evid. 501. Whether there is a valid claim of privilege is decided on a case-by-case basis. *See Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Although the applicability of a privilege is a factual question, determining the scope of a privilege is a question of law, subject to plenary review. *See United States v. Liebman*, 742 F.2d 807, 809 (3d Cir. 1984).

*In the Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 (3d Cir. 1986). In *Bevill,* in addressing the relationship between a corporation's waiver of its privilege and the individual director's assertion of a claim of personal attorney-client privilege with respect to counsel who had consulted on both a personal and corporate basis after counsel had been retained by the corporation, the Circuit Court made clear that the fact that the principals of the corporations never retained the attorneys as their personal counsel was of no moment in deciding the case. This was so because "[t]he attorney-client privilege protects conversations between prospective clients and counsel as well as communications with retained counsel." *Id.* at 124 n.1. *See also, Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 332 (M.D. Pa. 2013) ("The attorney-client privilege protects communications between prospective clients and counsel as well as retained counsel. . . Whether the communication was between client and prospective attorney directly or through retained criminal defense counsel, acting as the client's agent for the purpose of seeking a

12

civil litigation attorney, is immaterial.") (citing *In re Bevill*, 805 F.2d at 124 n.1; *Harkobusic v. Gen. Am. Transp. Corp.*, 31 F.R.D. 264, 266 (W.D. 1962)).[1]

The scope of the attorney-client privilege is well summarized in *Casey v. Unitek Global Services, Inc.*, 2015 WL 539623 (E.D. Pa. 2015). There, the Court set forth the elements of the privilege:

> The privilege "applies to any communication that satisfies the following elements: it must be (1) a communication (2) made between the client and the attorney or his agents (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Processed Egg Products Antitrust Litig.*, 278 F.R.D. 112, 117 (E.D.Pa. 2011) (citing *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007)). "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts ...." *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981) (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (Pa.E.D. 1962)).

*Id.* at *2.

To understand correctly the quotation in *Casey* from the Supreme Court's decision in *Upjohn* that the "privilege only protects disclosure of communications; it does not protect

---

[1] Although not addressed by the parties, the Court recognizes that, because this action is before the Court on the basis of diversity jurisdiction, Pennsylvania state law applies in determining whether an attorney-client relationship exists.

"The issue of whether or not a certain matter is privileged is governed by the law of the state in which the United States court is held." *Spray Products Corp. v. Strouse, Inc.*, 31 F.R.D. 244, 246-247 (E.D.Pa.1962). *See also* Fed.R.Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law ."). . . In Pennsylvania, privileged status is accorded confidential communications between an attorney and his client as a result of a statute. Act of 1887, P.L. 158, § 5, cl. (d), 28 P.S. § 321, provides: "Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client."

disclosure of the underlying facts" requires reference to the Supreme Court's full statement in *Upjohn*:

> [T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (q2.7).

449 U.S. at 395-396.  Thus, the Supreme Court noted that "the Government was free to question the employees who communicated with [Upjohn's Vice-President, Secretary, and General Counsel] and outside counsel." *Id.* at 396.  However, the Court rejected as violative of the attorney-client privilege, any effort by the Government to secure the results of Upjohn's internal investigation by subpoenaing the questionnaires and notes taken by Upjohn's attorneys, stating "such considerations of convenience do not overcome the policies served by the attorney-client privilege." *Id.*  In addition, the Court quoted from Justice Jackson's concurring opinion in *Hickman v. Taylor* wherein he stated: "Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." *Id.*

The Court in *Casey* made clear that for the attorney-client privilege to exist, "[t]he client need not pay a retainer nor enter into a contract, but the client must enter into the relationship for the purpose of obtaining legal advice."  *Casey*, 2015 WL 539623 at * 2

---

*Gates v. Rohm & Haas Co.*, 2006 WL 3420591, *1 n.1 (E.D. Pa. 2006).

14

(citing *U.S. v. Costanzo*, 625 F.2d 465, 468-69 (3d Cir. 1980); *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 392 (W.D. Pa. 2005); *Morisky*, 191 F.R.D. at 424).

