THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN PLAVIN, on behalf of himself   :
and all others similarly situated, *et al*.   :
:
        Plaintiff,   :
    v.   :   3:17-CV-1462
:   (JUDGE MARIANI)
GROUP HEALTH INCORPORATED,   :
:
        Defendant.   :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Before the Court is the motion of Plaintiff, Steven Plavin, to voluntarily withdraw from this case and dismiss his claims without prejudice to his rights as a putative class member. (Doc. 98)  In this same motion, Plaintiffs Michelle Davis-Matlock, Danielle Thomas and Gary Altman move for a protective order to quash Defendant Group Health Incorporated's deposition notice to Plaintiff Steven Plavin in light of his motion to withdraw.  (*Id.*)  For the reasons that follow, Steven Plavin's motion to voluntarily withdraw will be conditionally granted subject to his deposition being taken by Defendant Group Health Incorporated ("GHI").  The request for a protective order by Plaintiffs Davis-Matlock, Thomas, and Altman will be denied.

This is a class action brought on behalf of Plaintiff and similarly situated persons who were enrolled in Group Health Incorporated's ("GHI") Comprehensive Benefit Plan for the

employees and retirees of the City of New York at any time from 2011 to 2015.  Plaintiffs

seek to represent a class of GHI Plan members and assert a pattern of unfair and deceptive

practices in which GHI allegedly engaged which falsely described the Plan as providing

extensive coverage for services by non-participating providers and falsely represented that

reimbursement rates for most out-of-network services would be far less than the actual cost

of the service so that the out-of-network coverage promised by GHI was, as has been

alleged by Plaintiffs, "functionally illusory."  (Am. Compl., Doc. 70, ¶ 7).  Plaintiffs' Complaint

further alleges numerous other misrepresentations and misleading statements by GHI,

including deceptive marketing of the GHI Plan, misrepresentations as to the levels of

reimbursement for out-of-network ("OON") coverage, fraudulent promises as to

"catastrophic coverage," misrepresentations regarding the Enhanced OON Rider and the

issuance of other deceptive marketing materials and benefit descriptions.

Plaintiffs' Complaint presents a claim of unjust enrichment on behalf of Plaintiffs and

the putative class, a claim of deceptive acts and business practices in violation of New York

General Business Law Section 349, a claim of false advertising in violation of New York

General Business Law Section 350, and a claim of misrepresentation in violation of New

York Insurance Law Section 4226.

Defendant GHI sets forth the following reasons for requesting that Plavin only be

allowed to withdraw subject to being deposed and providing Defendant with certain

discovery:

- Plavin is uniquely situated to provide discovery concerning the timeliness of his claims.  (Doc. 100, at 2, 5-6, 11).

- Plavin has relevant information concerning the merits of his claims, including his interactions with GHI and his understanding of the allegedly deceptive marketing materials that form the foundation of the operative complaint's allegations.  (*Id*. at 2).

- Only Plavin "can provide information about his individual claims and the allegations that form the basis for the operative complaint, including allegations concerning Mr. Plavin's out-of-network claims history, his interactions with GHI, his understanding of GHI's marketing materials, his reasons for continuing to re-enroll in the GHI Comprehensive Benefits Plan, and whether he suffered any harm at all."  (*Id*. at 6).

- Plavin "has information relevant to class certification, including, for example, whether and how Mr. Plavin or other class members conferred a benefit on GHI that unjustly enriched it, whether and how equity and good conscience require restitution to plaintiffs, whether a conflict of interests exists between Mr. Plavin or the other named plaintiffs or the absent class members concerning the availability and appropriate method of damages, the concrete harms Mr. Plavin and other plaintiffs are alleging to have suffered that form the basis of class standing, and how damages resulting from those alleged harms should be calculated and whether they may be established based on common methods of proof."  (*Id*. at 6-7).

- GHI is entitled to depose Plavin about the documents he has been ordered to produce and his response to the interrogatories as this is "highly relevant and discoverable information uniquely within Mr. Plavin's knowledge . . . ."  (*Id*. at 7).

- GHI "seeks to depose Mr. Plavin not only about the reasons for this withdrawal but primarily about the discovery he has produced and the facts, circumstances and legal theories advanced in the original complaint he filed in August 2017, which has remained largely unchanged since that time – all of which is highly relevant and plainly discoverable in light of the issues in dispute."  (*Id*. at 13).

- GHI defines the "scope of information that [it] seeks from Mr. Plavin" as follows: "his use of the GHI Plan, his out-of-network claims history, his interactions with GHI, his understanding of GHI's marketing materials, his reasons for continuing to re-enroll in the GHI Plan, and any harm he allegedly suffered."  (*Id*. at 15).

In response, Plavin argues that a withdrawing class representative is properly characterized as an "absent class member" and cites *In re: Lucent Technologies, Inc. Securities Litigation*, Civ. A. No. 00-621, 2002 WL 32818345 (D.N.J. 2002), for the proposition that "the burden on the defendant to justify discovery of absent class members by means of deposition is particularly heavy," 2002 WL 32818345, at *2.  (Doc. 99 at 3-4). Plavin Plaintiffs cite additional case law in support of the argument that Plaintiff Steven Plavin should not be deposed arguing that "Courts apply the same discovery standards for withdrawing and absent class members."  (Doc. 99 at 4).  Further, Plavin Plaintiffs argue:

> Courts in this Circuit allow absent class member discovery only "(1) where the information requested is relevant to the decision of common questions, (2) when the discovery requests are tendered in good faith and are not unduly burdensome, and (3) when the information is not available from the class representative parties."

(*Id.* (quoting *Sessions v. Owens-Illinois*, Civ. A. No. 1669, 2011 WL 2415387, at *2 (M.D. Pa. June 13, 2011)).)

Plavin Plaintiffs argue that GHI "has not articulated any reason why Mr. Plavin's deposition is relevant to the adjudication of common questions particularly when there are other class representatives whom GHI can depose on common issues in this case." (*Id.* at 5).  Plaintiffs argue that any information that is related to the common questions in this class action can be obtained from the other three named Plaintiffs including information concerning the allegations contained in the First Amended Complaint.  (*Id.*).

