**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------- x

STEVEN PLAVIN, GARY ALTMAN, : 
MICHELLE DAVIS-MATLOCK, and :
DANIELLE THOMAS, on behalf of themselves :
and all others similarly situated, :
                               :     No. 3:17-cv-01462-RDM
                Plaintiffs, :
                               :     Judge Robert D. Mariani
v. :
                               :     Electronically Filed
GROUP HEALTH INCORPORATED, :
                Defendant. :

---------------------------------------------------------- x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GROUP HEALTH INCORPORATED'S MOTION FOR <u>SUMMARY JUDGMENT</u>**

DEBEVOISE & PLIMPTON LLP      LeVAN STAPLETON SEGAL
John Gleeson*                           COCHRAN LLC
Jared I. Kagan*                       Peter H. LeVan, Jr.
Justin C. Ferrone*                1760 Market Street, Suite 403
66 Hudson Boulevard           Philadelphia, PA 19103
New York, NY 10001            (215) 561-1500
(212) 909-6000

* admitted *pro hac vice*

                *Attorneys for Defendant Group Health Incorporated*

March 17, 2023

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ......................................................................................2

    I.     Plavin's GBL and Insurance Law Claims Are Untimely and the
         Continuing Wrong Doctrine Cannot Rescue Them .............................2

        A.   The Third Circuit Did Not Hold That Plavin's Claims
             Are Timely ...................................................................2

        B.   The Continuing Wrong Doctrine Does Not Apply to
             Plavin's Claims ...........................................................3

    II.    Plavin's Unjust Enrichment Claim Was Untimely When Filed .........10

    III.   The Original Untimely Complaint is a Legal Nullity That
         Cannot Support Continued Class Action Litigation ..........................12

        A.   The Amended Complaint Cannot Relate Back to an
             Untimely Complaint Under Rule 15 ...........................................13

        B.   *American Pipe* Tolling Does Not Apply to Plavin's
             Complaint....................................................................13

            1.   American Pipe *Requires a Timely Initial
                Complaint.* .............................................................13

            2.   *The Policy Behind* American Pipe *Tolling
                Undermines Plaintiffs' Argument* ..................................15

            3.   *The New Plaintiffs' Claims Were Also Untimely as
                of the Date of the Original Complaint* ...........................17

CONCLUSION ...................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974) ...................................................................13, 14, 15

*Breitman v. Xerox Educ. Servs., LLC*,
  No. 12 Civ. 6583(PAC), 2013 WL 5420532 (S.D.N.Y. Sept. 27,
  2013) ...........................................................................................................9

*China Agritech, Inc. v. Resh*,
  138 S. Ct. 1800 (2018) ...............................................................*passim*

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983) ..................................................................................14

*Diehl v. SWN Prod. Co., LLC*,
  No. 3:19-CV-1303, 2022 WL 3371327 (M.D. Pa. Aug. 16, 2022)
  (Mariani, J.) ...............................................................................................14

*Diodato v. Wells Fargo Ins. Servs., USA, Inc.*,
  44 F. Supp. 3d 541, 557 (M.D. Pa. 2014………………….................................6

*DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, Pa.*,
  15 Civ. 2259 (PGG), 2021 WL 3141672 (S.D.N.Y. July 26, 2021) ..............6, 11

*Gaidon v. Guardian Life Ins. Co. of Am.*,
  96 N.Y.2d 201 (2001) .................................................................................5

*Golden Pac. Bancorp v. FDIC*,
  273 F.3d 509 (2d Cir. 2001) .....................................................................11

*Gristede's Foods v. Unkechauge Nation*,
  532 F. Supp. 2d 439 (E.D.N.Y. 2007) .........................................................7

*Harvey v. Metro. Life Ins. Co.*,
  827 N.Y.S.2d 11 (N.Y. App. Div. 2011) .....................................................9

*Henry v. Bank of Am.*, 48 N.Y.S.3d 67
  (N.Y. App. Div. 2017) ...............................................................................3, 6

*Hood v. New Jersey Department of Civil Service*,
   680 F.2d 955 (3d Cir. 1982) .................................................................19

*Jewelcor Inc. v. Karfunkel*,
   No. 3:99-CV-1251, 2000 WL 36741106 (M.D. Pa. Feb. 22, 2000) ................13

*Paramount Film Distrib. Corp. v. State*,
   30 N.Y.2d 415 (1972) .......................................................................12

*Pension Trust Fund for Operating Engineers v. Mortgage Asset
   Securitization Transactions*, *Inc.*,
   730 F.3d 263 (3d Cir. 2013) ...............................................................19

