THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN PLAVIN, on behalf of himself   :
and all others similarly situated, *et al*.   :
                                              :
          Plaintiff,                          :
     v.                                       :      3:17-CV-1462
                                              :      (JUDGE MARIANI)
GROUP HEALTH INCORPORATED,                    :
                                              :
          Defendant.                          :

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Group Health Incorporated ("GHI")'s Motion for Summary Judgment (Doc. 141). The Amended Complaint in this action alleges class action claims of unjust enrichment, as well as claims pursuant to New York's General Business Law ("GBL") § 349, GBL § 350, and Insurance Law § 4226. The Amended Complaint was filed on behalf of "Plaintiffs and similarly-situated persons who were enrolled in GHI's Comprehensive Benefit Plan for City of New York employees and retirees (the 'GHI Plan') at any time from 2011 to 2015 (the 'Class Period')," known as the CBP Class. (Doc. 70 at 1.)

According to the Amended Complaint, the conduct at issue "was partially, and prospectively, addressed by an Assurance of Discontinuance entered into with the Attorney General of the State of New York ("NYAG"), which found GHI to have engaged in 'repeated violations of Executive Law § 63(12) and General Business Law §§ 349 and 350' and

required GHI to rewrite its marketing materials [regarding particular insurance policies] and

agree to a variety of forms of prospective relief."  (Doc. 70 ¶ 1.)  Plaintiffs now seek

retrospective relief.  They summarize the challenged conduct as follows:

> At issue in this case is GHI's unlawful scheme to enroll as many NYC
> employees and retirees in the GHI Plan as possible by falsely depicting the
> plan as—in contrast to the other plans on offer—a true [preferred provider
> organization ("PPO")] plan that gave members the 'freedom to choose any
> provider worldwide' with only the mere possibility that reimbursements might
> be less than the actual fee charged by out-of-network providers.

(*Id.* ¶ 4.)  Plaintiffs specifically contend that GHI's marketing materials falsely promoted the

Plan "as a PPO plan providing comprehensive in-network and out-of-network coverage that

also did not require the payment of out-of pocket premiums."  (*Id.* ¶ 28.)  Plaintiffs allege

that in reality, "[r]ather than a mere possibility that members would be subject to

reimbursement shortfalls for out-of-network services, as GHI's materials suggested, it was a

virtual certainty that reimbursements would be dramatically less than the actual fees

charged by out-of-network providers in all cases."  (*Id.* ¶ 9.)

The present Motion was permitted to be filed on statute of limitations grounds only,

without prejudice to GHI's ability to file a subsequent motion for summary judgment on other

grounds.  (*See* Docs. 135, 136.)  GHI argues it is entitled to summary judgment on all

counts of the Amended Complaint because (1) former Plaintiff Steven Plavin's original

complaint "was untimely when filed on August 16, 2017"; and (2) the claims asserted in

2021 by the remaining named Plaintiffs, Michelle Davis-Matlock, Gary Altman and Danielle

Thomas, "were untimely when filed and there is no timely complaint to which their claims

relate back." (*Id.* at 1.)  Plaintiffs oppose the Motion, arguing that the Third Circuit has already rejected GHI's arguments, and regardless, the arguments fail because (1) the "'continuing violations' doctrine means that the statute of limitations begins to run anew with each reimbursement a plaintiff receives" and (2) the remaining Plaintiffs' claims were timely because the statute of limitations was tolled as to them under the *American Pipe* doctrine. (Doc. 143 at 1–2.)

For the reasons that follow, Defendant's Motion will be granted in part and denied in part.

## II. STATEMENT OF FACTS

The following undisputed facts are taken from the Record and from the parties' joint statement of material facts relevant to the instant Motion (Doc. 135).

Steven Plavin is a retired New York City police officer.  (*Id.,* Statement of Undisputed Facts, hereinafter "SUF", ¶ 3.)  He first enrolled in the GHI Plan in 1984.  (*Id.*) Plavin testified that he requested to view a copy of the GHI Plan's fee schedule shortly after enrolling, but his request was denied.  (*Id.* ¶ 18.)  Except for 2005 through 2007, Plavin maintained coverage in the GHI Plan from 1984 until he withdrew from this action in 2022. (*Id.* ¶ 4.)  Throughout that period, he supplemented the GHI Plan by purchasing the Enhanced Out-of-Network Rider ("OON Rider").  (*Id.* ¶ 5.)

Current and retired employees of the City have the option to select a different City-sponsored health insurance plan during the relevant open enrollment period.  (*Id.* ¶ 6.)  For

3

current City employees, open enrollment is every year.  (*Id.*)  For retirees, open enrollment occurs every other year, in even-numbered years.  (*Id.* ¶ 7.)

During open enrollment periods, the New York City Office of Labor Relations publishes a Summary Program Description ("SPD") that summarizes the various health insurance plans offered by the City.  (*Id.* ¶ 8.)  Since 2011, the Office of Labor Relations has posted the latest SPD online each year.  (*Id.*, Plaintiffs' Additional Facts, hereinafter "PAF", ¶ 3.)

The section of the SPD regarding the GHI Plan had "few, if any, changes from year to year" until Fall 2014, when it was modified.  (SUF ¶¶ 9–10.)  The GHI Plan's fee schedule was never posted on GHI's website, nor otherwise sent to plan members.  (PAF ¶¶ 8–9.)  The Amended Complaint seeks relief for out-of-network services submitted to GHI for reimbursement between 2011 and 2014; it does not seek relief for any services provided in 2015 or later.  (SUF ¶ 11.)

Plavin moved to Pennsylvania in or around 2004 with his family.  (*Id.* ¶ 12.)  He continued to reside there until his withdrawal from this action.  (*Id.*)  He submitted his first claim for reimbursement of out-of-network services under the GHI plan no later than 2004.  (*Id.* ¶ 13.)  He proceeded to submit 540 claims for reimbursement of out-of-network services on behalf of himself and his dependents between 2004 and 2014.  (*Id.* ¶ 14.)  He was reimbursed to some degree for at least some of those 540 claims, but he "was never reimbursed . . . at a rate that met his expectations."  (*Id.* ¶¶ 15–16.)

4

Plavin filed the original Complaint in this action on August 16, 2017.  (*Id.* ¶¶ 1–2.)

The Amended Complaint, filed on August 30, 2021, alleges claims on behalf of Plaintiffs

Altman, Thomas, and Davis-Matlock, in addition to Plavin.  (*See* Doc. 70.)  All three, and/or

their dependents, incurred out-of-network claims during the Class Period.  (Doc. 135, PAF ¶

5.)  Like Plavin, they each purchased the OON Rider.  (*See id.* ¶ 6.)