This limitation on the scope of the attorney-client privilege was again recognized in *United States v. Servin*, 721 F. App'x 156 (3d Cir. 2018). There, an attorney appealed from the order of the District Court enforcing two administrative summonses issued by the Internal Revenue Service in connection with its efforts to collect unpaid taxes. The Court of Appeals held that the attorney-client privilege did not shield information requested by the IRS. Servin had contended that protected communications would be revealed if there were disclosure of the names and addresses of his clients and other parties. The Circuit Court rejected this contention, stating that, "absent unusual circumstances, the attorney-client privilege does not protect against disclosing clients' identities." *Id.* at 159. *See also, United States v. Cedeno*, 496 F.Supp. 2d 562, 567 (E.D. Pa. 2007) (noting that "[t]he Third Circuit has explained that the attorney-client privilege exists to protect confidential communications between a lawyer and a client; in most cases, the disclosure of a fee arrangement or a client's identity does not disclose the substance of any confidences.").

The principles distilled from the preceding cases were applied in the context of a dispute in a putative class action in *Gates v. Rohm and Hass Co.*, 2006 WL 3420591 (E.D. Pa. 2006). In *Gates*, the defendants moved to compel disclosure by the plaintiffs of information and/or documents arising from a meeting "organized and conducted by

15

Plaintiffs' counsel" to discuss the lawsuit which had commenced two days before the meeting with "community residents and potential class members." *Id.* at *1. The defendants sought a list of the attendees at the meeting, a copy of the PowerPoint presentation by counsel at the meeting, and copies of the questionnaires distributed by the lawyer and completed by the attendees. Plaintiffs opposed the production of the completed questionnaires. Plaintiff's counsel contended that the completed questionnaires were protected from disclosure by the attorney-client privilege and that the blank questionnaire form was covered by the work product doctrine. *Id.* Plaintiffs asserted that the attendees who remained at the end of the meeting were directed to fill out the questionnaire "if they wanted to be part of the class or if they believed they might have an individual claim." *Id.* Plaintiffs argued that the questionnaires were a means for putative class members to communicate with counsel and "seek legal advice and/or evaluation of their claims." *Id.*

The *Gates* Court conducted an *in camera* review of the questionnaire form and thereafter granted the motion in part "with certain limitations" and denied it in part. In doing so, the Court first observed that

> Both the Supreme Court and the Court of Appeals for the Third Circuit have held that the names and addresses of putative class members are discoverable. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), *aff'g* 862 F.2d 439 (3d Cir.1988) (plaintiffs permitted to obtain names and addresses of discharged employees from the defendant employer). *See also Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 354 n. 20 (1978) ("We do not hold that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information could be relevant to issues that arise under Rule 23, or where a party has

16

> reason to believe that communication with some members of the class could yield information bearing on these or other issues.").

*Id.* at 2. The Court then found that it did not need to determine whether putative class members were "clients" for purposes of the attorney-client privilege "if disclosure is limited to the factual information contained in the questionnaires." *Id.* Further, the Court noted that "[e]ven if putative class members are considered clients, the attorney-client privilege does not protect against discovery of factual information conveyed to an attorney by a party/client." *Id.* (internal quotation marks omitted). This information, the Court explained "is discoverable from the party/client through interrogatories served directly on the party/client." *Id.* (internal quotation marks omitted). Thus, the Court found that the factual information that was contained in the questionnaires was discoverable, including the names and addresses of the putative class members "even if the questionnaires themselves are not." *Id.*

The *Gates* Court noted that the dispositive factor with respect to questionnaires completed by putative class members was typically "whether the putative class members were seeking legal advice or representation at the time they filled out the questionnaires." *Gates*, 2006 WL 3420591, at *3. It further noted that courts have "compelled production of questionnaires where no attorney-client relationship existed and where individual depositions and/or interrogatories would have been overly burdensome." *Id.* (citing *Morisky*, 191 F.R.D. at 421-422). It noted that in *Morisky*, the plaintiffs' counsel could not establish that the employees who completed the questionnaires "were clients or sought to become clients at the time the employees returned the completed questionnaires." The Court in

17

*Gates* found that the *Morisky* Court determined that the questionnaires were not protected by the attorney-client privilege "because no attorney-client relationship was established or sought at the time the employees completed the form." *Id.*