Plaintiffs further argue that GHI would not be prejudiced by Plavin's withdrawal and provide four factors which they contend govern whether a defendant would be prejudiced by the voluntary dismissal of a claim under Rule 41(a)(2):

> (1) Whether the Defendants have expended efforts or made preparation that would be undermined by granting withdrawal; (2) The Plaintiff's delay in prosecuting the action; (3) The adequacy of Plaintiff's explanation for why withdrawal is necessary and (4) The stage of the litigation at the time the request is made. *Citing Roberts v. Electrolux Home Prods., Inc*., 2013 WL 4239050, at *2 (C.D. Cal. August 14, 2013); *In re: Vitamins Antitrust Litig*., 198 F.R.D. 296, 304 (D.D.C. 2000); *Doe v. Arizona Hosp. and Healthcare Ass'n*, 2009 WL 1423378, at *13 (D. Ariz. 2009); and *Brigman v. Magisterial District Court 19-2-04*, 2021 WL 4999459, at *1 (M.D. Pa. Sept. 20, 2021)

(Doc. 99 at 9).

Plaintiffs contend that "GHI has not identified any efforts it has made that would be 'undermined' by granting withdrawal, nor could it, because the remaining Plaintiffs will continue to represent the class and prosecute this action on absent class members' behalf." *Id* at 9. Plaintiffs argue that there has been no delay by Plavin in bringing this action; that he indicated his desire to withdraw over a month ago and has explained that he "no longer wishes to serve as a class representative and seeks in good faith to withdraw due to the burden of adequately representing the class and privacy concerns with continuing to serve as a class representative. (*Id*. at 9-10). Plaintiffs' conclude their memorandum of law by arguing that there "is no reason to condition Mr. Plavin's withdrawal on him sitting for a deposition, because GHI will suffer no prejudice." (*Id*. at 10). Defendant GHI in its memorandum of law in opposition to Plaintiff's motion to withdraw Steven Plavin and for a

5

protective order on withdrawal (Doc. 100), first note that Steven Plavin brought this lawsuit

"as the sole putative class representative in 2017 and litigated this case as the sole

representative for nearly four years until he amended the complaint in August of 2021." (*Id.*

at 1).   GHI argues that "[b]oth this Court and the Third Circuit declined to address at the

pleading stage GHI's argument that Mr. Plavin's claims are barred by the applicable statute

of limitations." (*Id*.).   Thus, GHI submits that "[a]lthough there are now additional putative

class representatives in this case, their claims are timely only to the extent they relate back

to Mr. Plavin's original complaint.   Accordingly, if his claims are held to be untimely, this

entire action must be dismissed." (*Id.* at 1-2.).

> GHI then asserts:
>
> Plaintiffs' comparison of Mr. Plavin to an absent class member to shield him
> from discovery is absurd. He is the named Plaintiff who single-handedly
> initiated this lawsuit and litigated it for years.  He is uniquely situated to provide
> discovery concerning the timeliness of his claims, which could prove to be
> dispositive of this entire case.   Mr. Plavin also has relevant information
> concerning the merits of his claims including his interactions with GHI and his
> understanding of the allegedly deceptive marketing materials that formed the
> foundation of the operative complaint's allegations.

(*Id.* at 2).

GHI notes that the District Court's dismissal of the action brought by Steven Plavin

was vacated by the Court of Appeals for the Third Circuit wherein the Circuit held that Mr.

Plavin's allegations were "enough to bring the complaint within the statute of limitations."

(*Id.* at 3).

Plavin filed a First Amended Complaint on August 27, 2021.  (Doc. 70).  Three new named Plaintiffs were added along with six additional paragraphs but, GHI contends that otherwise the Amended Complaint is identical to Plavin's original Complaint in all respects "including the allegations about GHI's conduct and the legal theories on behalf of the putative class."  (Doc. 100 at 3).

GHI further notes that Plavin continued to participate in this litigation after the filing of the First Amended Complaint.  (*Id*.).  GHI then recites the exchanges between the parties' counsel regarding the conduct of discovery including the scheduling of depositions of all four named Plaintiffs.  (*See* Declaration of Justin C. Ferrone (Doc. 101)).

GHI states that on March 1, 2022, Plaintiffs' counsel "for the first time, four and a half years after Mr. Plavin had commenced this lawsuit," informed GHI's counsel that Mr. Plavin "intended to withdraw from this litigation."  (Doc. 100 at 4).  GHI further states that it was informed by Plaintiffs that "unspecified 'privacy concern[s]' surrounding the production of emails 'spurred Mr. Plavin's intention to withdraw as a class representative.'"  (*Id*. at 4).

GHI noticed the depositions of all named Plaintiffs, including Mr. Plavin, in response to which the motion for withdrawal and protective order by Plaintiffs followed.

In support of its opposition to Plaintiff Plavin's unconditional withdrawal GHI asserts that it needs "critically important and potentially case-dispositive discovery" from Steven Plavin in order to "properly defend this lawsuit."  (*Id.* at 5).

GHI notes that the claims of the named Plaintiffs, Altman, Davis-Matlock and Thomas, were added in August of 2021 and thus GHI asserts that those claims are "timely only to the extent that they relate back to Mr. Plavin's original complaint.  If Mr. Plavin's claims are held to be untimely, dismissal of this entire case would be required."  (*Id*.).

GHI's memorandum of law then asserts the following bases for the need to depose Steven Plavin.

- Plavin has relevant information concerning the merits of his claims, including his interactions with GHI and his understanding of the allegedly deceptive marketing materials that form the foundation of the operative complaint's allegations.  (*Id*. at 2).