*Pike v. N.Y. Life Ins. Co.*,
   901 N.Y.S.2d 76 (N.Y. App. Div. 2010) ................................................6

*Plavin v. Grp. Health Inc.*,
   323 F. Supp. 3d. 684 (M.D. Pa. 2018) ..................................................5

*Plavin v. Grp. Health Inc.*,
   857 Fed. App'x. 83 (3d Cir. May 21, 2021) .............................*passim*

*Ring v. AXA Fin., Inc.*,
   No. 0111869/2004, 2008 WL 692564 (N.Y. Sup. Ct. Feb. 6, 2008) .................9

*Schandler v. N.Y. Life Ins. Co.*,
   No. 09 Civ. 10463, 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011) ...................11

*Shelton v. Elite Model Mgmt., Inc.*,
   812 N.Y.S.2d 745 (Sup. Ct. 2005)..................................................9, 10

*Smith v. Ulta SALON*, No. 18-2532 (TJK),
   2020 WL 1429939 (D.D.C. Mar. 24, 2020) .........................................15

*Stanley v. Direct Energy Servs.*,
   466 F. Supp. 3d 415 (S.D.N.Y. 2020) ..............................................7, 8

*Weitzner v. Sanofi Pasteur Inc.*,
   909 F.3d 604 (3d Cir. 2018) .............................................................14

**Other Authorities**

MCLAUGHLIN ON CLASS ACTIONS § 3:15 (19th ed. 2022)......................................17

Defendant Group Health Incorporated ("GHI") respectfully submits this reply memorandum of law in further support of its motion for summary judgment.

## PRELIMINARY STATEMENT

The grounds for dismissing this case are simple and straightforward.  This Court held that Plavin's GBL and Insurance Law claims accrued when his expectations regarding reimbursement levels for out-of-network services first were not met.  There is no dispute that happened in 2007 at the latest—a decade before Plavin filed the complaint—rendering his claims time-barred.  This Court also recognized that the new Plaintiffs' 2021 claims (which themselves are untimely) cannot be tolled unless they relate back to a timely complaint.  Accordingly, they also must be dismissed.

Unable to identify any factual dispute, Plaintiffs' opposition distorts the Third Circuit's decision that addressed only the sufficiency of the pleadings, misapplies the "continuing wrong" doctrine, asks the Court to extend the Supreme Court's *American Pipe* decision beyond the bounds that any court has ever applied it, and ignores the law of the case.

The "reservations" the Court expressed nearly five years ago about the timeliness of Plavin's claims have been borne out by discovery, and the Court should now dismiss the case.

## ARGUMENT

I.   **Plavin's GBL and Insurance Law Claims Are Untimely, and the Continuing Wrong Doctrine Cannot Rescue Them**

As explained in GHI's opening brief, Plavin learned by 2007 (at the latest) that his expectations for out-of-network reimbursement under the GHI Plan were not being met, making his 2017 complaint untimely. ECF 141-1 ("GHI Br.") at 13–15. Plaintiffs do not dispute any of the relevant facts. Instead, they attempt to salvage Plavin's claims by mischaracterizing the Third Circuit's decision in this case, invoking the inapplicable "continuing wrong" doctrine, and ignoring the law of the case.

A.   The Third Circuit Did Not Hold That Plavin's Claims Are Timely

This Court already rejected Plaintiffs' argument that the Third Circuit found Plavin's claims to be timely as a matter of law. *See* ECF 114 at 28–29. The Third Circuit held simply that Plavin's allegation of a purported 2015 reimbursement for out-of-network services was sufficient at the pleading stage to allege a timely complaint. *Plavin v. Grp. Health Inc.*, 857 Fed. Appx. 83, 87 (3d Cir. May 21, 2021). With fact discovery now complete, there is no dispute (and Plavin has conceded) that ***none*** of the reimbursements alleged in the original *or* amended complaint (including the only "plausibly" timely one) were actually for out-of-

2

network services.  *See* ECF 143 ("Pltfs. Opp. Br.") at 5 n.1.[1]  There also remains

no dispute that beginning no later than 2007, Plavin and his family incurred

expenses for hundreds of out-of-network medical services that never met Plavin's

expectations.  ECF 141-3 ("Rule 56.1 Stmt.") ¶¶ 14–16.  None of this evidence

was part of the limited record on the prior appeal, and the Third Circuit's holding

that Plavin plausibly pled a timely claim has no bearing on GHI's present motion

for summary judgment.