The Amended Complaint identifies no specific reimbursements by which Plavin

alleges he was injured, but rather alleges generally that he and his dependents were injured

by GHI's reimbursement of out-of-network claims.  (*Id.* ¶ 17.)  It also alleges that Plaintiffs

Altman, Thomas, and Davis-Matlock received out-of-network reimbursements "during the

Class period [that] were less than their expectations."  (*Id.* ¶ 10.)

### III. Procedural History

Because each party advances "law of the case" arguments, the Court provides a

detailed review of the proceedings and relevant decisions thus far.

Following Plavin's filing of the original class action Complaint on August 16, 2017

(Doc. 1), GHI filed a Motion to Dismiss for Failure to State a Claim (Doc. 31).  On June 22,

2018, this Court granted GHI's Motion, based in part on a determination that Plaintiff's GBL

claims failed to allege the required consumer-oriented conduct, and dismissed the complaint

with prejudice.  (Docs. 55, 56.)  Plavin appealed.

The Third Circuit certified the question of whether GHI's conduct was consumer

oriented to the New York Court of Appeals.  *Plavin v. Grp. Health Inc.*, No. 18-2490, 2019

WL 1965741 (3d Cir. Apr. 4, 2019). The Court of Appeals answered that it was consumer oriented. *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 146 N.E.3d 1164 (2020). Thereafter, the Third Circuit addressed the remaining issues, and held that Plavin had "adequately stated (1) the other elements of a GBL claim; (2) a claim under New York's Insurance Law; and (3) an unjust enrichment claim." *Plavin v. Grp. Health Inc.*, No. 18-2490, 857 F. App'x 83, 83 (3d Cir. May 21, 2021).

In doing so, the Third Circuit rejected GHI's statute of limitations argument, including GHI's contention that it was apparent on the face of the original Complaint that Plavin's claims were time-barred. *See id.* The Circuit stated:

> Finally, we reject GHI's argument that the complaint is time-barred. Unjust enrichment claims have a six-year limitations period. [*Sirico v. F.G.G. Prods., Inc.*, 71 A.D.3d 429, 896 N.Y.S.2d 61, 66 (2010).][1] GBL and Insurance Law claims have a three-year limitations period. [*Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 727 N.Y.S.2d 30, 750 N.E.2d 1078, 1083 (2001) (GBL claims); *Dolce v. Nw. Mut. Life Ins. Co.*, 272 A.D.2d 432, 708 N.Y.S.2d 327, 327 (2000) (Insurance Law claims).] GBL claims must be brought within three years of when a plaintiff is "injured by the actions alleged to have violated the Statute." [*Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. 2014).] Where "the gravamen of the complaints of General Business Law § 349 violations was not false guarantees of policy terms, but deceptive practices inducing unrealistic expectations ... plaintiffs suffered no measurable damage until the point in time when those expectations were actually not met." [*Gaidon*, 727 N.Y.S.2d 30, 750 N.E.2d at 1084.]
>
> Here, Plavin alleges that his expectations were not met when he received less reimbursement than he anticipated for out-of-network services. GHI allegedly reimbursed Plavin in February 2015, and Plavin filed the complaint in August 2017, less than three years later. Thus, the complaint is not time-barred.

---

[1] Bracketed citations were formatted as footnotes in the Third Circuit's opinion.

GHI submitted a declaration in the District Court stating that GHI has reimbursed Plavin for out-of-network services since 2004. Because of this, GHI argues, his expectations were not met in 2004 and the complaint is time barred. As the District Court properly held, however, the court cannot consider this document now, because it was not "integral to or explicitly relied upon in the complaint." [*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and emphasis omitted).]

GHI also argues that the complaint pleads allegations outside the three-year limitations period, meaning the entire complaint is time-barred. It is true that the complaint also alleges that Plavin was reimbursed for out-of-network services outside the three-year limit. But these were for different medical procedures. Thus, his February 2015 reimbursement is plausibly a "new injur[y]." [*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y. 2007).] Drawing all reasonable inferences in Plavin's favor, the allegation that his expectations were not met in February 2015 is enough to bring the complaint within the statute of limitations.

*Id.* at 87.

The matter was remanded to this Court and an Amended Complaint was filed on August 30, 2021, naming Davis-Matlock, Altman and Thomas as Plaintiffs in addition to Plavin. (*See* Doc. 70.) On April 12, 2022, Plaintiffs filed a "Motion to Withdraw Steven Plavin and . . . for a Protective Order," seeking to quash GHI's deposition notice to Plavin. (Doc. 98.) This Court granted the motion for withdrawal, "conditioned on the taking of Mr. Plavin's deposition and his compliance with any outstanding discovery that was outstanding prior to his motion for voluntary dismissal." (Doc. 115.) Such conditions were necessary in part to prevent the legal prejudice that would result if GHI were barred from engaging in discovery regarding the timeliness of Plavin's claims. (*See* Doc. 114 at 30.)

Plaintiffs argued that such discovery was not relevant because the Circuit "already ruled on appeal that Mr. Plavin's reimbursements for out-of-network procedures within the statute of limitation were 'plausibly a new injury.'" (Doc. 105 at 3.)  This Court considered and rejected that argument.  (*See* Doc. 114 at 30 (first citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); and then citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).)  Plaintiffs also argued that even if Plavin's original Complaint was untimely, the other Plaintiffs' claims would still be timely "because the statute of limitations for the other Plaintiffs was tolled upon the filing of Mr. Plavin's claims pursuant to *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974)." (Doc. 105 at 3–4.)  This Court considered and rejected that argument as well.  (*See* Doc. 114 at 29.)

On December 1, 2022, following Plavin's deposition, the Court granted GHI's request to file a partial motion for summary judgment on statute of limitations grounds only.  (*See* Docs. 135, 136.)  GHI filed the instant Motion on January 6, 2023.  (Doc. 141.)  Plaintiffs' response followed (Doc. 143), then GHI's reply (Doc. 145), Plaintiffs' sur-reply (Doc. 151), and GHI's additional response (Doc. 152).  The issues having been thoroughly briefed, the Motion is now ripe for disposition.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate "only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008).  "An issue is genuine only if there is a sufficient evidentiary

basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists.  *Anderson*, 477 U.S. at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as

true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable juror could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## V. ANALYSIS

### A. Law-of-the-Case: Timeliness of Plavin's Claims

Plaintiffs first contend that the Court should not reach timeliness on the merits, because the Third Circuit "already considered and rejected" the argument that Plavin "received out-of-network services before August 16, 2014 that did not meet his

expectations." (Doc. 143 at 7.) Plaintiffs argue that the Third Circuit "[held] that each reimbursement is a 'new injury' for limitations purposes," and that its ruling is "law-of-the-case and fatal to GHI's motion." (*Id.* (quoting *Plavin*, 857 F. App'x at 87) (citing *Chimenti v. Kimber*, 2006 WL 335405, at *2 (M.D. Pa. Feb. 13, 2006)).