In concluding, the *Gates* Court addressed the questionnaires themselves, noting that "[i]f the questionnaires are considered a confidential attorney-client communication, they are protected by the attorney-client privilege." *Id.* at *5. The Court ruled that an attorney-client relationship was formed when individuals, after hearing the attorney's directions, chose to complete and submit the questionnaire. The Court explained:

> Accepting these circumstances as being accurately portrayed, the Court concludes that an attorney-client relationship was formed when individuals, hearing the attorney's directions, chose to complete and submit the questionnaire. Therefore, the questionnaires are protected by the attorney-client privilege. The questions themselves were created by counsel in anticipation of litigation and, therefore, are protected by the work product doctrine. These protections ostensibly preclude disclosure of the completed questionnaires or blank questionnaires themselves. However, the purely factual information contained on the completed questionnaires is not protected, and the manner in which it was conveyed should be excepted from work product protection because it appears to the Court to be an inescapable conclusion that requiring the defense to go through the laborious process of using the already produced attendee list for preparing and serving, and the plaintiffs and their counsel to go through the equally laborious process of answering and/or defending, individual interrogatories or depositions would likely be overly burdensome as well as unnecessarily expensive and time-consuming, not to mention a meaningless exercise to the extent of any attendees who did not fill out questionnaires or become putative class members. Therefore, the Court will order Plaintiffs to produce all of the information that appears on the various completed questionnaires under the heading "Client Information," with the exception of cell phone and e-mail information.

*Id.*

## III. ANALYSIS

Preliminarily, the Court notes that neither Plaintiffs nor Defendant has requested an evidentiary hearing with respect to the issues raised in their correspondence submitted to this Court. Thus, when Plaintiffs' counsel represents to this Court that it can confirm to the Court and GHI that "any putative class members who contacted counsel about the possibility of joining the lawsuit as named plaintiffs sought legal advice" (Doc. 102, at 4), absent a request for an evidentiary hearing on this issue, the Court assumes that Plaintiffs' counsel has fulfilled its ethical responsibility to provide candor to the court and has accurately stated that those members of the putative class who contacted counsel sought legal advice about the possibility of their joining in this action.

Likewise, Plaintiffs' counsel has denied that it sent any questionnaires, flatly stating that "Plaintiffs' counsel didn't send any questionnaires. This isn't a case involving factual responses to a questionnaire with no request for legal representation. . . There was nothing even remotely resembling a questionnaire, and communications that Plaintiffs' counsel received from prospective clients sought legal advice and are privileged." (Doc. 102, at 4-5). Because, on the facts presented to the Court, it appears that there was no document that, in the words of Plaintiffs' counsel, "even remotely resembl[ed] a questionnaire", the decisions in *Morisky* and *Gates* have limited application here. As to the specific issues remaining in dispute between the parties as identified in Plaintiffs' counsel's letter of May 4, 2022 (Doc. 102), in accordance with the decisions cited herein which consistently hold that

the attorney-client privilege does not protect against disclosing clients' identities, see *Servin*, 721 F. App'x at 159; *Cedeno*, 496 F. Supp. 2d at 567; *Gates*, 2006 WL 3420591 at *2, the identities of Plaintiffs' clients and prospective clients must be disclosed to GHI. Further, because the attorney-client privilege only protects disclosure of communications but does not protect disclosure of the underlying facts, GHI is not entitled to the communications engaged in by Plaintiffs' counsel with any individuals who contacted Plaintiffs' counsel for legal advice regarding potential representation in the lawsuit but purely factual information obtained from such communications is discoverable from the party/client through interrogatories and the normal processes of discovery.[2] Nonetheless, and in any case, such discovery, if engaged in, must be undertaken so as to protect against the disclosure of the mental impressions, conclusions, opinions or legal theories of Plaintiffs' counsel or other representative concerning the litigation.

## IV. CONCLUSION

For these reasons, Defendant's Motion to Compel (Doc. 95) will be granted in part and denied in part as set forth herein. A separate Order shall issue.

Robert D. Mariani
United States District Judge

---

[2] Unlike the Court in *Gates*, this Court does not find the acquisition of relevant information through permissible discovery from members of the putative class represented by Plaintiffs' counsel to be unduly burdensome or laborious.