-  Only Plavin "can provide information about his individual claims and the allegations that form the basis for the operative complaint, including allegations concerning Mr. Plavin's out-of-network claims history, his interactions with GHI, his understanding of GHI's marketing materials, his reasons for continuing to re-enroll in the GHI Comprehensive Benefits Plan, and whether he suffered any harm at all." (*Id*. at 6).

- Plavin "has information relevant to class certification, including, for example, whether and how Mr. Plavin or other class members conferred a benefit on GHI that unjustly enriched it, whether and how equity and good conscience require restitution to plaintiffs, whether a conflict of interests exists between Mr. Plavin or the other named plaintiffs or the absent class members concerning the availability and appropriate method of damages, the concrete harms Mr. Plavin and other plaintiffs are alleging to have suffered that form the basis of class standing, and how damages resulting from those alleged harms should be calculated and whether they may be established based on common methods of proof." (*Id*. at 6-7).

- GHI is entitled to depose Plavin about the documents he has been ordered to produce and his response to the interrogatories as this is "highly relevant and discoverable information uniquely within Mr. Plavin's knowledge . . . ." (*Id*. at 7).

- GHI "seeks to depose Mr. Plavin not only about the reasons for this withdrawal but primarily about the discovery he has produced and the facts, circumstances and legal theories advanced in the original complaint he filed in August 2017, which has remained largely unchanged since that time – all of which is highly relevant and plainly discoverable in light of the issues in dispute."  (Id. at 13).

- GHI defines the "scope of information that [it] seeks from Mr. Plavin" as follows: "his use of the GHI Plan, his out-of-network claims history, his interactions with GHI, his understanding of GHI's marketing materials, his reasons for continuing to re-enroll in the GHI Plan, and any harm he allegedly suffered." (*Id.* at 15).

In their reply memorandum (Doc. 105), Plaintiffs argue*, inter alia*, that the case law supports their position that "departing proposed class representatives are treated as absent class members for purposes of discovery," Defendants must show that the information sought is necessary to their defense, and Defendants have not shown that the information they seek through a deposition of Steven Plavin is not available from the other class representatives.

Plaintiffs attempt to distinguish the cases cited by GHI by stating "[a]ll of those cases held that withdrawing Plaintiffs would not be treated as absent class members because the Court had not yet ruled on their motions to withdraw and that until it did the Plaintiffs remained in the case."  (*Id*. at 2-3).

As to the issue of timeliness of Mr. Plavin's claim in his original Complaint, the Plaintiffs assert that "the Third Circuit already ruled on appeal that Mr. Plavin's reimbursements for out-of-network procedures within the statute of limitations were 'plausibly a new injury.'"  (*Id*.).

9

Further, Plaintiffs argue that "even if Mr. Plavin's original complaint was untimely – it was not – the other Plaintiffs' claims would still be timely, because the statute of limitations for the other Plaintiffs was tolled upon the filing of Mr. Plavin's claims pursuant to *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974)." (*Id.* at 3-4.)

Plaintiffs further argue that GHI's inquiry into individual issues related to Mr. Plavin as a withdrawing class member is not relevant to the decision of common issues.  In the same vein, Plaintiffs argue that "all of the information GHI seeks could be obtained from the other Plaintiffs as could information regarding the allegations in the operative Complaint." (*Id.* at 6.)

Plaintiffs argue strenuously and at length that "the information GHI seeks for Mr. Plavin [is not] relevant to any claim or defense in this case, let alone class certification." (*Id.*).  Plaintiffs argue that the elements of their claims under General Business Law ("GBL") sections 349 and 350 require that Plaintiffs prove GHI engaged in consumer-oriented conduct that is materially misleading to an objectively reasonable consumer and that Plaintiff suffered injury.  (*Id.* at 7).  Similarly, under New York Insurance Law section 4226, Plaintiffs argue that GHI can be held liable for engaging in a knowing violation of the prohibition on the issuance of any "statement . . . misrepresenting the terms, benefits or advantages of any of its policies or contracts." (*Id.*). Thus, Plaintiffs assert that "reliance is not an element of these claims, and the GBL's objective standard makes individual subjective views irrelevant." (*Id.* (citations omitted)).

10

Once again in their attempt to distinguish the cases cited by GHI Plaintiffs argue: "[n]one of the cases GHI cites are apposite, because in those cases the courts held that the discovery sought from the withdrawing class members were relevant to the issues in the case or could not be obtained from the remaining class representatives." (*Id.* at 8). Thus, on the basis of the case law cited in Plaintiffs' briefs, Plaintiffs seek an order granting unconditional withdrawal without prejudice to Plaintiff Steven Plavin and a protective order prohibiting GHI from deposing Mr. Plavin.

## II. Law and Analysis

Plaintiff Plavin's motion for voluntary dismissal is governed by Federal Rule of Civil Procedure 41(a)(2) which provides in relevant part: "Except as provided in Rule 41(a)(1), an action may be dismissed at the Plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Further, "[a] Rule 41(a)(2) motion for voluntary dismissal should be granted 'unless a defendant can show that it will suffer some plain legal prejudice as a result.'" *In re ConAgra Foods, Inc.*, Civ. A. No. CV 11-05379. 2014 WL 12577428 (C.D. Cal. 2014) * at 3.

In *ConAgra*, the Court identified the following factors to be considered in determining whether legal prejudice may result from a voluntary dismissal under Rule 41(a)(2):

> (1) Whether the defendant has expended efforts or made preparation that would be undermined by granting withdrawal; (2) the plaintiff's delay in prosecuting the action; (3) the adequacy of the plaintiff's explanation as to why withdrawal is necessary; and (4) the stage of the litigation at the time the request is made.

*Id*. at *4.

A review of the case law presents instances where a class representative plaintiff has been permitted to withdraw as a class representative and as a plaintiff without prejudice to membership in the putative class.  However, in many instances, the withdrawal of a class representative has been conditioned on the withdrawing plaintiff being deposed or otherwise answering discovery requests.  In other cases, a voluntary withdrawal by a class representative has been permitted without discovery on the basis that the remaining class representatives are able to provide the class related discovery that the defendant in the action seeks.