> ### B.   The Continuing Wrong Doctrine Does Not Apply to Plavin's Claims

Plaintiffs invoke the "continuing wrong" doctrine in an effort to salvage

Plavin's claims, Pltfs. Opp. Br. at 9, 11–14, but it does not apply here.  The

doctrine tolls the limitations period when there is "a series of independent, distinct

wrongs."  *Henry v. Bank of Am.*, 48 N.Y.S.3d 67, 70 (N.Y. App. Div. 2017).  In

contrast, the doctrine does not apply where, as here, there is "a single [alleged]

wrong that has continuing effects."  *Id.*

Plavin's GBL and Insurance Law claims are premised on GHI's publication

of allegedly deceptive statements in the Summary Program Description (the "SPD")

and in the Summary of Benefits and Coverage (the "SBC") that purportedly

created false expectations about the level of reimbursement Plavin would receive

------

[1]   As explained in GHI's opening brief, the complaint's failure to identify any out-of-network
reimbursements that form the basis for Plaintiffs' claims is an alternative ground for
dismissal.  GHI Br. at 14, n.2.

under the GHI Plan for out-of-network services.  *See*, *e.g.*, ECF 1 ¶ 1 (alleging that

GHI's "marketing materials" violated GBL §§ 349 and 350), ¶ 5 (alleging that the

SPD and SBC failed to indicate that "reimbursement rates for virtually every out-

of-network service would be a fraction of the actual cost of that service"), ¶¶ 31–32

(alleging "GHI repeatedly suggested in [the SPD and SBC] that it was a mere

possibility—not a certainty—that members will be required to pay out-of-pocket

for out-of-network services" and that "GHI did not explain that the reimbursement

rates were extraordinarily low when measured against other reimbursement

methodologies typically used by PPOs").

The allegedly deceptive statements in what Plaintiffs refer to as "marketing

materials" remained constant throughout the class period, and Plavin alleged that

he was repeatedly injured each time he received reimbursement that did not meet

the expectations purportedly set by the allegedly deceptive SPD and SBC.  ECF 1

¶ 59 ("Plaintiff and members of the CBP Class were injured as a result of GHO's

[sic] deceptive acts and practices when they were denied the out-of-network

coverage represented by GHI and became personally responsible for amounts due

to medical providers.").  Despite never receiving reimbursements that met his

expectations, Plavin chose to remain enrolled in the GHI Plan year after year.  GHI

Br. at 6, 13–15.

This Court already held that Plavin's GBL and Insurance Law claims accrued when his expectations for out-of-network reimbursement ***first*** were not met. *Plavin v. Grp. Health Inc.*, 323 F. Supp. 3d. 684, 694–95 (M.D. Pa. 2018), *vacated and remanded on other grounds*, 857 F. App'x 83 (3d Cir. 2021). The Court's holding, which is law of the case, *see* GHI Br. at 11–12, was based on controlling New York law providing that the accrual of the statute of limitations for GBL claims "first occurs when plaintiff has been injured by a deceptive act or practice." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001).

Plaintiffs ignore this Court's earlier holding and argue instead that Plavin's claims are timely because each alleged reimbursement that did not satisfy Plavin's expectations constituted an independent deceptive act under the "continuing wrong" doctrine. Pltfs. Opp. Br. at 11–14. That argument is contrary to the law of the case, and it has no basis in law or fact.

Plaintiffs misconstrue the continuing wrong doctrine, conflating the harm flowing from an allegedly deceptive act (*i.e.*, the disappointing reimbursements) with the allegedly deceptive act itself (*i.e.*, the representations in the SPD and SBC). The argument that each reimbursement constituted an independent

"deceptive act" has no legal support.[2]  *See Henry*, 48 N.Y.S.3d at 70 ("The [continuing wrong] doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct.").

For example, in *DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, Pa.*, 15 Civ. 2259 (PGG), 2021 WL 3141672, at *8 (S.D.N.Y. July 26, 2021), the court held on a motion to dismiss that allegedly false and misleading advertising inducing the purchase of insurance policies constituted the relevant deceptive act for statute of limitations purposes, and defendant's continued collection of insurance premiums following those representations were "merely continuing effects of earlier unlawful conduct."