The law of the case doctrine "prevents reconsideration of legal issues already decided in earlier stages of a case." *Bedrosian v. U.S. Dep't of Treasury, IRS*, 42 F.4th 174, 181 (3d Cir. 2022). "It is 'axiomatic' that on remand after an appellate court decision, the trial court 'must proceed in accordance with the mandate and the law of the case as established on appeal.'" *Chimenti v. Kimber*, No. CIV. 3:CV-01-0273, 2006 WL 335405, at *2 (M.D. Pa. Feb. 13, 2006) (quoting *Cooper Distributing Co. v. Amana Refrigeration Inc.*, 180 F.3d 542, 546 (3d Cir. 1999)).

It is true that the Third Circuit rejected GHI's statute of limitations argument at the motion to dismiss stage. *See Plavin*, 857 F. App'x at 87. The Circuit determined that the original Complaint's inclusion of allegations outside the three-year limitations period did not render it time-barred on its face, because those allegations "were for different medical procedures." *Id.* "Thus," the Circuit stated, Plavin's "February 2015 reimbursement is plausibly a 'new injur[y].'" *Id.* (quoting *Gristede's Foods, Inc.*, 532 F. Supp. at 453).

But as this Court explained in its Memorandum Opinion on Plavin's Motion to Withdraw (Doc. 114), the Third Circuit's decision regarding timeliness was made "in the context of a motion to dismiss where the *plausibility* of a claim is the relevant inquiry," and

"an initial pre-discovery determination of plausibility does not foreclose discovery on the issue found plausible." (*Id.* at 30 (first citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); and then citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).)  In other words, the Circuit "[drew] all reasonable inferences in Plavin's favor" and determined that the complaint was sufficient to withstand GHI's statute of limitations defense *at the pleadings stage*. *Plavin*, 857 F. App'x at 87.  Whether the undisputed facts, at the close of discovery, show that the statute of limitations expired before Plavin filed the original Complaint is a different question not precluded by the law-of-the-case doctrine.

Nor does the Circuit's holding require this Court to treat each "medical procedure" as a "new injury" as a matter of law.  *Id.*  The Circuit's holding merely allowed Plaintiffs the opportunity to discover and produce evidence showing that each medical procedure constituted a new injury.  *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 330 (3d Cir. 2016) (rejecting law of the case argument and noting that "[w]hile at the motion-to-dismiss stage of proceedings a district court is obligated to accept the allegations in a plaintiff's complaint as true, it does not accept mere allegations as true at the summary judgment stage"); *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (noting law of the case doctrine is inapplicable "where the legally relevant factors differ between a motion to dismiss, which relies on plaintiff's allegations in his complaint, and a motion for summary judgment which relies on the evidence in the record" (citing *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996))); *Bird v. Borough of Moosic*, No. 18-CV02289, 2021 WL 4355348, at *5 (M.D. Pa. Sept. 24, 2021)

(stating that earlier decision denying motion to dismiss "does not constitute law of the case here because it was based on a motion to dismiss, whereas this opinion considers a motion for summary judgment").

Accordingly, the law of the case doctrine does not foreclose the Court's consideration of GHI's timeliness defense on the merits. To the contrary, this Court previously ruled that the Third Circuit's timeliness decision did not preclude further inquiry into Plavin's timeliness. (Doc. 114 at 29–30.) For these reasons, the Court must consider whether the record evidence now shows that Plavin's claims were timely.

### B. Timeliness of Plavin's GBL and Insurance Law Claims

Plavin's GBL and Insurance Law claims are time-barred because the undisputed facts show they accrued, at the latest, in 2013, and New York's continuing wrongs doctrine does not save them. As both this Court and the Third Circuit have explained, the statute of limitations for GBL and Insurance Law claims is three years. *Plavin*, 857 F. App'x at 87 (first citing *Gaidon*, 750 N.E.2d at 1083 (GBL claims); and then citing *Dolce v. Nw. Mut. Life Ins. Co.*, 272 A.D.2d 432, 708 N.Y.S.2d 327, 327 (2000) (Insurance Law claims)). When a claim is based on "deceptive practices inducing unrealistic expectations," the claim accrues at the point when the plaintiff's expectations are "actually not met." *Id.* (citing *Gaidon*, 750 N.E.2d

at 1084).  In this case, for Plavin's GBL and Insurance Law claims to be timely, his claims must have accrued no earlier than August 16, 2014.[2]

Plaintiffs do not dispute that Plavin's expectations were *never* met.  It follows that they were "actually not met," pursuant to *Gaidon*, when he received his first reimbursement for an out-of-network service in 2004.  (SUF ¶ 13.)  Indeed, Plavin testified that "for virtually every out-of-network claim," he was paid less than "what they should have paid."  (Plavin Dep. Tr. at 69:2–70:8.)  He testified specifically that an August 2, 2011 reimbursement "would not have met [his] expectation[s]."  (*Id.* at 63:20–23.)  Thus, absent any tolling, the statute of limitations ran as early as 2004, and well before August 16, 2017.

Of note, Plaintiffs seem to take issue with GHI's assertion that a plaintiff's claim accrues when his expectations are *first* not met.  But the rule—at least the general rule—cannot logically be understood otherwise.  In *Gaidon*, the plaintiffs challenged the allegedly deceptive marketing of "vanishing premium" insurance policies through "agents' representations and personalized graphic illustrations showing that, after a specified period," the policy's dividends would cover its premium costs.  750 N.E.2d at 1080.  The court held that the plaintiffs' injuries occurred "when they were first called upon to pay additional premiums beyond the date by which they were led to believe that policy dividends would be sufficient to cover all premium costs."  *Id.* at 1083.  That was the point at which

---

[2] As many other courts have, *e.g. Plavin*, 857 F. App'x at 87, the Court considers the timeliness of the two GBL claims and the Insurance Law claims together because they concern similar conduct and the statute of limitations is the same for each.