Recognizing that the grant of a voluntary dismissal without prejudice and without conditions is subject to the sound discretion of the court, discussion of the cases which have addressed this issue is both necessary and useful.

In *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296 (D.D.C. 2000), certain class representatives sought voluntary dismissal without prejudice.  The Court noted that "[i]n federal practice, voluntary dismissals sought in good faith are generally granted 'unless the defendant would suffer prejudice other than the prospect of a second lawsuit for some tactical advantage'" *citing Conafay v. Wyeth Labs*., 793 F.2d 350, 353 (D.C. Cir. 1986).

Accordingly, the court observed that "prior to dismissing certain class plaintiffs from this action, the Court must determine: (1) whether plaintiffs' motion for voluntary dismissal

was sought in good faith; and (2) whether the defendants would suffer "legal prejudice" from

a dismissal at this stage in the litigation."  198 F.R.D. at 304.

In that case, the court found the plaintiff's good faith to be "highly questionable,"

stating that "[i]t is unclear why plaintiffs waited until the last moment, after the Special

Master had already ruled against them, to file this motion." *Id*. Additionally, the court found

that the plaintiffs had not explained their need for a voluntary dismissal at this stage stating:

> Plaintiffs discuss no new circumstances or changes in the litigation to
> necessitate a voluntary dismissal at this point. Moreover, plaintiffs do not
> sufficiently explain their need for a voluntary dismissal at this stage in the
> process. Although they argue that they can be adequately represented by the
> class representatives and therefore that it would be most efficient to have them
> proceed as non-party members of the putative litigation classes rather than as
> named party plaintiffs, they offer no explanation of why they could not always
> have been adequately represented by the class representatives and why it
> would necessarily be more efficient for the Court to dismiss these plaintiffs at
> this time. In fact, it seems fairly obvious that these plaintiffs wish to dismiss their
> actions merely to avoid having to give defendants the discovery authorized by
> the Special Master's Report. Therefore, the Court finds the timing of plaintiffs'
> Motion suspect and somewhat indicative of bad faith.

*Id*.

Nonetheless, the court determined that the timing of the plaintiffs' motion, although

appearing to the court to be suspect, was not sufficient to warrant a denial of their motion.

*Id*.  Instead the court required a determination whether defendants would suffer legal

prejudice by a voluntary dismissal of certain plaintiffs at that time.  *Id*.  The court stated the

test for determining whether a defendant would suffer legal prejudice by a voluntary

dismissal as follows:

> In determining whether a defendant would suffer legal prejudice by a voluntary dismissal of certain plaintiffs, the Court must consider: (1) the defendants' effort and expense for preparation of trial; (2) excessive delay or lack of diligence on the plaintiffs' part in prosecuting the action; (3) the adequacy of plaintiffs' explanation of the need for dismissal; and (4) the stage of the litigation at the time the motion to dismiss is made, specifically whether a motion for summary judgment is pending.

*Id.*

After stating that the plaintiffs "have offered no rationale for a voluntary dismissal" the court's analysis still required that a voluntary dismissal would be granted "if such a dismissal caused no prejudice to defendants."  *Id.* at 305.

The defendants argued that the dismissal would prejudice their rights as to the production of certain documents and the taking of discovery from these plaintiffs.  *Id.*  The court reasoned that

> [c]learly, legal prejudice would result if dismissal of certain plaintiffs would render the defendants unable to conduct sufficient discovery to adequately defend themselves against the charges in this case. . . .  The Court therefore finds it proper for protection of defendants that the production of all documents and the answering of all interrogatories already noticed by defendants be a prerequisite to a voluntary dismissal without prejudice and without costs; under such circumstances defendant can lose no substantial right by the dismissal.

*Id.* at 305.

The approach of the Court in *In re Vitamins Antitrust Litigation* was followed in *In re Wellbutrin XL Antitrust Litigation*, 268 F.R.D. 539 (E.D. Pa. 2010).  There, class representative Rochester Drug Co-Operative (RDC) moved for voluntary dismissal without prejudice pursuant to Rule 41(a)(2).  RDC sought to be relieved of its duty to comply with a

discovery order issued by the court in that case. The court granted RDC's dismissal without prejudice on the condition that it comply with the court's discovery order. In so ruling, the court, citing *In re Vitamins*, stated: "[t]he avoidance of an adverse discovery ruling, however, is not a compelling ground for dismissal without prejudice." 268 F.R.D. at 544. The court found that the defendants would be prejudiced absent a requirement for compliance with a discovery obligation. *Id.*

Similarly, in *Burnett v. Ford Motor Co.*, Civ. A. No. 3:13-CV-14207, 2015 WL 3540886 (S.D.W.V. 2015), Ford Motor Company sought to take the depositions of four *former* plaintiffs, each of whom had filed voluntary notices of dismissal approximately twenty months after having filed suit against Ford and after Ford had served written discovery on them and orally requested dates for their depositions. The plaintiffs objected to any discovery of the four former plaintiffs on the ground that they were absent class members and that Ford had not made the requisite showing to justify their depositions. 2015 WL 3540886, at *1-2. Because the four former plaintiffs had already voluntarily withdrawn, the court applied a test for determining whether discovery of absent class members should be permitted based on the decision in *Clark v. Universal Builders, Inc.*, 501 F. 2d 324, 240-41 (7th Cir. 1974). *Id.* Under this test,

> [d]iscovery should be permitted only when "(1) the discovery is not designed to take advantage of class members or reduce the size of the class, (2) the discovery is necessary, (3) responding to discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent."); and *McCarthy v. Paine Webber Group, Inc.*, 164 F.R.D. 309, 313 (D.Conn.1995) ("Discovery [of absent class members] is

only permitted where a strong showing is made that the information sought (1) is not sought with the purpose or effect of harassment or altering membership of the class; (2) is directly relevant to common questions and unavailable from the representative parties; and (3) is necessary at trial of issues common to the class").

*Burnett*, 2015 WL 3540886, at *1.