Similarly, in *Pike v. N.Y.  Life Ins. Co.*, 901 N.Y.S.2d 76, 81 (N.Y. App. Div. 2010), the court held on a motion to dismiss that the continuing wrong doctrine did not apply to a GBL claim, and explained: "Although the plaintiffs allege that they were induced to purchase unsuitable policies, and that they were unaware that they would have to pay 'substantial' premiums, they [did] not point to any specific wrong that occurred each time they paid a premium, other than having to pay it." The same is true here.  There is no allegation (or evidence) that GHI engaged in

---

[2]   Plaintiffs' attempt to recast each of Plavin's alleged injuries as a distinct and separate deceptive act for the first time in their opposition brief is an impermissible amendment of their pleadings and should be rejected.  *See Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541, 557 (M.D. Pa. 2014) (explaining that district courts within the Third Circuit routinely reject plaintiffs' attempts to "amend [their] complaint in [their] brief in opposition to a motion for summary judgment" and collecting cases).

deceptive conduct each time it issued reimbursements.  Rather, Plaintiffs alleged

that GHI engaged in deceptive conduct by issuing the SPD and SBC.

Plaintiffs' reliance on *Gristede's Foods v. Unkechauge Nation*, 532 F. Supp.

2d 439 (E.D.N.Y. 2007), which the Third Circuit cited as a basis to find Plavin's

GBL allegations plausibly timely, is misplaced.[3]  The *Gristede's* court did not

apply the continuing wrong doctrine at all; it rather held, on a motion to dismiss,

that "plaintiff has alleged more than one act of deception" and that, "[i]nsofar as

each deceptive act or false advertisement, subsequent to the first, may convey

misinformation to additional consumers and inflict new injuries, it is not clear to

the Court that plaintiff's [GBL claims] are time barred in their entirety." *Id.* at 453.

Here, in contrast, the claimed "deceptive acts" are the allegedly misleading

language in the SPD and SBC, which remained substantively unchanged prior to

Fall of 2014.  Rule 56.1 Stmt. ¶ 9.

None of the other cases Plaintiffs cite compel a different result.  For

example, in *Stanley v. Direct Energy Servs.*, 466 F. Supp. 3d 415 (S.D.N.Y. 2020),

the court denied a motion to dismiss claims brought under GBL § 349-d(3) and (7).

Those statutes regulate the conduct of energy companies and the disclosures they

must make, and are not at issue here.  GBL § 349 and N.Y. Ins. Law § 4226 do not

---

[3]   The Third Circuit did not hold as a matter of law, let alone as law of the case, that each
reimbursement Plavin received was a new injury for limitations purposes.  Rather, it merely
drew "all reasonable inferences in Plavin's favor" to allow his claims to proceed.  *Plavin*,
857 F. App'x at 87.

require that the reimbursement rate for any out-of-network medical service be "clearly and conspicuously" identified in advance the way that GBL §349-d(7) requires energy rates to be identified.[4]

Putting that dispositive distinction aside, the allegedly deceptive conduct in *Stanley* was materially different from that alleged here.  The defendant energy company allegedly represented to consumers that it would provide electricity at "market" rates and ensure "the most competitive pricing" but failed to do so.  *Id.* at 421.  In the context of a motion to dismiss, the Court held that, for limitations purposes, the plaintiff plausibly alleged a series of continuing, independent wrongs each time the defendant calculated a new variable energy price that was not at the "market" rate, in violation of GBL § 349-d(3) and (7).  *Id*. at 432, 433 n.6.  In other words, the allegedly deceptive act was the charging of prices that were different from what was represented, not that the initial representation was misleading. Plaintiffs here do not allege that GHI paid Plavin the wrong reimbursement rate under the applicable fee schedule, or that GHI's method for calculating the reimbursements was different than what was allegedly promised.  Rather, Plavin alleged that the SPD and SBC deceived him into believing that the fee schedule

---

[4]  GBL § 349-d(3) states:  "No person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services"; and § 349-d(7) states: "In every contract for energy services and in all marketing materials provided to prospective purchasers of such contracts, *__all variable charges shall be clearly and conspicuously identified__*." (emphasis added).

would produce higher rates of reimbursement than it actually provided.  And, after learning that was incorrect, Plavin continued to re-enroll in the GHI Plan and continued to submit reimbursements for out-of-network services that he knew would not meet his claimed expectations.  Thus, any reimbursements Plavin received after learning no later than 2007 that his expectations would not be met (including any reimbursements he received between August 16, 2014 and when the complaint was filed three years later)[5] were not themselves deceptive acts.