14

their claims accrued.  *See id.* at 1084.  As the court explained, the plaintiffs "suffered no

measurable damage until the point in time when [their] expectations were actually not met,

and they were then called upon either to pay additional premiums or lose coverage and

forfeit the premiums they previously paid."  *Id.*  The court concluded that the statute of

limitations was triggered on "the date when those additional premiums were demanded."  *Id.*

While *Gaidon* does not expressly state that plaintiffs' claims accrued on the date the

premiums were *first* demanded, the opinion as a whole plainly endorses such a rule.

　　The original Complaint here was therefore untimely *unless* New York's continuing

wrongs, or continuing violations, doctrine applies to GHI's conduct.  As the Court

understands Plaintiffs' position, they do not seriously contest that a claim would generally

accrue when a plaintiff's expectations are first not met; rather, they argue that these facts

present an exception to the general rule.  Those exceptional facts, Plaintiffs argue,

constitute continuing wrongs, and call for the tolling of the statute of limitations.

　　As New York's Appellate Division, First Department explained in *Henry v. Bank of

America*,

> The continuous wrong doctrine is an exception to the general rule that the
> statute of limitations "'runs from the time of the breach though no damage
> occurs until later'" (*Ely–Cruikshank Co. v. Bank of Montreal,* 81 N.Y.2d 399,
> 402, 599 N.Y.S.2d 501, 615 N.E.2d 985 [1993]). The doctrine "is usually
> employed where there is a series of continuing wrongs and serves to toll the
> running of a period of limitations to the date of the commission of the last
> wrongful act" (*Selkirk v. State,* 249 A.D.2d 818, 819, 671 N.Y.S.2d 824 [3d
> Dept. 1998]). Where applicable, the doctrine will save all claims for recovery of
> damages but only to the extent of wrongs committed within the applicable
> statute of limitations (*see Jensen v. General Elec. Co.,* 82 N.Y.2d 77, 83–85,

88, 603 N.Y.S.2d 420, 623 N.E.2d 547 [1993]; *Sutton Inv. Corp. v. City of Syracuse,* 48 A.D.3d 1141, 1143, 853 N.Y.S.2d 233 [4th Dept. 2008], *lv. dismissed* 10 N.Y.3d 858, 859 N.Y.S.2d 619, 889 N.E.2d 497 [2008]).

147 A.D.3d 599, 601, 48 N.Y.S.3d 67, 69–70 (2017).

Where a GBL claim is based on a "series of allegedly deceptive acts, . . . the continuing violations doctrine applies and effectively tolls the limitations period until the date of the commission of the last wrongful act." *DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.*, No. 15 CIV. 2259 (PGG), 2021 WL 3141672, at *7 (S.D.N.Y. July 26, 2021) (quoting *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 432 (S.D.N.Y. 2020)). However, New York courts have made clear that "tolling based on the doctrine 'may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct[.]'" *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 122 (2d Cir. 2020) (quoting *Salomon v. Town of Wallkill*, 174 A.D.3d 720, 721 (2d Dep't 2019)). "The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs." *Henry*, 147 A.D.3d at 601.

Plaintiffs argue the doctrine applies here. They contend,

New York's well-established "continuing violations" doctrine means that the statute of limitations begins to run anew with each reimbursement a plaintiff receives. Under that doctrine, claims arising from the very low reimbursements Mr. Plavin received from GHI after August 16, 2014 were timely when Mr. Plavin filed his Original Complaint, three years after that date.

(Doc. 143 at 1.) They argue that the statute of limitations did not begin to run in 2004 when Plavin "*first* received a reimbursement that did not meet his expectations" because GHI has

engaged in "a series of allegedly deceptive acts" that tolled the limitations period.  (*Id.* at 11

(quoting *Breitman v. Xerox Educ. Servs., LLC*, 2013 WL 5420532, at *4 (S.D.N.Y. Sept. 27,

2013)).)

Notably, Plaintiffs' summary of the doctrine suggests that the "series of independent,

distinct wrongs" in this case were the reimbursements.  Indeed, in their sur-reply, Plaintiffs

"claim that separate and distinct wrongful acts occurred each time GHI's reimbursements for

out-of-network claims were lower than what GHI represented to them and the class,

including that the fee schedule was updated periodically when it never was."  (Doc. 151 at

2.)

GHI disagrees.  GHI contends "the doctrine does not apply where, as here, there is

'a single [alleged] wrong that has continuing effects.'"  (Doc. 145 at 3 (quoting *Henry*, 48

N.Y.S.3d at 70).)  GHI argues that the wrong here was the publication of allegedly deceptive

and misleading statements in the SPD that "purportedly created false expectations about

the level of reimbursement Plavin would receive under the GHI Plan for out-of-network

services."  (*Id.* at 3–4 (citing Doc. 1 ¶¶ 1, 5, 31–32).)  Because the deceptive statements

"remained constant through the [C]lass [P]eriod," the argument continues, the wrong was

singular in nature.  (*Id.* at 4.)  The reimbursements were merely the "continuing effects" of

that wrong.  (*See id.* at 5.)  GHI argues in summary that "Plaintiffs misconstrue the

continuing wrong doctrine, conflating the harm flowing from an allegedly deceptive act (*i.e.,*

the disappointing reimbursements) with the allegedly deceptive act itself (*i.e.*, the representations in the SPD and SBC)."[3]  (*Id.* at 5.)

The Court is not fully persuaded by either party's position.  GHI is correct that, for purposes of determining whether the continuing wrongs doctrine applies, the relevant "wrong" is the publication of the allegedly deceptive statements in the SPD.  Sections 349 and 350 of the GBL prohibit "deceptive acts or practices" and "false advertising," respectively, "in the conduct of any business, trade or commerce or in the furnishing of any service."  Deceptive acts are "those likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).  Insurance Law § 4226(a) imposes liability on an insurer that issues or circulates any illustration, circular, statement, or memorandum misrepresenting the terms, benefits, or advantages of any of its insurance policies.  In other words, the acts made unlawful by these statutes are the acts of misrepresenting or otherwise deceiving the consumer regarding the actor's products or services.

Plaintiffs' conclusory explanations provide insufficient support for their position that the reimbursements themselves constitute continuing wrongs.  For example, Plaintiffs assert that this case is different from *Henry v. Bank of America* because Plavin "alleges GHI deceived him when his specific reimbursements for out-of-network claims were less than

---

[3] The parties' statement of undisputed facts does not reference the Summary of Benefits and Coverage ("SBC"), but the Amended Complaint describes it as a summary document, like the SPD, that was made available online prior to each year's enrollment period.  (Doc. 70 ¶ 5.)

what GHI represented to him and the class." (Doc. 143 at 14.)  In their sur-reply, Plaintiffs

state, "Unlike in *DuBuisson* and *Pike*,[4] Plaintiffs claim that separate and distinct wrongful

acts occurred each time GHI's reimbursements for out-of-network claims were lower than

what GHI represented to them and the class, including that the fee schedule was updated

periodically when it never was." (Doc. 151 at 2.)  But Plaintiffs cannot rest on their

conclusory allegations at summary judgment.  Nor have they pointed to any authority

explaining why the reimbursements themselves should be treated as deceptive acts and not

continuing effects.