The court's analysis in denying the four former plaintiffs' motion for a protective order

is instructive:

Taking into account the aforestated considerations, the undersigned finds that Ford has met its burden to justify the four depositions requested. First, the discovery does not appear designed to take advantage of the class members or reduce the size of the class. As Ford emphasizes, all four of the proposed deponents were named plaintiffs in the litigation for nearly two years. Certainly, when these individuals agreed to participate in the case in a representative capacity, they should have realized that they would be expected to respond to discovery requests at some point in the proceedings. Ford does not seek leave to take long, taxing depositions; instead, it explicitly describes the scope of the questioning to include "each of the individuals' purchase, use, and potential sale of their vehicles, their involvement in this litigation, and their dismissal from this action." (ECF No. 388 at 10). Moreover, Ford does not attempt to discover this information from a large number of absent class members and does not tie a failure to respond to the discovery to any particular sanction; consequently, there is nothing to suggest a motive on Ford's part to intimidate the four proposed deponents or reduce the size of the class by taking these four depositions.

Second, Ford shows the necessity of the examination by explaining that the information sought is relevant to common issues and cannot be obtained from other class representatives. In order to maintain a class action, Plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Fourth Circuit explains, "'[c]ommonality requires the plaintiff[s] to demonstrate that the class members have suffered the same injury'—a shared injury that also springs forth from the same 'common contention.'" *Ealy v. Pinkerton Government Services, Inc.*, 514 F. App'x 299, 304 (4th Cir.2013) (*citing Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S. Ct. 2541, 2556, 180 L.Ed.2d 374 (2011) (internal citations omitted).

*Burnett*, 2015 WL 3540886, at *2.

Similarly in *Counts v. General Motors, LLC,* Civ. A. No. 16-cv-12541, 2019 WL 13059910 (E.D. Mi. 2019), one of the putative class representatives sought voluntary dismissal without prejudice stating that he was a disabled veteran who had suffered traumatic brain injury in combat and that his class representative responsibilities placed too much strain on him and his family.  2019 WL 13059910, at *1.  The court noted, however, that the plaintiff had "voluntarily inserted himself into this case as a class representative with a responsibility to his class members."  *Id.*  General Motors offered various accommodations in order to conduct the deposition.  *Id.*  Accordingly, the court found that

> [t]he discovery Defendant seeks is relevant to the class certification inquiries such as commonality and typicality of the claims, and permitting certain Plaintiffs to voluntarily dismiss at this stage without fulfilling their properly noticed discovery obligations creates a risk that Plaintiffs may be able to create an "atypical sampling of the putative class, thereby making it more difficult to show that individual issues predominate over common ones.

*Id.* at 3.

The court thus denied the plaintiff's motion for voluntary dismissal without prejudice stating "Plaintiff can renew its motion to voluntarily dismiss Mr. Hemberger after he has responded to outstanding discovery requests and appeared for his deposition."  *Id.*

In *Sherman v. Yahoo! Inc.*, Civ. A. No. 13cv0041, 2015 WL 473270 (S.D. Cal. 2015), the motion for withdrawal by the class plaintiff was conditioned on the taking of his

deposition by Yahoo.  2015 WL 473270. at *8.   The court's reasoning, which is applicable

to Plavin Plaintiff's, is as follows:

> The Court concludes that Sherman's withdrawal should be conditioned on
> Yahoo being entitled to depose Sherman. Sherman was the sole named
> plaintiff in this action for almost two years before the addition of Pathman.
> Plaintiffs only added Pathman as a named plaintiff shortly after the
> cancellation of Sherman's original deposition date. Sherman did not move to
> dismiss his individual claims until after his deposition had been noticed and
> rescheduled several times and only a few months before the close of class
> discovery, and Yahoo has spent resources conducting discovery specific to
> Sherman. Sherman's testimony regarding his experience with Yahoo is likely
> to be relevant to class certification issues, even if he no longer wishes to be
> burdened with this litigation. As such, Yahoo would be legally prejudiced if it
> was prevented from deposing Sherman.
>
> Therefore, the Court concludes that Sherman's withdrawal should be
> conditioned on his deposition. However, the Court does not condition
> Sherman's withdrawal on providing any outstanding or further discovery
> responses.

2015 WL 473270, at *8.

In *Dysthe v. Basic Research, L.L.C.*, 273 F.R.D. 625 (C.D. Cal. 2011), the named

plaintiff in the class action was held subject to being deposed notwithstanding his pending

motion for voluntary dismissal.  The defendants asserted that plaintiff Hall had been a

named plaintiff since the inception of the case in November 2009, that his deposition was

properly noticed, and his testimony was expected to be relevant to issues pertaining to class

certification.  273 F.R.D. at 627.  In response, the court noted that

> [a]ccording to Plaintiffs, Hall has determined that he does not wish to subject
> himself to the "rigor of litigation," including discovery requests involving
> personal information, and has "other personal reasons" to seek dismissal of his
> claims at this time. (Jt. Stip. at 8–9). Plaintiffs contend that "if and when Hall's

motion for voluntary dismissal is granted," Hall's testimony will not be relevant because the dismissal of his claims with prejudice means that Hall will "not even be a putative class member in this lawsuit."

*Id.* at 627-628.

The court granted the defendants' motion to compel the deposition of plaintiff Hall and ordered the plaintiffs to produce Mr. Hall to be deposed.  In so ruling, the Court's analysis addresses issues present in the case before this Court.

Here, the discovery standards governing putative class members are not necessarily applicable. Hall is currently a named plaintiff and has not yet been dismissed. Pursuant to Federal Rule of Civil Procedure 41(a)(2), after an opposing party has answered, an action may be dismissed at the plaintiff's request only by the court, on terms that the court considers proper. While Hall's dismissal may be likely, it is not automatic. Hamilton v. Firestone Tire & Rubber Co., 679 F.2d 143, 145 (9th Cir.1982) (court must exercise discretion to determine whether to allow dismissal at all and what terms and conditions, if any, should be imposed). Defendants are certainly entitled to take the deposition of a party. *See* Fed. R. Civ. Proc. 30(a).