None of the other cases Plaintiffs cite—all decided at the pleading stage and involving multiple allegedly deceptive acts—compel a different result.  *See, e.g.*, *Breitman v. Xerox Educ. Servs., LLC*, No. 12 Civ. 6583(PAC), 2013 WL 5420532 (S.D.N.Y. Sept. 27, 2013) (each failure by financial institution to properly credit loan repayment, in violation of loan agreement, constituted a distinct wrong); *Harvey v. Metro. Life Ins. Co.*, 827 N.Y.S.2d 11 (N.Y. App. Div. 2011) (each collection of premium payments after insurance policy expired was plausibly an independent distinct wrong); *Ring v. AXA Fin., Inc.*, No. 0111869/2004, 2008 WL 692564 (N.Y. Sup. Ct. Feb. 6, 2008) (same); *Shelton v. Elite Model Mgmt., Inc.*,

---

[5]   "Plaintiffs do not seek relief for any out-of-network services provided in 2015 or any subsequent year."  Rule 56.1 Stmt. ¶ 11. Their argument that reimbursements received after August 16, 2014 were timely (Pltfs. Opp. Br. at 11–12) is unavailing.  Plavin's expectations for reimbursements paid after August 16, 2014, but submitted before December 31, 2014, would necessarily have been formed by statements in the 2012 SPD and the 2012 or 2013 SBC.  Plavin received numerous reimbursements in 2013 and 2014, and there were no intervening allegedly deceptive statements that could have altered Plavin's expectations.

812 N.Y.S.2d 745 (Sup. Ct. 2005) (each payment made to defendant itself constituted a separate statutory violation of GBL Article 11, constituting an independent wrong).[6]

Simply put, there is no legal or factual basis to apply the continuing wrong doctrine here.  There is no dispute that Plavin first learned that his expectations concerning reimbursement for out-of-network services would not be met at least a decade before he filed the Complaint, and his GBL and Insurance Law claims are untimely as a matter of law.

## II.    Plavin's Unjust Enrichment Claim Was Untimely When Filed

Plavin's unjust enrichment claim accrued in 1984 when Plavin first enrolled in the GHI Plan.  GHI Br. at 17–18.  There is no basis in law or fact to conclude that each new enrollment period gave rise to a new unjust enrichment claim.

The Third Circuit held at the pleading stage that Plavin plausibly alleged an unjust enrichment claim that was not duplicative of his contract claim because it was based on GHI's purported "failure to communicate the Plan's terms, regardless of whether the marketing materials were deceptive." *Plavin*, 857 F.

---

[6]   Plaintiffs misleadingly quote *Shelton* for the proposition that the "critical question is when was plaintiff injured."  Pltfs. Opp. Br. at 13.  The quoted language actually concerns the distinct question of when GBL claims first accrue, not whether the limitations period is subsequently tolled.

App'x at 87.[7]  After discovery, the undisputed facts show this narrow formulation of Plavin's claim (*i.e.*, the failure to receive Plan documents) accrued in 1984, when Plavin first enrolled in the GHI Plan and his request for information about the fee schedule was denied.  Rule 56.1 Stmt. ¶ 18; *see Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 520 (2d Cir. 2001) (statute of limitations on New York unjust enrichment claims begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution") (quotations and citations omitted).

Plaintiffs' suggestion that Plavin's claim is timely because GHI continued to profit from Plavin by collecting premiums while failing to communicate the Plan's terms on each subsequent re-enrollment is contrary to the law and defies common sense.  *See DuBuisson*, 2021 WL 3141672 at *18 n.10 (continuing wrong doctrine did not apply to unjust enrichment claim premised on the sale of allegedly illegal insurance policies because premiums paid represented only the continuing effects of earlier unlawful conduct); *Schandler v. N.Y. Life Ins. Co.*, No. 09 Civ. 10463, 2011 WL 1642574, at *9–10 (S.D.N.Y. Apr. 26, 2011) (unjust enrichment claim time-barred because it accrued when plaintiff first paid premiums to the defendants for a policy that was not what she had been promised).

---

[7]  Plaintiffs' assertion that the Third Circuit has "already rejected GHI's arguments regarding the timeliness of Mr. Plavin's unjust enrichment claims," Pltfs. Opp. Br. at 10, misrepresents the court's decision.  The Third Circuit did not even discuss whether Plavin's unjust enrichment claim was timely beyond noting that unjust enrichment claims have a six-year limitations period.  *Plavin*, 857 F. App'x at 87.

New York's unjust enrichment cause of action "depends upon broad considerations of equity and justice." *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972). Even if Plavin had a viable unjust enrichment claim (which he does not)[8] based on GHI's alleged failure to provide "Plan documents" (which discovery confirms GHI provided), there would be no equity or justice in allowing him to extend indefinitely the statute of limitations through his own decision to knowingly continue enrolling in the GHI Plan for decades despite never receiving the Plan materials that he claims he was denied in 1984.[9] The unjust enrichment claim should accordingly be dismissed as untimely.