In the Court's view, the reimbursements were not "likely to mislead a reasonable

consumer acting reasonably under the circumstances"—the only potentially misleading acts

were the earlier representations about the forthcoming reimbursements.  *Oswego Laborers'*

*Loc. 214 Pension Fund,* 85 N.Y.2d at 26.  Similarly, GBL § 350 and Insurance Law §

4226(a) target the acts of falsely advertising and issuing statements that misrepresent an

insurance policy, respectively.  The reimbursements at issue are the services that were

allegedly falsely advertised or misrepresented by the marketing materials.  The

reimbursements were not advertisements nor misrepresentative statements.  In sum,

Plaintiffs have not shown that the reimbursements were wrongful acts—only that they were

---

[4] *DuBuisson*, 2021 WL 3141672, is discussed further *infra* at 25.  *Pike v. New York Life Insurance Co.,* 72 A.D.3d 1043 (2d Dep't 2010), is discussed further *infra* at 26.

unexpectedly low in value in light of *earlier* potentially unlawful conduct: the publication of allegedly deceptive marketing materials.

However, the recurring publication of the allegedly misleading materials is not properly considered a single act. The undisputed facts are clear that the SPD was made available to City employees and retirees either annually or bi-annually. Of course, it is also undisputed that the City and GHI had the opportunity to modify the GHI Plan descriptions each year and did not do so. The result is that, either annually or bi-annually, GHI published the same allegedly deceptive descriptions of the GHI Plan. Notwithstanding the identical content, in an abundance of caution, the Court considers the annual or bi-annual publication of the materials as distinct unlawful acts, rather than a single unlawful act.

Accordingly, in the Court's view, the last wrongful act that could have given rise to a cause of action occurred in 2012—when Plavin last received the allegedly deceptive materials and had an opportunity to change his insurance coverage. (*See* SUF ¶ 7 (retirees could select a new plan during the open enrollment period in even-numbered years); SUF ¶ 10 ("For the Fall 2014 enrollment period, the SPD's summary of the GHI Plan changed.").) In fact, GHI makes this argument in the alternative. As GHI suggests, if the 2012 publication of the materials is considered a separate unlawful act, Plavin's claim would have accrued in early 2013, when he first submitted and received reimbursements pursuant to the plan he selected in 2012 and those reimbursements failed to meet his expectations. (*See* Doc. 141-1 (citing Doc. 141-17, Hinkley Decl. Ex. 6 (Claim No. EMC2277073 was

submitted on January 4, 2013, and paid by GHI on January 15, 2013; two additional claims were submitted, processed and paid in March 2013, Claim Nos. EMC4615770 and EMC4620008)).)

Considering the above squarely in the context of the continuing wrongs doctrine, which "applies and effectively tolls the limitations period until the date of the commission of the last wrongful act," several conclusions follow. *Stanley*, 466 F. Supp. 3d at 432. On the one hand, the continuing wrongs doctrine *does* apply insofar as it tolls the limitations period through 2012: the last time, relevant to the Class Period, that the allegedly deceptive materials were published. On the other hand, the doctrine *does not* serve to extend the limitations period or cause it to "run anew with each reimbursement a plaintiff receives" as Plaintiffs argue (Doc. 143 at 1), because the reimbursements themselves are not the allegedly unlawful acts, but the continuing effects of those acts. It follows that Plavin's claim with respect to the last relevant wrongful act in 2012 accrued in early 2013, when he was first reimbursed according to the plan he selected in 2012. His GBL and Insurance Law claims are therefore untimely because they accrued earlier than August 16, 2014. That is, they accrued on January 15, 2013. (Doc. 141-17, Hinkley Decl. Ex. 6 (Claim No. EMC2277073 was submitted on January 4, 2013, and paid by GHI on January 15, 2013).)

The Court's review of the cases cited by the parties confirms this view. Each party points to cases in which the continuing wrongs doctrine either was or was not applied to toll the statute of limitations for GBL claims. Defendant argues persuasively that the action at

hand is analogous to cases wherein recurring payments or charges were deemed the continuing effects of an earlier unlawful act, and not continuing wrongs.

First, Plaintiffs point to *Stanley v. Direct Energy Services* as instructive. 466 F. Supp. 3d 415, 432 (S.D.N.Y. 2020). In *Stanley*, the plaintiff brought claims under GBL § 349, "§ 349-d(3), which specifically prohibits deceptive practices in the marketing of energy services, and . . . § 349-d(7), which requires variable charges to be 'clearly and conspicuously identified' in every energy services contract." *Id.* at 431 (citing N.Y. Gen. Bus. Law §§ 349, 349-d(3), 349-d(7)). The plaintiff alleged that the defendant energy company deceptively offered "competitive" utility rates based on the "market" in its variable rate plan, and instead charged prices untethered to any marker of "competitive" or "market" prices in the industry. *Id.* at 419. The court applied the continuing wrongs doctrine. "[C]onstruing all ambiguities in favor of Plaintiff," the court determined that each charge (and corresponding payment) constituted an individual wrongful act. *Id.* at 432. The court also "observe[d] that it [was] Defendant's purportedly unlawful monthly *charges* that made its initial representation to Plaintiff unlawful or misleading at all." *Id.*

*Stanley* is certainly the most persuasive of Plaintiffs' cited authority, but it still misses the mark. The allegedly deceptive statement in *Stanley*—that the defendant's variable energy rates would be competitive and based on the market—represented that the defendant would calculate its rates on a monthly basis in accordance with the market. Charging in accordance with the "market" inherently requires periodically calculating new

rates. The defendant's repeated charges of non-competitive rates, calculated each month without consideration of market prices, therefore constituted distinct wrongful acts. That is not the case here. As GHI correctly notes,

> Plaintiffs here do not allege that GHI paid Plavin the wrong reimbursement rate under the applicable fee schedule, or that GHI's method for calculating the reimbursements was different than what was allegedly promised. Rather, Plavin alleged that the SPD and SBC deceived him into believing that the fee schedule would produce higher rates of reimbursement than it actually provided.

(Doc. 145 at 8–9.)