Furthermore, as discussed above, the Federal Rules of Civil Procedure clearly provide that parties may obtain discovery regarding matters relevant to the action. Fed. R. Civ. P. 26(b)(1). Hall claims to have been a consumer of the products challenged by Plaintiffs in this lawsuit. (SAC at 9). His testimony regarding his experience with Relacore weight-loss products is therefore highly likely to be relevant to class certification issues, including commonality and the typicality of the class representative's claims, even if he no longer wishes to be burdened with this litigation.

Furthermore, Hall's unique status in this litigation provides a sufficient ground to justify his deposition even if, at some later date, he will no longer be a named plaintiff. Hall has been a named plaintiff since the filing of the original Complaint, through several amendments of the Complaint, and he did not move to dismiss his claims until after Plaintiffs filed their motion for class certification. Plaintiffs do not contest that Defendants properly noticed Hall's deposition before Hall filed his motion for voluntary dismissal.

*Id.* at 628-29.

The decision in *Dysthe*, *supra*, was cited and followed in *Fraley v. Facebook, Inc.*, Civ. A. No. C 11-1726, 2012 WL 555071 (N.D. Cal. 2012). There, Fraley, a named plaintiff in the original lawsuit, sought to be removed as a class plaintiff after Fraley's deposition was scheduled. Defendant Facebook agreed to the withdrawal of Fraley only on the condition that Fraley submit to her deposition. Plaintiffs in response filed a motion for protective order which the court denied. First, the court rejected the plaintiffs' argument that the court should treat Fraley as an absent class member based on her motion for withdrawal stating "Fraley remains a named plaintiff. Plaintiffs cite to no case authority upon which the court may rely to treat Fraley as an absent class member under these circumstances. The court thus reviews the instant motion for protective order as one brought by a named party." 2012 WL 555071, at *2.

In denying Fraley's motion for protective order, the court concluded that "Fraley's legitimate desire to protect her privacy does not outweigh the relevance or propriety of Facebook proceeding to take Fraley's deposition. As Fraley herself notes in her declaration, by agreeing to be a class representative, she understood that she would have to participate in discovery and provide testimony." *Id.* at *3.

Additionally, the court rejected the contention that because other named plaintiffs remained in the case, Fraley's testimony concerning her allegations were less relevant. Instead, the court found that "the fact that Fraley may soon be dismissed from the lawsuit

makes even more relevant Facebook's discovery into the basis for Fraley's allegations that will be part of the record in this case." *Id.*

In *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, Cvi. A. No. 09-cv-02757, 2011 WL 5865059 (D. Colo. 2011) (citing *Dysthe v. Basic Research, L.L.C.*, *supra*), the court granted the defendant's motion to compel the deposition of class plaintiff who "no longer wanted to be part of the case." *Id.* at *1, 3.

Plavin Plaintiffs, in their reply memorandum (Doc. 105) address and attempt to distinguish the cases discussed, arguing that "[a]ll of those cases held that withdrawing plaintiffs would not be treated as absent class members because the court had not yet ruled on their motions to withdraw and that until it did the plaintiffs remained in the case." (*Id.* at 3). Yet, that is the exact procedural posture in which this Court must decide Plaintiffs' motions, i.e., this Court has not yet ruled on Plaintiff Plavin's motion to withdraw and the motion for protective order filed by the remaining Plaintiffs so that until such a ruling on Plaintiff Plavin's motion to withdraw is made, Mr. Plavin remains in this case.

In addition to its attempt to distinguish the cases cited by GHI, (*see* Doc. 99 at 7-9) Plaintiffs also advance decisions in which a class representative was permitted to withdraw without conditions. These cases are either legally or factually inapposite.

The decision in *In re Currency Conversion Fee Antitrust Litigation*, No. M 21-95, 2004 WL 2453927 (S.D.N.Y. 2004), presents a case where the plaintiffs "suggest[ed] that the Withdrawing Plaintiffs' are unable to protect the interest of class members." 2004 WL

2453927, at *2.  On that basis, the court approved the Withdrawing Plaintiffs' application "to ensure that reluctant plaintiffs do not jeopardize the interests of absent class members."  *Id.* Further, the court denied the defendant's motion to depose the Withdrawing Plaintiffs, stating that "[h]ere defendants seek depositions for individual issues, and therefore have not overcome their heavy burden to justify such a request."  *Id.*  In the case before this Court, there is no contention by Plaintiffs that Mr. Plavin should be permitted to withdraw because he is unable to protect the interests of class members, as was the case in *In re Currency Conversion.*

Similarly, in *Zeffiro v. First Pennsylvania Banking and Trust Co.,* 82 F.R.D. 31 (E.D. Pa. 1979), the court granted the unopposed motion of plaintiff Isabella G. Smith for an order permitting her to withdraw as a class representative and dismissing her as a plaintiff without prejudice.  In an affidavit, Smith cited her advanced age, failing health and the recent death of her husband as well as her residence in Florida as reasons why she would be unable to take an active part in the prosecution of her claims.  *Id.* at 33.  The court found no prejudice resulting to the interests of absent class members, noting, *inter alia*, that Smith was only one of three plaintiffs and the court's certification or denial of certification would not be affected by the presence or absence of Smith in light of what the court found to be the competent and vigorous representation by all three plaintiffs.  *Id.*  The court also cited Smith's failing health and advancing age in support of her withdrawal.  *Id.* There was no attempt by the defendant to depose Smith as a condition of her withdrawal.