## III. The Original Untimely Complaint Is a Legal Nullity That Cannot Support Continued Class Action Litigation

This Court has already recognized that the Amended Complaint has no effect if Plavin's original complaint was untimely. ECF 114 at 28–29. Not only is that the law of the case, but it is consistent with the "relation back" doctrine under Rule 15 and the *American Pipe* tolling doctrine. GHI Br. at 18–19. Plaintiffs cite

---

[8]   Even if the unjust enrichment claim is not dismissed as untimely, which it should be, it otherwise fails as a matter of law because it is duplicative of statutory claims and the evidence demonstrates the availability of Plan documents.

[9]   Aside from first requesting plan documents upon enrolling in the GHI Plan in 1984, Plavin could not identify in discovery any other specific attempt he made to obtain Plan documents, except recalling he was at some point told the fee schedule was available to him in physical form "in some basement somewhere." Declaration of Jared Kagan (Jan. 6, 2023) ("Kagan Jan. 6 Decl."), ECF 141-2, Ex. 2, Plavin Dep. Tr. 108:12–18.

no legal support for their novel argument that the filing of a time-barred complaint can toll the statute of limitations for other plaintiffs.

A.   The Amended Complaint Cannot Relate Back to an Untimely Complaint Under Rule 15

"In order for Rule 15(c) to prevent the statute of limitations from barring a claim by allowing a relation back, the original pleading must have been timely filed." *Jewelcor Inc. v. Karfunkel*, No. 3:99-CV-1251, 2000 WL 36741106, at *5 (M.D. Pa. Feb. 22, 2000).  That is the law of the case, ECF 114 at 28–29, and Plaintiffs cite no case law to the contrary.  Therefore, because Plavin's August 2017 complaint was untimely, Plaintiffs Altman's, Thomas', and Davis-Matlock's 2021 claims (concerning pre-2017 conduct) have no timely complaint to which they can relate back and also must be dismissed.  GHI Br. at 18–19.

B.   *American Pipe* Tolling Does Not Apply to Plavin's Complaint

1.   American Pipe *Requires a Timely Initial Complaint.*

Plaintiffs argue incorrectly that *American Pipe* tolling applies here.  Pltfs. Opp. Br. at 15–19.  But *American Pipe* is irrelevant because it addressed the tolling of putative class members' claims, and their right to intervene or to file individual actions after class certification has been denied, ***where there was no dispute that the original complaint was timely***.  *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552–53 (1974).  Plaintiffs have not cited a single case applying *American*

13

*Pipe* to hold that the filing of an untimely complaint tolls the statute of limitations for other claims, and GHI is aware of none.

On the contrary, every precedential decision of which GHI is aware that has applied *American Pipe* tolling is premised on the filing of an initial, timely complaint. *See, e.g.*, *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804, 1806 (2018) (holding that "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations" and that "[n]either [the *American Pipe* nor *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)] decision[s] so much as hints that tolling extends to otherwise time-barred class claims."); *Am. Pipe*, 414 U.S. at 550 ("[T]he filing of a ***timely*** class action complaint commences the action for all members of the class as subsequently determined.") (emphasis added); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 609 (3d Cir. 2018) ("Under *American Pipe*, the ***timely*** filing of a class action tolls the applicable statute of limitations for putative class members.") (emphasis added).  This Court previously addressed this issue, and it is now law of the case.[10]

---

[10] Plaintiffs are wrong that the Court's previous ruling is not the law of the case.  *See* GHI Br. at 12.  Plaintiffs extensively briefed the issue of *American Pipe* tolling in connection with their motion to withdraw Plavin from the case, which cited many of the same cases they again cite here.  ECF 105 at 3–4.  The Court fully considered those arguments and correctly rejected them.  ECF 114 at 28–29.  Plaintiffs have not cited any reason to reconsider that earlier decision.  *See Diehl v. SWN Prod. Co., LLC*, No. 3:19-CV-1303, 2022 WL 3371327, at *7 (M.D. Pa. Aug. 16, 2022) (Mariani, J.) (law of the case doctrine precludes the reconsideration of previously decided issues except in extraordinary circumstances: (1) "new evidence," (2) "a supervening new law," or (3) "the earlier decision was clearly erroneous and would create manifest injustice.").

ECF 114 at 29 ("[T]he application of *American Pipe* to toll the running of the statute of limitations requires that the original complaint be timely[.]").