Plaintiffs cite other distinguishable cases. In *Harvey v. Metro. Life Ins. Co.*, the court applied the continuing wrongs doctrine to a GBL § 349 claim when the plaintiff alleged his life insurance was marketed such that "consumers could reasonably believe their children might still be covered, even after age 25, as long as premiums continued to be paid," when in fact they were not covered. 827 N.Y.S.2d 6, 6 (1st Dep't 2006). The court held that the plaintiff's payment of premiums after the policy no longer provided coverage for his children were "wrongful acts" under the continuing wrongs doctrine. *Id.* at 6–7; *see also Ring v. AXA Financial, Inc.*, No. 0111869/2004, 2008 WL 692564, at *4 (N.Y. Sup. Ct. Feb. 6, 2008) (applying *Harvey* to similar facts). But collecting payments on an expired insurance policy is distinguishably wrong in itself, notwithstanding the allegedly deceptive marketing of the policy. Here, while GHI's reimbursements did not meet Plavin's expectations given the SPD, Plaintiffs have not shown that the reimbursements were independently unlawful.

*Shelton v. Elite Model Mgmt., Inc.* is also distinguishable.  812 N.Y.S.2d 745, 751

(N.Y. Sup. Ct. 2005).  In *Shelton*, a putative class of models sued various modeling

agencies, asserting GBL § 349 claims on the grounds that the agencies misled the plaintiffs

by improperly denying their status as "employment agencies" under New York law.  *Id.* at

757.  At the pleadings stage, the plaintiffs alleged that by denying their status as

employment agencies, the modeling agencies avoided a ten percent statutory limit on fees

allowed to be charged by employment agencies.  *See* GBL § 185.  The court applied the

continuing wrongs doctrine and held the wrongful acts included plaintiffs' repeated

payments (pursuant to defendants' charges) of fees over the ten percent statutory limit.

*See Shelton*, 812 N.Y.S.2d at 757–58.

Shelton does not help Plaintiffs because the fees, as alleged, would have violated

statutory law even in absence of any prior deceptive act.  Rather, *Shelton* clearly illustrates

the distinction between a fee that allegedly violates statutory law on its own, by exceeding

the ten percent statutory limit applicable to employment agencies, and a payment that

merely disappoints given an earlier deceptive act, as here.  Because it is independently

unlawful, only the former constitutes a wrongful act under the continuing wrongs doctrine.

Plaintiffs also rely on *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d

439, 453 (E.D.N.Y. 2007).  The Third Circuit cited *Gristede's* when it held that the February

2015 claim was "plausibly a 'new injur[y]'" for purposes of GHI's motion to dismiss the

original Complaint.  *Plavin*, 857 F. App'x at 87.  But contrary to Plaintiffs' assertion,

*Gristede's* did not technically apply the continuing violations doctrine, nor did the plaintiff

argue that the doctrine applied. As GHI notes, instead, the court held on a motion to

dismiss that the plaintiff had "alleged more than one act of deception and false

advertisement under sections 349 and 350," citing the complaint's allegations of statements

made "through the Internet, the mail, in newspaper advertising, in billboards and through

telephone marketing." *Gristede's Foods, Inc.*, 532 F. Supp. 2d at 453. The court explained,

"Insofar as each deceptive act or false advertisement, subsequent to the first, may convey

misinformation to additional consumers and inflict new injuries, it is not clear to the Court

that plaintiff's claims under Sections 349 and 350 are time barred in their entirety." *Id.* The

repeated "deceptive acts" in *Gristede's* are analogous to GHI's repeated publication of

allegedly deceptive materials—not GHI's reimbursements.

On the other hand, GHI points to several instructive cases. In *DuBuisson v. National Union Fire Insurance of Pittsburgh, Pennsylvania*, the plaintiffs asserted GBL § 350 claims

based on the defendant's allegedly false and misleading advertising of its insurance

policies. 2021 WL 3141672, at *8. The court rejected the plaintiffs' contention that the

payment of premiums under the policy constituted continuing violations. *Id.* at *9. The court

distinguished *Harvey* and *Shelton* on the grounds that the plaintiffs had "not alleged that a

separate and distinct wrong occurred each time they paid premiums. Plaintiffs instead

allege a wrong that occurred when they first purchased the policies—namely, that the

policies were sold through false and misleading advertising." *Id.* at *8. Like the collection of

premiums in *DuBuisson*, the reimbursements here are "the continuing effects of earlier

unlawful conduct." *Id.* (quoting *Miller*, 979 F.3d at 122).

Finally, *Pike v. New York Life Insurance Co.* is analogous. 72 A.D.3d 1043 (2d Dep't

2010). In *Pike*, the plaintiffs asserted several causes of action, including a GBL § 349 claim,

arising out of their purchase of several life insurance policies. *Id.* at 1047. The "gravamen

of the complaint was that [they were induced] to purchase multiple policies which were

unsuitable for their needs and which they could not reasonably afford." *Id.* at 1046. The

plaintiffs specifically alleged that "they were unaware that they would have to pay

'substantial' premiums." *Id.* at 1048. The court held that the continuing wrongs doctrine did

not apply. *Id.* The court emphasized that the plaintiffs did "not point to any specific wrong

that occurred each time they paid a premium, other than having to pay it. Thus, any wrong

accrued at the time of purchase of the policies, not at the time of payment of each

premium." *Id.* GHI has demonstrated that the same is true here.

For the foregoing reasons, the reimbursements at issue are more like the premiums

in *DuBuisson* and *Pike* than the relevant wrongs in *Stanley*, *Harvey*, *Shelton*, and

*Gristede's*. Instead, the continuing wrongs in *Stanley*, *Harvey*, *Shelton*, and *Gristede's* are

analogous to GHI's repeated publication of the allegedly deceptive materials here. The last

such publication occurred in 2012, and pursuant to *Gaidon*, Plavin's last possible claim

accrued the first time he received a reimbursement pursuant to the plan in which he enrolled

in 2012. Accordingly, his GBL and Insurance Law claims accrued on January 15, 2013 and are time-barred.