The court in *Roberts v. Electrolux Home Products, Inc.,* 2013 WL 4239050, granted the motions of two class representatives to withdraw on the basis that movant class plaintiff Roberts was required to care for his parents who had been diagnosed with heart failure and malignant melanoma and that Roberts had begun recently suffering debilitating migraines. With respect to movant class plaintiff Horton, who was Roberts' fiancé, the court noted that she had been providing care and assistance to Roberts and together with Roberts asserted that due to the increased stress and responsibilities in their lives "they no longer have the time, energy and focus to act as class representatives in this case."  2013 WL 4239050, at *2.  The court also denied the defendants' request to take the depositions of Horton and Roberts prior to withdrawal noting that Electrolux had not "made any showing that it has expended significant time and energy preparing for these depositions" and that Electrolux otherwise failed to explain "how any of its other preparations in this case would be undermined if Horton and Roberts are permitted to withdraw."  *Id.* at *3.  The court therefore allowed Horton and Roberts to withdraw and ordered that they need not sit for a deposition prior to withdrawal.  *Id.*  The court distinguished the decisions in *Dysthe v. Basic Research, L.L.C.* , *supra*, *Fraley v. Facebook, Inc., supra*, and *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, *supra*, stating that "these decisions consider motions to compel a deposition or request for a protective order and reason that until a plaintiff's motion to withdraw is granted, he or she remains a party to the case, and may therefore be deposed pursuant to Federal Rule of Civil Procedure 30(a)."  *Id.*  In the court's view in *Roberts*, the

quoted decisions "stand for the proposition that a named plaintiff cannot avoid the obligation to sit for a deposition merely by filing a request to withdraw." *Id.* Paradoxically, however, the court in *Roberts* also found that the decisions in *Dysthe*, *Fraley*, and *Colorado Cross-Disability* "do not stand for the proposition that a named plaintiff's withdrawal can be conditioned upon the plaintiff's willingness to sit for a deposition." *Id.*

Other decisions permit the withdrawal of class representatives without conditioning the withdrawal on the deposition of the class representative seeking withdrawal on the basis that the information sought by the defendant regarding class certification issues could be obtained from the remaining class representatives. In *In re Urethane Antitrust DWJ Litigation,* No. 04-MD-1616, 2006 WL 8096533 (D. Kan. June 9, 2006) the court allowed the withdrawal of the class plaintiff, Industrial Rubber Products ("IRP"), on this basis stating:

> To require IRP to give a Rule 30(b)(6) deposition at this time, when it would serve no valid class certification purpose and when IRP is struggling with significant financial difficulties, would subject IRP to undue burden. Accordingly, the Court finds that IRP has established good cause for the entry of a protective order preventing the Rule 30(b0(6) deposition of IRP from going forward.

2006 WL 8096533, at *2.

In *Doe v. Arizona Hospital and Healthcare Ass'n*, Civ. A. No. 07-1292, 2009 WL 1423378 (D. Ariz. 2009), the court addressed the motion for withdrawal as a proposed class representative of plaintiff Jane Doe. Ms. Doe gave her "family or personal situation" as the reason to withdraw. Id. at *13. In granting plaintiff Doe's motion to withdraw unconditionally, the court stated:

"In federal practice, voluntary dismissals sought in good faith are generally granted 'unless the defendant would suffer prejudice other than the prospect of a second lawsuit or some tactical advantage.'" *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 304 (D.D.C.2000) (quoting *Conafay v. Wyeth Labs.*, 793 F.2d 350, 353 (D.C.Cir.1986)). Allowing Jane Doe to withdraw as class representative "is the appropriate and just approach if [she] does not wish to represent the class." *In re Neopharm, Inc. Sec. Litig.*, No. 02 C 2976, 2004 WL 742084, at *1 (N.D. Ill. Apr.7, 2004) (citing *Org. of Minority Vendors, Inc. v. Ill. Cent. Gulf R.R.*, No. 79 C 1512, 1987 WL 8997, at *1 (N.D. Ill. Apr.2, 1987) ("Absent a good reason ... a plaintiff should not be compelled to litigate if it doesn't wish to.")). In this case, there is no reason to believe that Jane Doe seeks to withdraw for anything other than good faith reasons, and there will be no serious prejudice to the Defendants, especially given that the litigation is in its relatively early stages. The Court is not in a position to question Ms. Doe's family or personal situation, which is her stated reason for wishing to withdraw; certainly, the pressures and obligations of extended litigation would present challenges to many people. Also, because there are several other identified class representatives, and the class has not yet been certified, Defendants in this case will not suffer the sort of prejudice that might stem from a later-stage withdrawal of a class representative.

2009 WL 1423378, at *17.

Finally, among the cases cited by Plaintiffs is *Valenzuela v. Union Pacific Railroad Company*, Civ. A. No. 15-01092, 2016 WL 3029887 (D. Ariz. 2016). Here, again, the court denied the requests of the defendants to depose five of the former named plaintiffs in the case stating that "Defendants have not shown that the information they seek from these individuals is not already known to Defendants, or, if unknown, that it is not available from the class representatives." 2016 WL 3029887, at *4.

On review of the case law cited herein the Court finds that the motion for withdrawal and voluntary dismissal by class Plaintiff Steven Plavin should be

conditionally granted subject to Mr. Plavin being required to present himself for a

deposition and Plaintiffs' motion for a protective order should be denied.

Plavin was the sole named Plaintiff in this action from the filing of the initial

Complaint on August 16, 2017 until Plaintiffs Altman, Davis-Matlock and Thomas were

added as class plaintiffs in the First Amended Complaint filed on August 30, 2021.  (Doc.

70).  Plavin's answers to GHI's interrogatories were found insufficient by this Court's

Order of March 31, 2022.  (Doc. 94).  Plavin was ordered to supplement his responses to

GHI's interrogatories  (Doc. 93) with respect to interrogatories numbers two and three,

was ordered to respond to interrogatory numbers five, six and seven, and was ordered o

supplement his answer to interrogatory number eight.  (Doc. 94 ¶¶ 1-7).  Further, the

affidavit of Justin C. Ferrone, counsel to GHI, made under the penalty of perjury,

establishes that on April 1, 2022, after considerable discussion regarding the scheduling

of a deposition of Mr. Plavin, Ferrone "served a Notice of Deposition of Steven Plavin."