In sum, an untimely claim is "a legal nullity," which cannot toll the statute of limitations for other potential plaintiffs.  *See* ECF 114 at 29 (citing *Smith v. Ulta SALON*, No. 18-2532 (TJK), 2020 WL 1429939 (D.D.C. Mar. 24, 2020) ("An untimely initial complaint is a legal nullity . . . [and] it cannot give effect to a later filed amendment.")).

### 2. *The Policy Behind* American Pipe *Tolling Undermines Plaintiffs' Argument*

The policy behind *American Pipe* tolling—a doctrine of judicial equity that is meant to prevent injustice by ensuring that absent class members retain the ability to bring individual suits if a timely putative class action complaint is filed but class certification is denied—is inapplicable here.

The Supreme Court underscored that *American Pipe* would not interfere with the policies of a statute of limitations, namely "fairness to defendants" and "barring a plaintiff who has slept on his rights[.]"  *Am. Pipe*, 414 U.S. at 554. Plaintiffs' novel and legally unsupported argument that *American Pipe* indefinitely holds open the ability of an absent class member to take over class claims that were not timely when filed would incentivize the filing of untimely class claims to

afford counsel more time to search for more suitable named plaintiffs.[11]  This would undermine—not further—the policy rationale for *American Pipe* tolling.

For example, in *China Agritech*, an absent class member sought to initiate a separate class action after the initial class was denied certification.  138 S. Ct. 1800.  That posture is similar to this case, where the new representatives are trying to maintain an untimely class action complaint through what is essentially a second class action complaint based on the same allegations—only substituting their claims for Plavin's.  The new representatives' complaint in *China Agritech* would have been untimely unless the original complaint tolled the statute of limitations. The Supreme Court emphasized that "[p]laintiffs have no substantive right to bring their claims outside the statute of limitations[,]" *id.* at 1810, and held that *American Pipe* tolling did not apply to allow successive class actions because "Respondents' proposed reading would allow the statute of limitations to be extended time and again . . . . Endless tolling of a statute of limitations is not a result envisioned by *American Pipe*."  *Id.* at 1808–09.

---

[11]   That is precisely what Plaintiffs' counsel did here.  After Plavin filed an untimely claim,

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
██████████████████████████.

That the new Plaintiffs here did not file a second, successive class action after certification was denied but instead seek to continue the first untimely filed claim is a distinction without a difference.  *See* MCLAUGHLIN ON CLASS ACTIONS § 3:15 (19th ed. 2022) ("Post-*China Agritech*, most courts have properly rejected any suggested distinction between a new plaintiff filing a successive class action (not subject to tolling under *China Agritech*) and a new plaintiff attempting to join an existing class action via amended complaint.").  Accordingly, there is no legal or equitable rationale for allowing this case to continue if Plavin's claims are found to be untimely.

3.      *The New Plaintiffs' Claims Were Also Untimely as of the Date of the Original Complaint*

For the reasons discussed above, Plavin's untimely complaint did not toll the statute of limitations for Altman's, Thomas's, and Davis-Matlock's claims, and the Court can dismiss their claims on that basis alone.  But even accepting Plaintiffs' flawed theory of tolling, those later-filed claims would not have been timely even when Plavin filed his original complaint in 2017.  There can be no reasonable dispute that Altman's, Thomas's, and Davis-Matlock's expectations for out-of-

17

network reimbursement first were not met prior to the accrual date as measured from August 16, 2017, when Plavin's original complaint was filed.[12]

- Altman enrolled in the GHI Plan in 1988 and, like Plavin, received reimbursement for hundreds of out-of-network services pre-dating August 6, 2014. Declaration of Steven Hinkley (Mar. 16, 2023) ("Hinkley Decl.") Ex. 1, GHI000119117. He testified that his expectations were not met as far back as the 1990s. *See* Declaration of Jared Kagan (Mar. 17, 2023) ("Kagan Mar. 17 Decl.") Ex. 2 (Altman Dep. Tr. 48:13–50:4).

- Plaintiff Michelle Davis-Matlock and her dependents submitted claims for out-of-network reimbursement in 2007, 2008, 2009, and 2013. *See* Hinkley Decl. Ex. 2 (GHI000119119); Ex. 3 (GHI000119115); Ex. 4 (GHI000119110). She testified that she was "first deceived" when she started incurring out of pocket expenses for those reimbursements. Kagan Mar. 17 Decl. Ex. 2 (Davis-Matlock Dep. Tr. 22:3–12).

---

[12] Plaintiffs' argument that GHI does not contest the timeliness of Altman's, Thomas', and Davis-Matlock's claims, Pltfs. Opp. Br. at 15–16, is wrong. The subject of GHI's narrow motion was limited to the timeliness (or lack thereof) of Plavin's claims and that ruling's impact on the remainder of the action. Because Plaintiffs raise the timeliness of their claims for the first time in opposition, GHI responds accordingly.