### C. Unjust Enrichment Claims

Based on the submissions currently before the Court, GHI's Motion will be denied as to Plavin's unjust enrichment claims because GHI has failed to show it is entitled to summary judgment as a matter of law. As the New York Court of Appeals explained in *Corsello v. Verizon New York, Inc.*,

> The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in "equity and good conscience" should be paid to the plaintiff (*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 944 N.E.2d 1104 [2011], quoting *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695 [1972]). In a broad sense, this may be true in many cases, but unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled (*see Markwica v. Davis*, 64 N.Y.2d 38, 484 N.Y.S.2d 522, 473 N.E.2d 750 [1984]; *Kirby McInerney & Squire, LLP v. Hall Charne Burce & Olson*, S.C., 15 A.D.3d 233, 790 N.Y.S.2d 84 [2005]). An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim (*Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388–389, 521 N.Y.S.2d 653, 516 N.E.2d 190 [1987]; *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81, 883 N.E.2d 990 [2008]; *Town of Wallkill v. Rosenstein*, 40 A.D.3d 972, 974, 837 N.Y.S.2d 212 [2d Dep't 2007]).

18 N.Y.3d 777, 790–91 (2012).

The statute of limitations for unjust enrichment claims in New York is six years.

*Plavin*, 857 F. App'x at 87 (citing *Sirico v. F.G.G. Prods., Inc.*, 71 A.D.3d 429, 896 N.Y.S.2d

61, 66 (2010)).  Under New York law, "[t]he statute of limitations for unjust enrichment begins to run when a defendant accepts the benefits bestowed upon him, . . . or upon occurrence of the wrongful act giving rise to the duty of restitution."  *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 558 F. Supp. 2d 378, 409 (E.D.N.Y. 2008), *aff'd*, 710 F.3d 57 (2d Cir. 2013) (first citing *Freeman v. Bianco,* No. 02CV7525, 2003 WL 179777 at *4 (S.D.N.Y. Jan. 24, 2003); and then citing *Plitman v. Leibowitz,* 990 F. Supp. 336, 337 (S.D.N.Y. 1998)).  To be timely, Plavin's unjust enrichment claim must have accrued no earlier than August 16, 2011.

In holding that Plavin's unjust enrichment claim was sufficient to withstand GHI's motion to dismiss, the Third Circuit held that the claim would not be duplicative of his statutory claims if it were based on GHI's "failure to communicate the Plan's terms, regardless of whether the marketing materials were deceptive."  *Plavin,* 857 F. App'x at 87. Consistent with Circuit's holding, Plaintiffs now assert that GHI was unjustly enriched because it failed to communicate the GHI Plan's terms.

According to GHI, it follows that Plavin's unjust enrichment claim accrued in 1984 when Plaintiff first enrolled in the GHI plan and "his request for information about the fee schedule was denied."  (Doc. 141-1 at 17.)  If the unjust enrichment claim were construed otherwise, GHI argues, it would be duplicative of Plavin's statutory claims and would not survive.  Under this theory, Plavin's claim is either time-barred, because the claim accrued and the statute of limitations expired long before 2017, or timely but improperly duplicative.

Plaintiffs counter that GHI's "failure to communicate the Plan's terms . . . happened every year for active employees and every other year for retired employees." (Doc. 143 at 14.)  Thus, according to Plaintiffs, an unjust enrichment claim accrued each time the SPD materials were published without the fee schedule, and that claim was not duplicative of the GBL and Insurance Law claims.  Plaintiffs do not propose an accrual date, but it follows that Plavin's unjust enrichment claim would have last accrued during the open enrollment period in 2012, when he last re-enrolled in the Plan.  Under that theory, the claim is timely because it accrued after August 16, 2011.

GHI notes that under Plaintiffs' theory, the conduct by which GHI was unjustly enriched is the same conduct challenged by way of the statutory claims.  Put differently, all of the claims stem from the marketing materials; the statutory claims are rooted in the deceptive nature of the materials, and the unjust enrichment claims are based on the failure to include the fee schedule in the materials.  On the submissions before the Court, it may be that Plaintiffs' unjust enrichment claim would "simply duplicate" the statutory claims.  *Plavin*, 857 F. App'x at 86.  However, on the current Record, the Court cannot make that determination, and the omission Plaintiffs point to is arguably distinguishable from the alleged overt deception on which the statutory claims are based.

More to the point, this Motion was permitted to be submitted on statute of limitations grounds only.  Accordingly, because Plavin's claim could be timely under Plaintiffs' theory,

GHI has failed to show it is entitled to summary judgment on this claim.  Therefore, GHI's Motion will be denied without prejudice. [5]

### D.  Timeliness of New Plaintiffs' Claims in Amended Complaint

#### 1.  GBL and Insurance Law Claims

Because the GBL and Insurance Law claims asserted in 2021 by the remaining Plaintiffs were also filed outside of the limitations period and the corresponding claims in the original Complaint were untimely, the Amended Complaint will be dismissed as to the remaining Plaintiffs' statutory claims.  Plaintiffs argue that even if Plavin's claims are time-barred, the remaining Plaintiffs' claims should survive because they were tolled as of the filing of the original Complaint, pursuant to *American Pipe*.  Plaintiffs contend that *American Pipe* tolling does not require a timely original complaint.  (Doc. 143 at 16.)  GHI argues the claims of the remaining Plaintiffs were not tolled, and further, that this Court previously held as much.  (Doc. 141-1 (citing Doc. 114 at 28–29).)

At the outset, *American Pipe* "did not itself announce a tolling rule applicable to state law claims."  *Matana v. Merkin*, 957 F. Supp. 2d 473, 488 (S.D.N.Y. 2013).  "[W]here a court borrows a statute of limitations from state law, the court must also borrow from state law the relevant tolling principles."  *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 210 n.4 (3d Cir. 2002); *Germinaro v. Fid. Nat. Title Ins. Co.*, 107 F. Supp. 3d 439, 457 (W.D. Pa. 2015)

---

[5] Specifically, the Court cannot determine whether Plavin's claim is time-barred without making a determination as to whether it is duplicative of his statutory claims.  The second question is not properly before the Court, so summary judgment is not warranted.

(federal court must look to state law to determine issues of class tolling).  The state law claims at issue are governed by New York law, and "New York courts have . . . long embraced the principles of *American Pipe*."  *Id.* (quoting *Cullen v. Margiotta,* 811 F.2d 698, 719 (2d Cir. 1987)); *see also Bermudez Chavez v. Occidental Chem. Corp.*, 158 N.E.3d 93, 103 (2020) ("*American Pipe* tolling is consistent with New York law").