(Doc. 101, ¶ 10).  The deposition Notice is attached as Exhibit C to the declaration of Mr.

Ferrone (Doc. 101-3).  The Notice of Deposition scheduled Mr. Plavin's deposition for

May 12, 2022.

On April 12, 2022, Plaintiff Plavin moved to voluntarily withdraw from this case

and dismiss his claims without prejudice to his rights as a putative class member.  (Doc.

98)  Thus, Plavin did not move to dismiss his individual claims until after his deposition

had been noticed and scheduled and only several months before the scheduled close of

class discovery.  His testimony regarding his experiences with GHI is relevant to the

class certification issues and the Court finds that GHI would be legally prejudiced if it was

prevented from deposing Plavin.  *See Sherman v. Yahoo! Inc.* 2015 WL 473270, at *8.

Further, as in *Sherman*, Mr. Plavin's testimony regarding his experience with GHI is likely

to be relevant to class certification issues "even if he no longer wishes to be burdened

with this litigation."  *Id.*

   The Court further finds that the discovery defendant seeks is relevant to the class

certification inquiries such as commonality and typicality of the claims and thus, as in

*Counts v. General Motors*, *supra*, "permitting [Plavin] to voluntarily dismiss at this stage

without fulfilling [his] properly noticed discovery obligations creates a risk that Plaintiffs

may be able to create an 'atypical sampling of the putative class, thereby making it more

difficult to show that individual issues predominate over common ones.'"  *Counts*, 2019

WL 13059910, at *3.  Moreover, this Court shares the view of the court in *Burnett v. Ford

Motor Company*, *supra*, that when Mr. Plavin agreed to participate in this case in a

representative capacity, he should have realized that he would be expected to respond to

discovery requests at some point in the proceedings.  *See Burnett*, *supra*, 2015 WL

3540886, at *3.

   This Court accordingly finds that the deposition which was noticed by Defendants

prior to Mr. Plavin's motion for voluntary dismissal to be a prerequisite to a voluntary

dismissal without prejudice.  *See In re Vitamins Antitrust Litigation*, 198 F.R.D. at 305.

Further, the Court finds that this is not a case where there is an attempt to engage in the discovery of an absent class member. Mr. Plavin is currently a named Plaintiff and has not yet been dismissed. Rule 41(a)(2) provides that an action may be dismissed at the Plaintiff's request only by the Court and on terms that the Court considers proper. And as noted in *Dysthe v. Basic Research, L.L.C., supra*, "defendant[s] are certainly entitled to take the deposition of a party." 273 F.R.D. at 628.

Finally, GHI asserts that Steven Plavin must be deposed regarding statute of limitations considerations. (See Doc. 100 at 1-2). Defendant maintains that if Plaintiff Plavin's claims are determined to have been untimely brought and thus barred by the applicable statute of limitations, the claims of the additional putative class members who entered this case in 2021 on the filing of the First Amended Complaint "are timely only to the extent they relate back to Plavin's original Complaint." (*Id.* at 1).

In their reply memorandum (Doc. 105), Plaintiffs respond that the Third Circuit "already ruled on appeal that Mr. Plavin's reimbursements for out-of-network procedures within the statute of limitation were 'plausibly a new injury.'" (*Id.* at 3). Further, Plaintiffs argue that even if Mr. Plavin's original Complaint was untimely the other Plaintiffs' claims would still be timely "because the statute of limitations for the other Plaintiffs was tolled upon the filing of Mr. Plavin's claims pursuant to *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974)." (*Id.* at 3-4). Plaintiffs assert that under the decision in *American Pipe*, "the filing of a class action complaint tolls the statute of limitations for all

members of the putative class who intervene in the same action." (*Id.* at 4).  Plaintiffs

cite to *Haas v. Pittsburgh Nat'l Bank*, 526 F. 2d 1083, 1097-98 (3d Cir. 1975) in support

of their argument.  *Id.*  However, the Third Circuit's decision in *Haas* makes clear that the

application of *American Pipe* to toll the running of the statute of limitations requires that

the original complaint be timely: "American Pipe holds that the *timely* commencement of

a class action tolls the applicable statute of limitations, even though the suit is later

denied class action status after the statutory period has elapsed."  526 F.2d at 1097

(emphasis added).

In *Smith v. Ulta SALON*, 2020 WL 1429939 (D.D.C. Mar. 24, 2020), the court, after

collecting cases, stated its agreement "with the reasoning of those courts that have found

that an initial complaint must have been timely to allow for the possibility of relation back.

An untimely initial complaint is a legal nullity for these purposes and so it cannot give effect

to a later filed amendment."  2020 WL 1429939, at 4.

While the Third Circuit stated that Plavin's Complaint is not time barred and that his

"February 2015 reimbursement is plausibly a 'new injury'" and that "drawing all reasonable

inferences in Plavin's favor, the allegation that his expectations were not met in February

2015 is enough to bring the complaint within the statute of limitations," *Plavin v. Group

Health Incorporated*, 857 F. App'x 83, 87 (3d Cir. 2021), this statement was made in the

context of a motion to dismiss where the *plausibility* of a claim is the relevant inquiry.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678  (2009);  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  Because an initial pre-discovery determination of plausibility does not foreclose
discovery on the issue found plausible, Defendant GHI should not be barred from inquiring
at deposition as to the facts of Plavin's claims to ascertain whether his allegations asserting
timeliness are supported by the record evidence.  In so stating, this court expresses no
opinion beyond the reasoning of the Third Circuit quoted above.

### III. Conclusion.

For these reasons, Plaintiff Steven Plavin's motion for voluntary dismissal will be
granted conditioned on the taking of Mr. Plavin's deposition and his compliance with any
outstanding discovery that was outstanding prior to his motion for voluntary dismissal.  The
motion of Plaintiffs Davis-Matlock, Thomas, and Altman for a protective order regarding the
deposition will be denied.  A separate Order follows.

Robert D. Mariani
United States District Judge