- Plaintiff Danielle Thomas and her son incurred multiple out-of-network services in early-2014, all of which were paid at amounts less than her expectations prior to August 16, 2014.  Hinkley Decl. Ex. 5 (GHI000119120), Ex. 6 (GHI000119118); Kagan Mar. 17 Decl. Ex. 3 (Thomas Dep. Tr. 15:19–23, 58:19–25).

Accordingly, while the Court need not reach this issue, Plaintiffs' attempt to distinguish *Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization Transactions*, *Inc.*, 730 F.3d 263, 276–80 (3d Cir. 2013) (affirming dismissal of a second amended class action complaint with prejudice because the claims in the original complaint were untimely) and *Hood v. New Jersey Department of Civil Service*, 680 F.2d 955, 959 (3d Cir. 1982) (rejecting relation back arguments pursuant to *American Pipe* because the original complaint was not timely) is unpersuasive.

*China Agritech* further underscores why, even if the new Plaintiffs' claims were timely as of August 2017, equity weighs in favor of dismissal:

> [T]o benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims . . . .  A would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief.  Her interest in representing the class as lead plaintiff, therefore, would not be preserved by the prior plaintiff's ***timely filed*** class suit.

138 S. Ct. at 1808 (emphasis added).  Thus, Altman's, Thomas', and Davis-Matlock's interests in representing a putative class would not be preserved by Plavin's filing even a *timely* class suit, let alone an ***untimely*** filed one, given their lack of diligence in bringing suit nearly four years after Plavin first filed suit.

Indeed, "[w]ith class claims, . . . efficiency favors early assertion of competing class representative claims" so that once "all would-be representatives have come forward, the district court can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel" and determine whether class treatment is appropriate early in the action, but only "once for all would-be class representatives."  *Id.* at 1807.  That did not occur here; instead, this case was litigated with Plavin as the lone named plaintiff for nearly four years, and Plaintiffs' counsel scrambled for saviors when it became clear that Plavin's initial claims were untimely.  That practice should not be countenanced.

[Remainder of page intentionally left blank]

## **CONCLUSION**

For the foregoing reasons and those set forth in GHI's initial moving papers,

GHI respectfully requests that the Court enter judgment in its favor and dismiss

this action in its entirety with prejudice.

Dated: March 17, 2023

                                    Respectfully submitted,

| | |
|---|---|
| LeVAN STAPLETON SEGAL COCHRAN LLC<br>Peter H. LeVan, Jr.<br>1760 Market Street, Suite 430<br>Philadelphia, PA 19103<br>(215) 561-1500 | DEBEVOISE & PLIMPTON LLP<br><br>By: */s/  Jared I. Kagan*<br>Jared I. Kagan, *admitted pro hac vice*<br>John Gleeson, *admitted pro hac vice*<br>Justin C. Ferrone, *admitted pro hac vice*<br>66 Hudson Boulevard<br>New York, New York 10001<br>Tel: (212) 909-6000<br>Fax: (212) 909-6836<br><br>jgleeson@debevoise.com<br>jikagan@debevoise.com<br>jcferrone@debeoivse.com |

*Attorneys for Defendant Group Health Incorporated*

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.8</u>

I hereby certify that the foregoing *Reply Memorandum of Law in Support of Defendant Group Health Incorporated's Motion for Summary Judgment* contains 4,910 words, exclusive of the Table of Authorities, Table of Contents, signature block and certificates, as determined by the word count feature of Microsoft Word, the word processing system used to prepare this document.

By:   <u>*/s/Jared I. Kagan*</u>

Jared I. Kagan

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 17, 2023, I caused a true and correct copy of the foregoing *Reply Memorandum of Law in Further Support of Defendant Group Health Incorporated's Motion for Summary Judgment*, along with the Declaration of Steven Hinkley with the exhibits thereto and the Declaration of Jared I. Kagan with the exhibits thereto, to be filed using the Court's Electronic Filing System ("ECF System").   Redacted versions of the documents are available for viewing and downloading via the ECF system and will be served by operation of the ECF System upon all counsel of record.   Unredacted versions of the documents, including documents filed under seal by Order of the Court, will be provided to the Clerk's Office, the Chambers of Hon. Judge Robert D. Mariani, and all counsel of record by overnight mail.

*/s/ Jared I. Kagan*_____
Jared I. Kagan

ii