Under *American Pipe*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  414 U.S. at 554.  As GHI notes, the Court previously addressed the application of *American Pipe* in this case.  In its Memorandum Opinion regarding Plavin's Motion to Withdraw, the Court explained:

> Plaintiffs argue that even if Mr. Plavin's original Complaint was untimely the other Plaintiffs' claims would still be timely "because the statute of limitations for the other Plaintiffs was tolled upon the filing of Mr. Plavin's claims pursuant to *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974)." (*Id.* at 3–4). Plaintiffs assert that under the decision in *American Pipe*, "the filing of a class action complaint tolls the statute of limitations for all members of the putative class who intervene in the same action." (*Id.* at 4). Plaintiffs cite to *Haas v. Pittsburgh Nat'l Bank*, 526 F. 2d 1083, 1097–98 (3d Cir. 1975) in support of their argument. *Id.* However, the Third Circuit's decision in *Haas* makes clear that the application of *American Pipe* to toll the running of the statute of limitations requires that the original complaint be timely: "American Pipe holds that the *timely* commencement of a class action tolls the applicable statute of limitations, even though the suit is later denied class action status after the statutory period has elapsed." 526 F.2d at 1097 (emphasis added).

(Doc. 114 at 28–29.)

Insofar as the Court's previous decision—and the parties' briefs—relied on Third Circuit authority, the result is the same under New York law.  Like the Third Circuit in *Haas*,

New York courts have noted that the commencement of an action must have been timely to toll the clock for putative class members. *See, e.g., Yollin v. Holland Am. Cruises, Inc.*, 97 A.D.2d 720, 720, 468 N.Y.S.2d 873, 875 (1983) ("the timely commencement of the action by plaintiff herein satisfied the purpose of the contractual limitation period as to all persons who might subsequently participate in the suit as members of a class"); *Williams v. Dow Chem. Co.*, No. 01 CIV. 4307 (PKC), 2004 WL 1348932, at *11 (S.D.N.Y. June 16, 2004) (discussing *Yollin*); *Adams v. Bigsbee Enterprises, Inc.*, 53 Misc. 3d 1210(A), 48 N.Y.S.3d 264 (N.Y. Sup. 2015) ("the timely commencement of a putative class action has been held to toll the statute of limitations for members of the proposed class").

Further, though outside of New York, the most analogous case of which the Court is aware favors GHI. The original complaint in *Hood v. New Jersey Department of Civil Services* was untimely and the Third Circuit declined to apply *American Pipe*. 680 F.2d 955, 957 (3d Cir. 1982). In *Hood*, the court refused to allow the untimely filing of a charge with the EEOC by one plaintiff, Ronald Heath, to toll the statute of limitations on the claims of another plaintiff, George Hood. *See id.* at 959. Hood argued that "the filing of the EEOC complaint by Heath tolled the filing period for his own charge, because the filing of a class-action claim tolls the running of the statute of limitations for the putative class members" under *American Pipe*. *Id.* (citing *American Pipe*, 414 U.S. 538). The court rejected Hood's argument, explaining,

> in order for the statute to be tolled, the original complaint must have been timely filed. [*American Pipe*, 414 U.S. at 561, 94 S.Ct. at 770 (allowed one year for

filing, the nominal plaintiff filed with eleven days to spare; when the class decertified, the period began to run again, and decertified members of that class had eleven days to file); *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1097 (3d Cir. 1975) ("the timely commencement of a class action tolls the applicable statute of limitations, even though the suit is later denied class action status after the statutory period has elapsed") (emphasis added); *Barrett v. United States Civil Service Comm'n.*, 439 F.Supp. 216 (D.D.C.1977) (after class decertified, former class members had to file.).]   As was noted above, Heath's 1976 Title VII claim was not timely. Hood cannot resurrect that claim to his benefit, and, therefore, Hood's complaint was properly dismissed as filed out of time.

*Id.*  Plaintiffs attempt to distinguish *Hood* on the basis that Hood's claim "would have been untimely under at least one theory of liability even if he had filed it at the time the original, untimely complaint was filed." (Doc. 143 at 19.)  This is true, but the court expressly rejected Hood's tolling argument on the basis that the first complaint was untimely, independent of this distinguishing factor.

As a general matter, this result makes sense for several reasons.  First, the Court agrees with GHI that Plaintiffs' reading of *American Pipe* would "hold[] open indefinitely the ability of an absent class member to take over class claims that were not timely when filed" and "would incentivize the filing of untimely class claims to afford counsel more time to search for more suitable named plaintiffs." (Doc. 145 at 15–16.)  *American Pipe* does not endorse such a result.  Second, the act of tolling a statute of limitations assumes that the limitations period is still running.  *See Toll*, Black's Law Dictionary (11th ed. 2019) ("(Of a time period, esp. a statutory one) to stop the running of").  A statute of limitations that has expired cannot logically be tolled.

Moreover, the very policies that *American Pipe* purports to further would be frustrated by Plaintiffs' proposed interpretation.  As the Supreme Court explained in *American Pipe*,

> [t]he policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,' *Burnett v. New York Central R. Co.*, 380 U.S. 424, 428, 85 S. Ct. 1050, 1054, 13 L.Ed.2d 941, are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. *Within the period set by the statute of limitations*, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

414 U.S. at 554–55 (emphasis added).  As set forth *supra*, that did not happen here.  GHI was not apprised of the "essential information" necessary to defend against the statutory claims within the statute of limitations, because the limitations period expired before Plavin filed his original class action Complaint.

Because New York courts require a timely original complaint to trigger *American Pipe* tolling, the untimeliness of Plavin's statutory claims operates to bar the named Plaintiffs that subsequently joined the action from asserting the same statutory claims.

### 2. *Unjust Enrichment Claims*[6]

On the contrary, because GHI has not shown that Plavin's unjust enrichment claim was untimely, *American Pipe* applies to toll the running of the statute of limitations for the remaining Plaintiffs' unjust enrichment claims. Notably, GHI has not argued that *American Pipe* should not apply in the event the Court deems Plavin's claims timely. And while the Court has insufficient information to determine exactly when Davis-Matlock, Altman and Thomas's unjust enrichment claims accrued, it is clear that GHI has not met its burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp.*, 477 U.S. at 323. As such, GHI's Motion will be denied as it pertains to the timeliness of the remaining Plaintiffs' unjust enrichment claims.

## VI. CONCLUSION

For the aforementioned reasons, GHI's Motion for Summary Judgment (Doc. 141) will be granted as to Plavin's GBL and Insurance Law claims and denied without prejudice as to his unjust enrichment claim. A separate order follows.

_____
Robert D. Mariani
United States District Judge

---

[6] Plaintiffs have not argued that the timeliness of one cause of action in an original complaint should trigger *American Pipe* tolling as to other causes of action that were time-barred. Nor is the Court aware of any authority for such proposition. As such, the timeliness of Plavin's unjust enrichment claim only saves the remaining Plaintiffs' unjust enrichment claims and does not toll the clock as to their statutory claims.